Byron J. McLain (CA Bar No. 257191)
  bmclain@foley.com
Nicholas J. Fox (CA Bar No. 279577)
  nfox@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

*Attorneys for Plaintiffs Jeffrey Sulitzer, D.M.D; Jeffrey Sulitzer, D.M.D., P.C.; and SmileDirectClub, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JEFFREY SULITZER, D.M.D., an individual; JEFFREY SULITZER, D.M.D., a California Professional Corporation; and SMILEDIRECTCLUB, LLC, a Tennessee limited liability company,<br><br>        Plaintiffs,<br><br>    v.<br><br>JOSEPH TIPPINS, individually and in his official capacity as an Investigator in the Enforcement Unit of the Dental Board of California; KAREN M. FISCHER, M.P.A., individually and in her official capacity as Executive Director for the Dental Board of California; and FRAN BURTON, M.S.W.; STEVEN MORROW, D.D.S., M.S.; STEVEN CHAN, | Case No.: 2:19-CV-08902<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AS TO CLAIMS FOR:**<br><br>**(1)  Violations of Federal Sherman Antitrust Act (15 U.S.C. § 1, *et seq.*)**<br><br>**(2)  Violations of Dormant Commerce Clause (U.S. Const., art. I, § 8, cl. 3) pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983**<br><br>**(3)  Violations of Equal Protection Clause (U.S. Const., amend. XIV) pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983** |

4851-9408-9894.26

D.D.S.; YVETTE CHAPPELL-
INGRAM, M.P.A.; ROSS LAI, D.D.S.;
LILIAN LARIN, D.D.S.; HUONG LE,
D.D.S., M.A.; MEREDITH
MCKENZIE, ESQ.; ABIGAIL
MEDINA; ROSALINDA OLAGUE,
RDA, B.A.; JOANNE PACHECO,
RDH, M.A.O.B.; THOMAS
STEWART, D.D.S.; BRUCE L.
WHITCHER, D.D.S.; and JAMES
YU, D.D.S., M.S., each individually
and in their official capacities as
Officers and/or Members of the
Dental Board of California; and
DOES 1 – 10, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**(4)  Violations of Substantive Due Process (U.S. Const., amend. XIV) pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983**

**(5)  Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**DEMAND FOR JURY TRIAL**

**DIST. JUDGE:**
**MAG. JUDGE:**

## BASIS FOR SUBJECT MATTER JURISDICTION

As explained further in the body of this Complaint, this Court has federal question subject matter jurisdiction over several of the claims asserted in this Complaint pursuant to 28 U.S.C. § 1331 because those claims arise under the Constitution or laws of the United States. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because those claims are so related to claims over which this Court has federal question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4851-9408-9894.26

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Jeffrey Sulitzer, D.M.D.; Jeffrey Sulitzer, D.M.D., a Professional Corporation; and SmileDirectClub, LLC bring this Complaint against Defendants Joseph Tippins, individually and in his official capacity as an Investigator in the Enforcement Unit of the Dental Board of California ("Board"); Karen M. Fischer, M.P.A., individually and in her official capacity as Executive Director for the Board; and Fran Burton, M.S.W.; Steven Morrow, D.D.S., M.S.; Steven Chan, D.D.S.; Yvette Chappell-Ingram, M.P.A.; Ross Lai, D.D.S.; Lilian Larin, D.D.S.; Huong Le, D.D.S., M.A.; Meredith McKenzie, Esq.; Abigail Medina; Rosalinda Olague, RDA, B.A.; Joanne Pacheco, RDH, M.A.O.B.; Thomas Stewart, D.D.S.; Bruce L. Whitcher, D.D.S.; and James Yu, D.D.S., M.S., each individually and in their official capacities as Officers and Members of the Board; as well as DOES 1 – 10, inclusive, and allege:

## INTRODUCTION AND NATURE OF THE ACTION

1.    Plaintiff Jeffrey Sulitzer, D.M.D. is a licensed dentist practicing dentistry in California. Dr. Sulitzer owns Jeffrey Sulitzer, D.M.D., Professional Corporation ("Sulitzer P.C."). He is also the Chief Clinical Officer of Plaintiff SmileDirectClub, LLC ("SmileDirect"). As part of his dental practice, Dr. Sulitzer treats patients with misalignment or "malocclusion" of their teeth. For patients with mild to moderate malocclusion, Dr. Sulitzer has prescribed clear aligner therapy treatment, and continues to work with doctors associated with Sulitzer P.C. on treating patients with clear aligner therapy. An alternative to wire braces, this treatment uses a series of custom-made, removable plastic aligners to move the teeth in increments to their desired positioning.

4851-9408-9894.26

2.      Sulitzer P.C. contracts with SmileDirect to support Dr. Sulitzer's practice, as well as the other state-licensed doctors and orthodontists affiliated with Sulitzer P.C. SmileDirect is a dental support organization ("DSO") that provides non-clinical, administrative services, including its tele-dentistry platform ("DSO Services") to the independent dental practices that contractually engage SmileDirect ("Affiliated Dental Practices"). These Affiliated Dental Practices in turn contract with state-licensed dentists and orthodontists ("Treating Doctors"), such as Dr. Sulitzer, who treat patients. SmileDirect pioneered the direct-to-consumer model for orthodontic clear aligners.

3.      As one of its DSO Services, SmileDirect operates a national chain of SMILESHOP stores. Consumers who visit a SMILESHOP store, among other things, have their health and dental histories gathered electronically, obtain information about financing and pricing of clear aligner therapy, have free traditional and sophisticated photographs of their teeth and gums taken, learn about clear aligner therapy, and are shown visualizations of how clear aligner therapy can change their own smiles. SmileDirect then connects those consumers with Treating Doctors licensed in their respective states of residence for evaluation and, if deemed appropriate by the Treating Doctor, for clear aligner treatment.

4.      Sulitzer P.C. also owns and operates a bus—called a SmileBus—that collects the same information and features the same photographic equipment as the brick-and-mortar SMILESHOP locations. This bus allows Dr. Sulitzer to reach consumers who cannot easily travel to a SMILESHOP store. The SMILESHOP stores and SmileBus provide consumers with a convenient, comfortable, and familiar environment in

4851-9408-9894.26

which to start their journeys toward a better smile, as opposed to traditional dental offices.

5. However, no one performs any clinical services at a SMILESHOP store or on a SmileBus. Rather, the trained employees at those locations take and then transmit the photographs and other consumer information the employees collect from the consumer to Dr. Sulitzer as a Treating Doctor (or to another Treating Doctor affiliated with Sulitzer P.C.). The Treating Doctor then reviews all of this information, determines whether they need additional information and ultimately determines whether the consumer is a viable candidate for clear aligner therapy treatment. At all times, the Treating Doctor has sole responsibility for determining, diagnosing, managing, and overseeing care for each of his or her patients.

6. The direct-to-consumer model supported by SmileDirect allows its Affiliated Dental Practices to reach large numbers of consumers who otherwise lack reasonable, convenient, and affordable access to teeth-straightening services. It also allows consumers to straighten their teeth at 60 to 70 percent below the prices of traditional in-office orthodontic treatments. The accessibility and affordability of clear aligners available through this model, including the use of the SMILESHOP stores and SmileBuses, has disrupted and threatens further to disrupt traditional, higher-cost orthodontic delivery models.

7. The majority of the Board consists of practicing dentists in California. By law, the Board must consist of eight practicing dentists, one registered dental hygienist, one registered dental assistant, and five public members. (Cal. Bus. & Prof. Code § 1601.1(a)) Currently, one of the five public members is a registered dental hygienist, and one public spot is

4851-9408-9894.26

open. In total, eleven of the fourteen Members practice in the dental industry.

8.      The Board regulates and enforces the standards of the practice of dentistry and dental hygiene in California, but has no authority over activities that do not constitute the practice of dentistry or dental hygiene, or individuals (or organizations) that do not practice dentistry or dental hygiene (such as SmileDirect). California law does not identify non-clinical support services as the practice of dentistry.

9.      In the past, California dentists have generated substantial fees from providing their dental and orthodontic treatments using a traditional in-office treatment model. The direct-to-consumer model supported by SmileDirect represents a serious competitive threat to their ability to continue to generate such fees through their traditional delivery model in the future. The Members of the Board therefore have undertaken an aggressive, anti-competitive campaign against SmileDirect, its Affiliated Dental Practices, and their direct-to-consumer model.

10.     This campaign has included, among other things, having one of its investigators (Tippins) (a) conduct a series of coordinated raids on SMILESHOP stores around California (by using teams of Enforcement Unit personnel to invade the SMILESHOP stores); (b) intentionally harass Sulitzer P.C. employees and consumers on a SmileBus (which occurred days after Tippins officially closed an investigation involving an Affiliated Dental Practice, as there was no evidence supporting any violations of California law); and (c) serve a series of unwarranted information requests on SmileDirect designed to intimidate, harass, and unduly burden SmileDirect, Sulitzer P.C., and Dr. Sulitzer.

4851-9408-9894.26

11.    When SmileDirect and Dr. Sulitzer complained to the State and the Board, the Members of the Board ignored their complaints and did nothing to restrain its investigator's ongoing misconduct. Tippins' actions, and the Board's and its Members' knowledge of those actions and intentional failure to act in response to SmileDirect's and Dr. Sulitzer's complaints, represents a de facto assertion of regulatory authority over the activities undertaken at the SMILESHOP stores and on the SmileBuses, even though no practice of dentistry occurs at those locations.

12.    The Board, its Members, and Tippins have undertaken this campaign in an effort to squelch the competitive threat posed by the business model supported by SmileDirect, and not to protect any legitimate concern about the public health, welfare, and safety of consumers. This campaign instead benefits the interests of Members of the Board who are participants in the orthodontia market (including clear aligner therapy) because the campaign seeks to eliminate competitive threats to private dental and orthodontic organizations to which those Members belong.

13.    The Board, its Members, and Tippins engaged in this campaign of harassment, intimidation, and anti-competitive conduct without active, substantive supervision or oversight by the California Legislature, Governor's Office, Department of Consumer Affairs, or the Business, Consumer Services, and Housing Agency.

14.    Dr. Sulitzer, Sulitzer P.C., and SmileDirect therefore bring this action against the Members of the Board and its investigator Tippins:

    a. To enjoin them from abusing their power and authority of their offices of public trust as a means to harass and to seek to intimidate SmileDirect and its Affiliated Dental Practices,

4851-9408-9894.26

including Dr. Sulitzer and Sulitzer P.C. (and their respective employees and customers); and

b. To recover damages from the Members of the Board and Tippins, in their individual capacities, for the economic damages they have inflicted and will continue to inflict on Dr. Sulitzer, Sulitzer P.C., and SmileDirect.

## THE PARTIES

15. Plaintiff Dr. Sulitzer has been a licensed dentist in California since October 2003 (License No. 51841). Dr. Sulitzer practices dentistry in the State. Dr. Sulitzer resides in Happy Valley, Oregon. He owns one hundred percent of shares of Sulitzer P.C.

16. Plaintiff Sulitzer P.C. is a duly registered California professional corporation (Corporation No. C4079522). Sulitzer P.C. leases SMILESHOP stores in California. Sulitzer P.C. also owns a SmileBus, and it employs technicians for the SmileBus as well as at its SMILESHOP stores.

17. Plaintiff SmileDirect is a Tennessee limited liability company with its corporate headquarters in Nashville, Tennessee. SmileDirect is duly registered and authorized to conduct business in California (Entity No. 201709810114). SmileDirect contracts with Sulitzer P.C. to provide various non-clinical, administrative DSO Services.

18. Defendant Joseph Tippins works as an Investigator in the Board's Enforcement Unit. On information and belief, he resides in Placer County, California.

19. Defendant Karen M. Fischer, M.P.A., serves as the Executive Director of the Board. The Board is an entity authorized by and constituted under the California Dental Practice Act (Cal. Bus. & Prof. Code § 1600, et

4851-9408-9894.26

seq.). On information and belief, she resides in Sacramento County, California.

20. Defendant Fran Burton, M.S.W., serves as President of the Board. On information and belief, she resides in Sacramento County, California.

21. Defendant Steven Morrow, D.D.S., M.S., serves as Vice President of the Board. On information and belief, he resides and practices dentistry in Los Angeles County, California. On information and belief, Morrow is a Life Member of the American Dental Association ("ADA") and the American Association of Endodontists ("AAE"), and a member of the California State Association of Endodontists, Tri-County Dental Society, Southern California Academy of Endodontics, and the American Dental Education Association.

22. Defendant Steven Chan, D.D.S., serves as Secretary of the Board. On information and belief, he resides and practices dentistry in Alameda County, California. On information and belief, Chan is a member of the ADA, past President of the California Dental Association ("CDA"), has served as vice chair on five of CDA's for-profit subsidiary companies, and is a member of its political action committee.

23. Defendant Yvette Chappell-Ingram, M.P.A., serves as a member of the Board. On information and belief, she resides in Alameda County, California.

24. Defendant Ross Lai, D.D.S., serves as a member of the Board. On information and belief, he resides and practices dentistry in Alameda County, California. On information and belief, he is a member of the ADA.

25. Defendant Lilian Larin, D.D.S., serves as a member of the Board. On information and belief, she resides and practices dentistry in

4851-9408-9894.26

San Diego County, California. On information and belief, Larin is a member of the ADA, Past President of the National Hispanic Dental Association and the American Association of Women Dentists, and she is a board member of the San Diego County Dental Association.

26.    Defendant Huong Le, D.D.S., M.A., serves as a member of the Board. On information and belief, she resides and practices dentistry in Oakland County, California. On information and belief, Le is a member of the ADA, CDA, and is a board member of the Alameda County Dental Society.

27.    Defendant Meredith McKenzie, Esq., serves as a member of the Board. On information and belief, she resides in Santa Clara County, California.

28.    Defendant Abigail Medina serves as a member of the Board. On information and belief, she resides in San Bernardino County, California.

29.    Defendant Rosalinda Olague, RDA, B.A., serves as a member of the Board. On information and belief, she resides and works as a dental assistant in Los Angeles County, California.

30.    Defendant Joanne Pacheco, RDH, M.A.O.B., serves as a member of the Board. On information and belief, she resides and works as a dental hygienist in Fresno County, California. On information and belief, Pacheco is a member of the American Dental Hygienists' Association, American Dental Educator's Association, and the California Dental Hygienists' Association.

31.    Defendant Thomas Stewart, D.D.S., serves as a member of the Board. On information and belief, he resides and practices dentistry in Kern County, California. On information and belief, Stewart is a member of the ADA, served as President of the CDA in 2010, Vice Chair of the CDA

4851-9408-9894.26

Holding Company's board of directors, and Chair of the CDA delegation to the ADA.

32.    Defendant Bruce L. Whitcher, D.D.S., serves as a member of the Board. On information and belief, he resides and practices dentistry in San Luis Obispo County, California. On information and belief, Whitcher is a member of the ADA, Central Coast Dental Society and the CDA.

33.    Defendant James Yu, D.D.S., M.S., serves as a member of the Board. On information and belief, he resides and practices dentistry in San Francisco County, California. On information and belief, Yu is a member of the ADA and San Francisco Dental Society.

34.    Dr. Sulitzer, Sulitzer P.C., and SmileDirect sue Fischer, Burton, Morrow, Chan, Chappell-Ingram, Lai, Larin, Le, McKenzie, Medina, Olague, Pacheco, Stewart, Whitcher, and Yu in their individual and official capacities as Executive Director, officers, and Members of the Board (collectively, "Members").

35. Dr. Sulitzer, Sulitzer P.C., and SmileDirect name Does 1 through 10 at present as fictitious defendants ("Doe Defendants"). Dr. Sulitzer, Sulitzer P.C., and SmileDirect are presently ignorant and unaware of the true names and identities of these Doe Defendants, and therefore sue such unknown Doe Defendants by fictitious names. Dr. Sulitzer, Sulitzer P.C., and SmileDirect are informed and believe that each such fictitious Doe Defendant is in some manner responsible for, participated in, or contributed to the matters and things of which they complain, and each fictitious Doe Defendant has legal responsibilities for those matters and things. These Doe Defendants may include other employees of the Board; employees of the Board's Enforcement Unit; or other persons acting at the direction of, or in concert with, the Board or

FIRST AMENDED COMPLAINT
CASE NO. 2:19-CV-08902

4851-9408-9894.26

its Members. When Dr. Sulitzer, Sulitzer P.C., and SmileDirect ascertain the exact nature and identity of each such fictitious Doe Defendant, they will amend this Complaint. *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989) ("Doe" pleading in Federal Question cases); *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 683 (9th Cir. 1980) ("Doe" pleading requirements track those of California); Cal. Code Civ. Proc. § 474.

36.   On information and belief, the Board and its Members, the Doe Defendants, and each of them, were or are the owners, agents, members, employees, employers, officers, directors, managers, partners, representatives, predecessors, successors, transferees, licensees, assigns, or servants of each of the other defendants named herein, and at all relevant times alleged were acting within the course and scope of that relationship, agency, or employment, with full notice, consent, and ratification of the acts or omissions of each of the other defendants.

## JURISDICTION AND VENUE

37.   This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. §§ 1331 and 1337 (Federal Question and Antitrust), because this claim arises under the laws of the United States, including the Federal Sherman Antitrust Act (15 U.S.C. § 1, *et seq.*).

38.   This Court has subject matter jurisdiction over Count II – IV pursuant to 28 U.S.C. §§ 1331 and 1343 (Federal Question and Civil Rights), because these claims arise under the Constitution and laws of the United States, including violations of the Dormant Commerce Clause, Equal Protection Clause, and Substantive Due Process brought pursuant to 42 U.S.C. § 1983.

39.   This Court has supplemental jurisdiction over Count V pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction), because this

4851-9408-9894.26

state-law claim arises out of the same transaction or occurrence as, and has a common nucleus of operative facts with, the claims over which this Court independently exercises jurisdiction.

40. This Court has general personal jurisdiction over Tippins and the Members, because, upon information and belief, each of them resides in California, subjecting each individual defendant to the general personal jurisdiction of California courts, including this Court. *Milliken v. Meyer* (1940) 311 U.S. 457, 462 – 63.

41. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1), because the Members are all residents of California, and Medina, Olague, and Whitcher are residents of this Judicial District.

## FACTUAL BACKGROUND

### I. SmileDirect's Revolutionary Tele-Dentistry Platform

42. SmileDirect has revolutionized the way in which dental care is administered in the United States with its unique tele-dentistry platform called SmileCheck—a proprietary system that remotely connects patients with state-licensed Treating Doctors through a web-based portal. Affiliated Dental Practices contracting with SmileDirect for its DSO Services use SmileCheck to view photographs of a patient's mouth, review a patient's medical and dental histories and chief complaint that the patient wants corrected with alignment, review and develop treatment plans, request and review additional information from the patient, if necessary or advisable as determined by the Treating Doctor, prescribe treatment if appropriate, track the performance of the treatment through completion, and document communication with a patient.

43. SmileDirect helps Treating Doctors provide affordable care to populations underserved by traditional dentists and orthodontists

4851-9408-9894.26

operating in brick-and-mortar offices. By leveraging proprietary, cutting-edge technology, and providing non-clinical DSO Services, Treating Doctors can use the SmileCheck tele-dentistry platform to provide care to patients who could not otherwise afford or have access to clear-aligner therapy.

### A.    Lack of Access to Orthodontic Treatment

44.    SmileDirect has developed a solution to one of the most significant challenges in dental care. Prior to SmileDirect's development of SmileCheck, only one percent of the global population received orthodontic treatment each year, yet nearly 85 percent of the global population could benefit from it.

45.    Patient access to orthodontists has been one of the largest problems in expanding availability of orthodontic treatment. Approximately 60 percent of counties in the United States do not have an orthodontist office. Patients with mild or moderate malocclusion cannot obtain the treatment they need without traveling great distances to find a licensed professional, only to repeat that lengthy journey for treatment and check-ins at a brick-and-mortar office.

46.    Cost is another significant impediment to patients receiving orthodontic treatment. The average cost of orthodontic treatment for patients with mild or moderate malocclusion in a brick-and-mortar office is approximately $5,000 to $8,000. That price tag is simply too much for many consumers, even those who would benefit greatly from treatment of their mild-to-moderate malocclusion. As a result, these consumers do not receive any treatment whatsoever.

///

///

4851-9408-9894.26

**B.    Solving the Problem by Connecting Treating Doctors with Patients**

47.    SmileDirect has helped solve the problem of access and cost by developing SmileCheck, a web-based platform which allows Treating Doctors to diagnose, evaluate, and treat patients remotely with clear aligner therapy for mild to moderate malocclusion. As a result, clear aligner treatment through SmileDirect's platform costs $1895. SmileDirect's model changed the way that Treating Doctors can interact with their patients and made treatment for mild and moderate malocclusion available to millions who were previously untreated, including tens of thousands of customers in California who have already used the SDC tele-dentistry platform to achieve a smile they love. SmileDirect's model also provides more convenient and affordable options to consumers who otherwise may have sought orthodontic treatment through traditional delivery channels.

**1.    Step One: Patients Contact SmileDirect**

48.    Consumers start their clear-aligner therapy process in one of two ways. A consumer can visit SmileDirect's website and order an impression kit. Pursuant to a prescription from a state-licensed Treating Doctor at an Affiliated Dental Practice, an impression kit is then sent to the consumer. In addition, the consumer is required to complete medical and dental history forms, provide a chief complaint, and upload traditional photographs of the teeth and gums so that the Treating Doctor—who is licensed in the consumer's state, and who, through the Affiliated Dental Practice, has engaged SmileDirect to utilize SmileDirect's DSO Services, including the SmileCheck platform—has the initial information necessary to make his or her clinical evaluation. Once the consumer completes the

4851-9408-9894.26

impression kit, the consumer returns it to a dental lab to be reviewed by highly trained lab technicians and transformed into a 3D image of the teeth and gums for subsequent review by the Treating Doctor.

49.   Alternatively, consumers can start the process by visiting one of SmileDirect's or the Affiliated Dental Practice's SMILESHOP stores, or a SmileBus, to have traditional and sophisticated photos taken of the teeth and gums. In California, the employees of SMILESHOP stores and the SmileBus are employed by Sulitzer P.C. At the SMILESHOP stores and onboard a SmileBus, consumers have both traditional photos taken of their teeth and gums with digital cameras, as well as a series of photos using a sophisticated camera (called an iTero) that takes up to 6,000 frames per second. The photos taken using the sophisticated camera are stored digitally and then fed into a computer program that generates a 3D image of the consumer's teeth and gums. At the SMILESHOP stores and on a SmileBus, consumers can also complete their dental and health histories and identify their chief complaint, all of which are uploaded into SmileCheck for review by the Treating Doctor.

## 2.   Step Two: Creation of a Draft Treatment Plan

50.   The 3D image, and the photos from which the 3D image was created, are sent to highly trained lab technicians at a dental lab, along with the other relevant information collected from the consumer, to create a draft treatment plan using sophisticated and proprietary software. These draft treatment plans undergo a quality assurance check by licensed dentists and orthodontists who are on staff at the dental lab, which provides an additional layer of quality assurance and consumer protection that other dental labs do not offer. Once the draft treatment plan is

4851-9408-9894.26

complete, it is uploaded into SmileCheck for review by the Treating Doctor, along with all of the other information collected from the consumer.

### 3. Step Three: Dentists or Orthodontists Evaluate Patients

51. After receiving information from consumers, SmileDirect loads that information onto the SmileCheck system so that the Treating Doctor, licensed to practice in the state of the consumer, can review it. The Treating Doctor has the ability, at all times, to request additional information if necessary or desirable (including but not limited to an x-ray or periodontal clearance). With this information, the Treating Doctor determines (a) whether the consumer has mild-to-moderate malocclusion; (b) if so, whether the consumer can be treated with clear-aligner therapy; and, (c) if so, whether the consumer is a candidate for the clear-aligner therapy utilizing remote tele-dentistry, which is directed by the Treating Doctor.

52. If the Treating Doctor determines, in his or her independent professional judgment, that the answer to each of the above inquiries is "yes," then the Treating Doctor reviews and modifies, if necessary, the draft treatment plan. Once the treatment plan is finalized and approved by the Treating Doctor, the consumer is provided with a detailed explanation of the treatment plan, including 3D images depicting anticipated teeth movement. If the consumer elects to move forward with the treatment, the Treating Doctor submits a prescription for manufacturing of the aligners. SmileDirect then fulfills the prescription by arranging for the manufacture and shipment of the aligners from an FDA-approved and licensed manufacturing facility.

4851-9408-9894.26

53.   None of the Affiliated Dental Practices or Treating Doctors are under any obligation (1) to prescribe treatment for customers who have been connected to them through SmileCheck; (2) to use SmileDirect's tele-dentistry platform; or (3) to use the clear aligners that SmileDirect can source for them.

### 4.   Step Four: Patient Treatment Prescribed by the Treating Doctor

54.   The consumer then receives the number of aligners prescribed by the Treating Doctor as well as detailed instructions on use and care. The consumer uses SmileCheck to consult with the Treating Doctor when the consumer begins treatment to ensure the proper fitting of the aligners. The consumer continues to use SmileCheck for periodic treatment check-ins at least every 90 days (or more if requested or desired by the Treating Doctor or the patient). Following the use of all aligners, the Treating Doctor reviews the patient's progress and determines whether treatment is complete.

55.   SmileDirect does not engage in the practice of dentistry; that is the province of the Treating Doctors exercising their independent, professional judgment. Instead, SmileDirect provides the non-clinical DSO Services, including its innovative delivery channel to connect Treating Doctors with their patients.

56.   The Treating Doctor maintains sole responsibility for all aspects of the patient's care as directed by the Treating Doctor's independent, professional judgment, including conducting evaluations, making diagnoses, and if appropriate, prescribing and monitoring clear-aligner therapy treatment for the patient's condition.

///

4851-9408-9894.26

## C.   SmileDirect Disrupts the Dental Industry

57.   SmileDirect's rapid growth since its founding in 2014 validates its value proposition to many consumers and its compelling tele-dentistry model. For example, on a global scale, SmileDirect and its Affiliated Dental Practices have helped over 750,000 consumers achieve a smile they love, and together with its Affiliated Dental Practices has opened over 300 SMILESHOP stores.

58.   On a national scale, SmileDirect and its Affiliated Dental Practices have collected information, including traditional and iTero photographs, from hundreds of thousands of individuals without any incident or complaint of physical injury, infection, or other adverse patient outcome associated with the collection of information and taking of photographs.

59.   SmileDirect started doing business in California in March 2017, and since that time SmileDirect and its Affiliated Dental Practices—through at-home impression kits, or at SMILESHOP stores or SmileBuses—have collected information, including taking traditional and iTero photographs, from over 100,000 consumers in California (without a single incident or complaint arising from collecting the information and taking the photographs). Of those, tens of thousands of Californians have been approved for, prescribed, and ordered clear aligner therapy treatment. SmileDirect has generated millions of dollars in revenue from its California operations.

60.   Many in the public and dental communities have embraced SmileDirect's entry into the market, enabling access to top-notch, low-cost clear-aligner therapy. By remotely connecting state-licensed Treating Doctors with consumers through SmileDirect's SmileCheck platform, in

4851-9408-9894.26

combination with the other DSO Services SmileDirect provides, SmileDirect has drastically reduced the cost of clear-aligner treatment and increased access for many unreached segments of the population, all while ensuring that consumers receive treatment from, and are closely monitored by, state-licensed Treating Doctors with at least four years of experience providing clear-aligner therapy in traditional brick-and-mortar offices. Indeed, over 90% of the Treating Doctors affiliated with SmileDirect maintain their traditional offices in addition to providing treatment to patients using SmileDirect's tele-dentistry platform.

61.    In the end, the clinical care that consumers receive through SmileCheck is directed, evaluated, prescribed and monitored by Treating Doctors. The clinical treatment that consumers receive from SmileDirect's contractually affiliated Treating Doctors using SmileCheck is more affordable, accessible, and efficient than traditional methods of in-office orthodontic treatment.

62.    At the same time, SmileDirect's innovative SmileCheck platform is also disruptive to the traditional models of orthodontic delivery and threatens the dental professionals who provide traditional orthodontia. The "affordable" and "accessible" tenets of SmileDirect's model challenge the business interests entrenched in the more traditional and more costly orthodontic-delivery models.

## II.    **The Board Only Has Authority to Regulate the Practice of Dentistry and Not the Services Provided in the SMILESHOP Stores, on the SmileBus, or by SmileDirect**

63.    The Board, acting through its Members, regulates and enforces the standards of the practice of dentistry in California, and regulates and enforces the standards governing those who practice dentistry in the State.

4851-9408-9894.26

Under the California Dental Practice Act ("Act") (Cal. Bus. & Prof. Code § 1600, et seq.), the Board must:

    A.    "carry out the purposes and enforce the provisions of [the Act]";

    B.    "examine all applicants for a license or permit to practice dentistry and dental assisting";

    C.    "issue licenses and permits to practice dentistry and dental assisting in this state to such applicants as successfully pass all applicable licensing and permitting examinations administered by the Board, or any regional or national testing entity designated to administer licensing or permitting examinations"; and

    D.    "collect and apply all fees." *Id.*, at § 1611.

64.    The Board's authority is limited to the practice of dentistry. The Act makes it unlawful for any person to engage in the practice of dentistry in California without a valid, unexpired license, or special permit from the Board. *Id.* at § 1625. The Act defines the practice of dentistry as:

> the diagnosis or treatment, by surgery or other method, of diseases and lesions and the correction of malpositions of the human teeth, alveolar process, gums, jaws, or associated structures; and such diagnosis or treatment may include all necessary related procedures as well as the use of drugs, anesthetic agents, and physical evaluation. Without limiting the foregoing, a person practices dentistry within the meaning of this chapter who does any one or more of the following:
>
> (a)    By card, circular, pamphlet, newspaper or in any other way advertises himself or represents himself to be a dentist.
>
> (b)    Performs, or offers to perform, an operation or diagnosis of any kind, or treats diseases or lesions of the human teeth, alveolar process, gums, jaws, or associated structures, or corrects malposed positions thereof.

4851-9408-9894.26

(c)    In any way indicates that he will perform by himself or his agents or servants any operation upon the human teeth, alveolar process, gums, jaws, or associated structures, or in any way indicates that he will construct, alter, repair, or sell any bridge, crown, denture or other prosthetic appliance or orthodontic appliance.

(d)    Makes, or offers to make, an examination of, with the intent to perform or cause to be performed any operation on the human teeth, alveolar process, gums, jaws, or associated structures.

(e)    Manages or conducts as manager, proprietor, conductor, lessor, or otherwise, a place where dental operations are performed. *Id.* at § 1625.

65.    The Act further regulates (1) any "mobile dental unit," which is a "self-contained facility, which may include a trailer or van, in which dentistry is practiced that may be moved, towed, or transported from one location to another"; and (2) any "portable dental unit," which is a "self-contained unit housing equipment used for providing dental treatment that is transported to, and used on a temporary basis at, non-dental office locations." *Id.* at § 1657(a)(1) – (2).

66.    The Act contains no regulations pertaining to DSOs (like SmileDirect) and the non-clinical support services they provide. Under the Act the Board and its Members have no authority over SmileDirect because it provides only non-clinical support services to Affiliated Dental Practices and Treating Doctors. The Board and its Members also have no authority over the activities in SMILESHOP stores, or the activities on a SmileBus, because the activities do not constitute the practice of dentistry, as defined in the Act.

67.    The SMILESHOP and SmileBus employees do not examine, evaluate, diagnose, operate, monitor, direct, prescribe, or otherwise treat any consumer. The employees provide only a subset of non-clinical

4851-9408-9894.26

support services to Affiliated Dental Practices and Treating Doctors. As a result, the SmileBus does not qualify as a "mobile dental unit" or "portable dental unit" regulated under the Act.

68. The Board has not undertaken any rulemaking to expand the definition of the "practice of dentistry" to include the non-clinical support services provided by DSOs like SmileDirect, or by the employees in SMILESHOP stores or SmileBuses who do not perform any clinical services. Even if the Board and its Members had undertaken such rulemaking, that rulemaking would be invalid under the Act and other state and federal laws.

## III.    Harassment of SmileDirect, Sulitzer P.C., and Dr. Sulitzer

69. Although the Board lacks any authority to regulate SmileDirect or the services in SMILESHOP stores and on the SmileBuses, the Members have sought to use the Board's regulatory weapons in a no-holds-barred attack against SmileDirect's new tele-dentistry model in a misguided attempt to protect traditional local, brick-and-mortar dental practices from competition (such as where 11 of the 15 Members on the Board practice dentistry or provide other dental-related services).

70. Under the authority of the Board, one of the investigators in the Board's Enforcement Unit—Tippins—has undertaken a continuing course of conduct designed to harass and intimidate SmileDirect and its Affiliated Dental Practices in order to squelch the competition they pose to the more costly clear aligner therapy that dentists and orthodontists prescribe in their traditional brick-and-mortar offices.

71. The Board and Tippins began this increasingly harassing campaign in late 2017. On information and belief, Tippins and one or more other investigators first posed as customers in SmileShop stores.

4851-9408-9894.26

Then on December 8, 2017, Tippins requested information from SmileDirect based on an alleged "active investigation" into SmileDirect. SmileDirect responded to Tippins' requests in late December 2017. Tippins then requested more information in early March 2018, this time seeking information related to a specific dentist affiliated with SmileDirect. Less than two weeks later, SmileDirect responded, confirming that the dentist was not an employee of SmileDirect.  Tippins thereafter changed course and began sending requests for patient records in late March 2018. SmileDirect, the Treating Doctors, and Affiliated Dental Practices answered each request, with no findings of wrongdoing by the state. Tippins—on information and belief, with the Board and Board Members' knowledge, agreement, and acquiescence, if not approval—then escalated the harassment against SmileDirect, the Treating Doctors, and Affiliated Dental Practices.

### A.   State-wide Raid of SMILESHOP Stores

72.   On May 31, 2018, the Board, Members of the Board, and Tippins coordinated an unannounced, simultaneous state-wide raid of SMILESHOP stores in Oakland, San Francisco, and Hollywood, California. Even though the Board lacked any regulatory authority over the non-clinical services provided by SmileDirect, the Board's enforcement teams descended on these SMILESHOP stores on the same day to question SMILESHOP store employees and to demand information and files at the locations, which occurred during hours of regular operation, no doubt so as to cause the most amount of interference and disruption.

73.   The SMILESHOP store employees who witnessed the raids were frightened and intimidated by the Board's enforcement teams undertaking the raids. The teams subjected employees to aggressive behavior, including

unreasonable demands for information and documents, as well as *threats* of initiating an "investigation" of SmileDirect by the Board—contradicting Tippins' prior claims of an existing investigation.

74. Consumers at the SMILESHOP stores were likewise intimidated, and some of the consumers fled the stores, on information and belief, as a result of the Board raids. As a result, the raids seriously harmed SmileDirect's business, revenue, goodwill, employee relations, and reputation in the marketplace.

75. The Board lacked any legitimate basis for the raids. Neither the Board, its Members, nor its Enforcement Unit (including Tippins) issued even a single finding of wrongdoing with respect to any of the SMILESHOP stores or any conduct by SmileDirect or its Affiliated Dental Practices.

76. Dr. Sulitzer, Sulitzer P.C., and SmileDirect requested a meeting with the Board and demanded the basis for the raids targeting SMILESHOP stores. Instead of engaging in dialogue, the Board and its Members refused to meet with Dr. Sulitzer, Sulitzer P.C., and SmileDirect, vaguely citing an unresolved "pending matter." SmileDirect and its lawyers offered to meet with the Board and Tippins to discuss the nature of any purported pending matters, but Tippins and the Members ignored these requests.

77. Neither the Board nor any of the Members responded to SmileDirect's objections to the continued campaign against SmileDirect and its Affiliated Dental Practices; nor, on information and belief, did they otherwise take any actions to investigate the misconduct, to reprimand or punish those involved, or to prevent similar misconduct in the future.

78. On the contrary, after the raids, Tippins continued to contact SMILESHOP stores directly. In an effort to protect the SMILESHOP

4851-9408-9894.26

employees from repeated harassment, lawyers retained by SmileDirect repeatedly informed Tippins to direct all communications to them rather than to store employees in 2018 and early 2019.

**B.     The Board Continues To Target Affiliated Dental Practices**

79.     After the raids, the Board, its Members, and Tippins shifted their harassment campaign from SmileDirect itself to its Affiliated Dental Practices. Tippins began sending repeated—sometimes daily—demands for records from SmileDirect's Affiliated Dental Practices, including Dr. Sulitzer and Sulitzer P.C. These efforts were intended to harass and intimidate those Affiliated Dental Practices and Treating Doctors who contracted with SmileDirect by subjecting them to the time, expense, distraction and embarrassment of ongoing "investigations" into violations of the Act.

80.     As with the raids, these "investigations" were entirely meritless. None of the Board's repeated fishing expeditions have turned up a single violation of the Act.

81.     In fact, as recently as June 20, 2019, the Board, through Tippins, closed an "investigation" against a Treating Doctor and his Affiliated Dental Practice, finding "no evidence of a violation of the Dental Practice Act to substantiate filing formal charges . . . ."

**C.     Tippins Invades a SmileBus**

82.     Despite having just formally closed its investigation days earlier, the Board, its Members, and Tippins continued their targeted campaign against SmileDirect and its Affiliated Dental Practices, this time focusing on a SmileBus owned by Sulitzer P.C.

4851-9408-9894.26

83. The Board and Tippins lacked any authority to enter the SmileBus, given that neither SmileDirect nor the employees on the bus provided or advertised any dental services on the SmileBus.

84. Nonetheless, on July 1, 2019, the SmileBus was legally parked at the Sacramento Arden Fair with consumers visiting the SmileBus for pre-booked appointments. Between 9:30 and 10:00 a.m., without any prior warning, Tippins entered the SmileBus without permission, authorization, a search warrant or any other legal process permitting him to do so. Upon information and belief, another investigator accompanied Tippins on the SmileBus.

85. Tippins entered the SmileBus, flashed his "Dental Board Investigator" badge to the female manager, and demanded to know who was in charge. At the time, consumers were waiting on board the SmileBus and undergoing appointments to have their teeth photographed. One alarmed consumer asked why the "police" were there. Tippins did not make any effort to correct the consumer. He instead told the consumer that there was a complaint against SmileDirect, that an active investigation by the Board existed, and that his inspection was "routine."

86. This behavior was hardly "routine." Tippins treated the female SmileBus manager in a rude, intimidating, and harassing manner, in front of the consumers on the SmileBus:

A.   Tippins yelled at and interrogated the SmileBus manager, asking her for whom she worked and who owned the SmileBus. When the manager truthfully responded that Sulitzer P.C. owned the SmileBus and employed her, Tippins accused the manager of lying.

4851-9408-9894.26

B.   Tippins made false statements that the marketing materials on the SmileBus were misleading and wrong.

C.   Tippins demanded to inspect the entire SmileBus.

D.   Tippins asked the manager if she was a Registered Dental Assistant. The manager replied that she was not, but that certain employees on the bus were Registered Dental Assistants. Tippins yelled orders at the manager, demanding "proof" and "credentials" supporting this statement, but then Tippins refused to let the manager retrieve the documentation from her computer.

E.   Because the employees on the SmileBus were not engaging in the practice of dentistry, the SmileBus was not required to have any mobile dentistry certification or registration. Yet, Tippins ordered the SmileBus manager to produce a mobile dentistry document or certification. Tippins, however, then prohibited the SmileBus manager from contacting Dr. Sulitzer at her employer, Sulitzer P.C., to obtain guidance on the request. Tippins demanded she hang up the phone when she tried to call him.

F.   Tippins continued to yell loudly at the manager and accused her of the illegal practice of dentistry, claiming that merely photographing teeth constituted the practice of dentistry.

87.   Despite Tippins' bullying behavior, the manager attempted to answer his questions and demands. Then, as abruptly as he had arrived, Tippins left, claiming that there was nothing she could do and that he would "be following up later."

4851-9408-9894.26

### D.     SmileDirect Demands that the Board Investigate Tippins to No Avail

88.     That same day, after learning of the improper and unauthorized raid, SmileDirect's lawyers sent a letter to Fischer, the Board's Executive Director, outlining the Board's and Tippins' unlawful harassment and demanding Tippins cease his harassing behavior.

89.     The Board and Tippins did nothing to abate the campaign of targeted harassment, but instead reinvigorated their efforts. On September 16 through 27, 2019, the Board and Tippins issued at least six letters to various Affiliated Dental Practices and SmileDirect. Each letter requested patient dental records, including all photo diagnostic x-rays, photos, 3D "scans," models, and the entire dental chart; exam results; additional treatment plan and estimates; billing records; payment records; medical history; signed consent forms; and insurance authorizations. The Board and Tippins made these demands under threats of fines for non-compliance.

90.     The letters also included an authorization form purportedly signed by each patient approving the release of the records to Tippins, evidencing that Tippins has been directly communicating with consumers regarding SmileDirect and its Affiliated Dental Practices.

91.     On September 30, 2019, SmileDirect's retained counsel responded to a recent patient records request, reiterating its objection to the Board, Members of the Board, and Tippins' pattern of anticompetitive behavior. Letter September 30, 2019, attached as **Ex. A** (redacted to remove protected health information).

///

///

FIRST AMENDED COMPLAINT
CASE NO. 2:19-CV-08902

4851-9408-9894.26

IV.    **This Conduct Was Intended to Stifle Competition as Opposed to Protect Any Legitimate Public Interest.**

92.    The Board's and Tippins' campaign against SmileDirect and its Affiliated Dental Practices is not intended to protect any legitimate public interest. Instead, the campaign is designed to prevent Affiliated Dental Practices and their Treating Doctors who utilize the SmileDirect tele-dentistry platform and other DSO Services from competing with the Board's own market participants and constituent dentists and orthodontists who treat mild to moderate malocclusion using the traditional, in-office delivery model.

93.    The Federal Trade Commission ("FTC") has recognized the potential for conflict between federal antitrust laws and state regulatory boards dominated by active members of their respective industries. In 2015, after the United States Supreme Court decision *North Carolina State Board of Dental Examiners v. FTC*, 135 S. Ct. 1101, the FTC issued guidance entitled "FTC Staff Guidance on Active Supervision of State Regulatory Boards Controlled by Market Participants," attached as **Ex. B**. That guidance made clear the special scrutiny applied to actions by state regulatory boards controlled by market participants and laid out specific guidance relevant to restraints imposed by such boards.

94.    In two pending antitrust cases filed by SmileDirect and its Affiliated Dental Practices and Treating Doctors against state dental board members, the DOJ and the FTC filed joint amicus briefs in the Eleventh Circuit in support of SmileDirect's position. *See SmileDirectClub, LLC v. Battle, et al.*, Brief for the United States and the Federal Trade Commission as Amici Curiae Supporting Plaintiff – Appellee [SmileDirectClub, LLC] No. 19-12227 (11th Circuit, filed 9/25/2019), attached as **Ex. C**; *Leeds, et al.*

4851-9408-9894.26

*v. Jackson, et al.*, Brief for the United States and the Federal Trade Commission as Amici Curiae Supporting Plaintiff – Appellee [SmileDirectClub, LLC] No. 19-11502 (11th Circuit, filed 9/11/2019), attached as **Ex. D**. In each case, a state dental board took actions aimed at restricting SmileDirect's tele-dentistry model. In each case, the DOJ and FTC reiterated that "[c]ompetition is 'the fundamental principle governing commerce in this country'". (Ex. C, p. 15; Ex. D, p. 16). The DOJ and FTC also reinforced the importance of applying "rigorous" tests applied to "allegedly anticompetitive decisions by licensing boards that are controlled by active market participants." (Ex. D, p. 18, 23; *see also* Ex. C, p. _17)

95. Here, the Board and its Members have failed to heed the government's warnings or to follow any of the FTC's guidance based on their actions towards SmileDirect, Dr. Sulitzer, or Sulitzer P.C. The Board and its Members are not acting under any clearly articulated and affirmatively stated policy or legislation. There is no regulation authorizing the Board and its Members' attempt to extend their reach to the provision of non-clinical support services to state-licensed dentists. Nor has a non-market participant outside of the Board actively and substantively supervised the Board's and Tippins' activities with respect to SmileDirect, Dr. Sulitzer, and Sulitzer P.C. Instead, the Board and its Members are expanding their reach only to stifle competition from the Affiliated Dental Practices that utilize SmileDirect's revolutionary tele-dentistry model.

96. The Board's economic protectionism will harm consumers in the State of California and elsewhere. The restriction or elimination from the market of Affiliated Dental Practices utilizing SmileDirect's model as a competitor will prevent the Affiliated Dental Practices from providing care

4851-9408-9894.26

to previously underserved populations. It also will substantially increase the cost of treatment and eliminate choices for consumers.

97.    While the Board Members and Tippins have used their offices to perpetrate their misconduct under color of state law, they in fact do not have any actual authority to regulate the services provided by SmileDirect. SmileDirect provides only non-clinical support services; it does not examine, diagnose, or treat any malady. The same is true for SMILESHOP stores and SmileBus employees.

98.    The Board's and Tippins' campaign also unlawfully and unfairly burdens and discriminates against out-of-state companies like SmileDirect, as well as dentists like Dr. Sulitzer who may practice dentistry in more than one State and greatly benefit from SmileDirect's tele-dentistry platform to connect with patients in other States without the inconvenience of having to travel back-and-forth to brick-and-mortar offices. Severely restricting or prohibiting Dr. Sulitzer and other Treating Doctors who are licensed in California from providing certain services and related orthodontic treatment to California patients unless they are physically present in a SMILESHOP retail location or onboard the SmileBus would severely restrict, if not eliminate, interstate commerce in this market.

99.    In their attempt to restrict consumer choice and interstate commerce, the Board Members' and Tippins' misconduct also fails to protect the public in any manner. The Board's and Tippins' efforts to harass and attempt to intimidate SmileDirect and its Affiliated Dental Practices (1) was not done in compliance with any rulemaking authority or procedures; (2) reduces California consumers' access to care; (3) increases the cost of tele-dentistry, the provision of DSO Services to tele-dentists, and

4851-9408-9894.26

overall orthodontic care; (4) does not protect the public; (5) deprives SmileDirect of the full value of its authorization to conduct business in California; and (6) deprives SmileDirect's Affiliated Dental Practices in California, including Dr. Sulitzer and Sulitzer P.C., of the full value of their dental licenses in the state of California and their constitutionally protected liberty and property interests.

## V. Harm to SmileDirect, Dr. Sulitzer, Sulitzer P.C., and the Public

100. In the absence of tele-dentistry competition from Affiliated Dental Practices using SmileDirect's model, other dentists and orthodontists will continue to be able to charge their higher prices to consumers for clear aligner products. This practice drives up costs, which are borne by consumers in addition to already increased costs for consumers required to travel to and pay for a visit to a traditional brick-and-mortar office to see a dentist or orthodontist in person (particularly if the visit is not covered by insurance).

101. SmileDirect, Dr. Sulitzer and Sulitzer P.C. will suffer significant economic injury and damage as a result of the Board's, its Members' and Tippins' acts and omissions. They will suffer lost business that they would have otherwise obtained (1) through their offering of clear aligner therapy treatment at significantly lower prices than the more traditional treatments offered by other dentists and orthodontists; and (2) through their use of tele-dentistry and the SmileCheck platform to connect with consumers in areas lacking orthodontists.

///
///
///
///

4851-9408-9894.26

## FIRST CAUSE OF ACTION

**Violations of Federal Sherman Antitrust Act**

**(15 U.S.C. § 1, *et seq.*)**

**(By All Plaintiffs against All Defendants)**

102. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

103. The "relevant market" in which to evaluate the anti-competitive effect of the conduct of the Members and Tippins is the market for tooth alignment treatment for mild to moderate malocclusion in California, and the method of delivering that treatment to consumers.

A.   The relevant products in this market are tooth alignment therapy treatments for mild and moderate malocclusion and the method of delivering the treatments to consumers.

B.   The relevant geographic market is properly limited to California. Upon information and belief, consumers in California generally seek tooth alignment therapy treatment from local providers in the State, and as a result do not travel outside the State in any appreciable numbers to obtain tooth alignment therapy treatment.

C.   Thus, if the price of tooth alignment therapy treatment for mild to moderate malocclusion in California increases as a result of the campaign by the Board, its Members, and Tippins against SmileDirect and its Affiliated Dental Practices (including Dr. Sulitzer and Sulitzer, P.C.), consumers will have to pay the higher prices for tooth

4851-9408-9894.26

alignment therapy treatment within California, and perhaps travel longer distances within the State to seek such services.

104. The majority of the Members who are dentists or orthodontists (or work in the dental industry) are actual or potential participants in the Relevant Market and have incentives to restrict competition in the Relevant Market to prevent the delivery of orthodontic services and the provision of tooth alignment therapy through the innovative model provided by SmileDirect.

105. The Members and Tippins, through their anti-competitive actions and omissions, knowingly formed, joined, and entered into an agreement, contract, combination, or conspiracy in restraint of trade and commerce to burden, restrict, or prevent SmileDirect from providing non-clinical, administrative support services in the Relevant Market.

106. The Members and Tippins, through their anti-competitive actions and omissions, entered into an agreement, contract, combination, or conspiracy in restraint of trade and commerce to burden, restrict, or prevent Dr. Sulitzer and Sulitzer P.C. from practicing tele-dentistry in the Relevant Market.

107. As is evidenced by the Members' failure to take any remedial action whatsoever in response to Tippins' harassing and intimidating conduct (and, on information and belief their acquiescence, direction, approval, agreement, or ratification of that misconduct) the Members have demonstrated a unity of purpose, as well as common design and understanding, with Tippins to reduce or eliminate SmileDirect's ability to provide non-clinical services to California-licensed Treating Doctors in the Relevant Market, as well as the Treating Doctors' ability to practice tele-

4851-9408-9894.26

dentistry in the Relevant Market despite being licensed to practice dentistry in California. This in turn reduces competition in the Relevant Market. The Members possessed, and still possess, a conscious commitment to a common scheme designed to achieve an unlawful objective.

108. The Members can enforce their output-restricting agreement by using the power and authority of their office to preclude entrance of competing providers, products, and platforms into the Relevant Market, or to restrict the method of competition in the Relevant Market.

109. The Members' and Tippins' actions and omissions evidence a predatory intent to deprive dentists and orthodontists of a new, more efficient method to compete in the Relevant Market. Through their actions, the Members and Tippins intend to reduce in the Relevant Market (1) the number of dental providers who prescribe certain clear aligner treatment in California; (2) the number and type of clear aligners prescribed to consumers; and (3) the output of such services. These actions and omissions do not enhance public health and safety in California and do not serve any legitimate public purpose.

110. By engaging in an ongoing pattern of harassing or intimidating acts as part of their monopolistic design, the Members and Tippins have wrongfully, unlawfully, and unfairly (1) restricted California consumers' access to affordable orthodontic treatment to straighten their teeth (through SmileDirect's tele-dentistry platform); (2) harmed consumers due to restricted options for such treatment; (3) stifled competition in favor of established special interests; (4) deprived SmileDirect of the full value of its authorization to conduct business in California; (5) deprived SmileDirect's Affiliated Dental Practices in California, including Dr. Sulitzer and Sulitzer

4851-9408-9894.26

P.C., of the full value of their dental licenses in California and their constitutionally protected liberty and property interests; and (6) failed to protect the public in any manner.

111. The Members' and Tippins' actions and omissions constitute a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. On their face, the actions and omissions restrict, and are intended to restrict, the method of competing in the Relevant Market, thereby restricting the number of competitors and causing prices in the Relevant Market to rise, maintain, or stabilize above competitive levels.

112. Alternatively, these actions and omissions constitute a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, under the Rule of Reason; therefore, the Members and Tippins have violated the Federal Sherman Antitrust Act, 15 U.S.C. § 1.

113. As a direct, proximate, and foreseeable result of Tippins' and the Members' actions and omissions, their conduct (or lack thereof) has or will substantially affect interstate commerce or occur within the flow of interstate commerce.

114. As a direct, proximate, and foreseeable result of Tippins' and the Members' actions and omissions, SmileDirect, Dr. Sulitzer, and Sulitzer P.C. have or will suffer damages and injury.

115. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. therefore seek injunctive relief against the Members and Tippins in their official capacities prohibiting the unlawful and anticompetitive behavior.

116. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. also seek treble damages and attorney's fees from the Members and Tippins in their individual capacities.

///

4851-9408-9894.26

## SECOND CAUSE OF ACTION

### Violations of Dormant Commerce Clause
### (U.S Const., art. I, sec. 8, cl. 3 and 28 U.S.C. § 1983)
### (By All Plaintiffs Against All Defendants)

117. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

118. This Count is brought pursuant to 42 U.S.C. § 1983 and the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, which provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States . . . ."

119. Pursuant to the Commerce Clause's dormant aspect, the Board or its Members cannot take regulatory actions that benefit in-state interests by burdening out-of-state competitors, as such regulatory actions unreasonably or unduly interfere with interstate commerce.

120. The Board's and its Members' arbitrary and irrational attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses, and over SmileDirect's provision of non-clinical services to Affiliated Dental Practices, disproportionately affect interstate operations of SmileDirect, its Affiliated Dental Practices such as Sulitzer P.C., and its California-licensed Treating Doctors. SmileDirect is an out-of-state company that provides DSO Services including its tele-dentistry platform, for offsite dentists or orthodontists to review information collected from the consumers online and at SMILESHOP stores or onboard a SmileBus. In

4851-9408-9894.26

practical operation and effect, the Board's and its Members' actions, through Tippins' campaign against SmileDirect and its Affiliated Dental Practices, discriminates against out-of-state businesses like SmileDirect and protects domestic providers from lawful competition. This discrimination against the interstate activities and operations of SmileDirect, Sulitzer P.C., and Dr. Sulitzer violates their constitutional rights.

121. There is no legitimate local purpose or public interest that justifies substantially burdening SmileDirect, Sulitzer P.C., and Dr. Sulitzer through harassment, intimidation, and frivolous investigations to exercise where there is no regulatory authority over the activities in the SMILESHOP stores, SmileBuses, or over SmileDirect's DSO Services, including its tele-dentistry platform.

122. In the alternative, the Board's and its Members' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses and SmileDirect's DSO Services discriminates against the emerging technology and tele-dentistry platform offered by an out-of-state company, SmileDirect, thus preventing it from pursuing its direct-to-consumer model in California. Given that there are no benefits to the public in the improper exercise of regulatory authority over activities in SMILESHOP stores and on SmileBuses when such activity is inherently safe, the burden imposed on commerce is clearly excessive in relation to the putative local benefits.

123. These burdens substantially and adversely affect interstate commerce because SmileDirect, Dr. Sulitzer, and Sulitzer P.C. provide services in and through interstate commerce vis-à-vis SmileDirect's web-

4851-9408-9894.26

based tele-dentistry platform, which remotely connects consumers with state-licensed dentists or orthodontists for evaluation, diagnosis, and possible prescription for clear aligner therapy treatment. They further cause services to be provided in interstate commerce because a prescription for clear aligner therapy treatment is sent to an FDA-approved facility for fulfillment, where the clear aligners are created and then shipped directly to patients.

124. In fact, since March 2017, when SmileDirect began conducting business in California in conjunction with Affiliated Dental Practices (such as Sulitzer P.C.) that are duly licensed to practice in California, tens of thousands of California consumers have been able to receive doctor directed, remote clear aligner therapy from the California-licensed Treating Doctors who utilize the non-clinical services performed at SMILESHOP retail locations, or through SmileBuses.

125. Upon information and belief, the Members who are licensed California dentists also prescribe clear aligner therapy treatment using products that are sold across state lines, are created in facilities outside of California, and are then shipped into the State directly to consumers and/or to their dentists or orthodontists.

126. By restraining competition for clear aligner therapy treatment in California, the flow of interstate commerce is interrupted. The aligner products offered by SmileDirect, Dr. Sulitzer, and Sulitzer P.C. are sent to California consumers across state lines in the ordinary course of commerce. Before the aligners are created and shipped, however, the consumer must have photographs taken of his or her teeth and gums to ensure a comfortable and accurately fitting product, and those photographs and all other information gathered from the consumer online

4851-9408-9894.26

and at the SMILESHOP location or SmileBus must also be evaluated by a state-licensed Treating Doctor. The activities of the Board, its Members, and Tippins, effectively bars the clear aligners prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform from entering California—while still allowing other similar products to be sold in the State.

127. Thus, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses and SmileDirect's DSO Services has the intended effect of prohibiting the sale of clear aligners in California that are prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform—including the clear aligners prescribed by Dr. Sulitzer through Sulitzer P.C., which SmileDirect fulfills.  This further results in reducing the volume of interstate commerce occurring in California's markets, all to the detriment of California consumers.  As a result, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses and SmileDirect's DSO Services are  discriminatory both on their face and due to their effect or purpose on interstate commerce.

128. Even if there were a legitimate local purpose or public interest for Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses and SmileDirect's DSO Services, it would be adequately served by reasonable,

4851-9408-9894.26

nondiscriminatory alternatives through the discussions that SmileDirect, Sulitzer P.C., and Sultizer have offered to have with the Board.

129. Accordingly, this Court should grant declaratory and injunctive relief restraining the Members' and Tippins' violation of the Commerce Clause, and award SmileDirect, Dr. Sulitzer, and Sulitzer P.C. their attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Violations of Equal Protection Clause
### (U.S. Const., Am. XIV and 42 U.S.C. § 1983)
### (By All Plaintiffs against All Defendants)

130. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

131. This Count is brought pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution, Fourteenth Amendment, which prohibits states from denying "equal protection of the laws" to any person within its jurisdiction.

132. Pursuant to the Equal Protection Clause, the Board cannot take regulatory actions that benefit in-state interests by burdening out-of-state competitors, without a rational relationship to a legitimate governmental interest.

133. Upon information and belief, the Members who are licensed California dentists also prescribe clear aligner therapy treatment using products that are sold across state lines, are created in facilities outside

4851-9408-9894.26

of California, and are then shipped into the State directly to consumers and/or to their dentists or orthodontists.

134. By restraining competition for clear aligner therapy treatment in California, the Defendants discriminated against Smile Direct, Dr. Sulitzer, and Sulitzer P.C., and the flow of interstate commerce is interrupted. The aligner products offered by SmileDirect, Dr. Sulitzer, and Sulitzer P.C. are sent to California consumers across state lines in the ordinary course of commerce. Before the aligners are created and shipped, however, the consumer must have photographs taken of his or her teeth and gums to ensure a comfortable and accurately fitting product, and those photographs and all other information gathered from the consumer online and at the SMILESHOP location or SmileBus must also be evaluated by a state-licensed Treating Doctor. The Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses, and over SmileDirect's provision of DSO Services effectively bars the clear aligners prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform from entering California, while still allowing other similar products to be sold in the State.

135. As detailed above there is no rational basis or legitimate governmental interest that justifies discriminating against the emerging technology and tele-dentistry platform offered by an out-of-state company, SmileDirect, and the Affiliated Dental Practices and California-licensed Treating Doctors who utilize SmileDirect's non-clinical services, thus preventing SmileDirect and its Affiliated Dental Practices from pursuing their direct-to-consumer model in California. There are also no benefits to

4851-9408-9894.26

the public in the improper exercise of regulatory authority over activities in SMILESHOP stores and on SmileBuses when such activity is inherently safe.

136. Thus, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses has the intended effect of prohibiting the sale of clear aligners in California, which are prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform—to the detriment of California consumers.

137. Thus, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses has the intended effect of harming SmileDirect, Dr. Sulitzer and Sulitzer P.C. by prohibiting their sale of clear aligners in California to the detriment of California consumers.

138. Even if there were a legitimate local purpose or public interest for Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses and SmileDirect's DSO Services, it would be adequately served by reasonable, nondiscriminatory alternatives through the discussions that SmileDirect, Sulitzer P.C., and Sultizer have offered to have with the Board.

139. Accordingly, this Court should grant injunctive relief restraining the Members' and Tippins' violation of the Equal Protection Clause, and award SmileDirect, Dr. Sulitzer, and Sulitzer P.C. their attorneys' fees and costs.

4851-9408-9894.26

# FOURTH CAUSE OF ACTION

## Violations of Substantive Due Process
## (U.S. Const., Am. XIV and 42 U.S.C. § 1983)
## (By All Plaintiffs against All Defendants)

140. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

141. This Count is brought pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the United States Constitution's Fourteenth Amendment, which prohibits states from depriving any person of "life, liberty, or property, without due process of law" to any person within its jurisdiction.

142. Dr. Sulitzer and Sulitzer P.C. each possess liberty and property interests to pursue Dr. Sulitzer's chosen profession and Sulitzer P.C.'s business, as a licensed out-of-state dentist providing tele-dentistry services to California residents across state lines, subject only to regulations that are rationally related to a legitimate government interest.

143. SmileDirect possesses liberty and property interests in the ability to conduct a business that provides non-clinical support services to Affiliated Dental Practices

144. The Board, its Members, and Tippins cannot take regulatory, administrative, enforcement, or other actions that benefit in-state interests by burdening out-of-state competitors, without a rational relationship to a legitimate governmental interest.

145. Upon information and belief, the Members who are licensed California dentists also prescribe clear aligner therapy treatment using

4851-9408-9894.26

products that are sold across state lines, are created in facilities outside of California, and are then shipped into the State directly to consumers and/or to their dentists or orthodontists.

146. By restraining competition for clear aligner therapy treatment in California, the flow of interstate commerce is interrupted. The aligner products offered by SmileDirect, Dr. Sulitzer, and Sulitzer P.C. are sent to California consumers across state lines in the ordinary course of commerce. Before the aligners are created and shipped, however, the consumer must have photographs taken of his or her teeth and gums to ensure a comfortable and accurately fitting product, and those photographs and all other information gathered from the consumer online and at the SMILESHOP location or SmileBus must also be evaluated by a state-licensed Treating Doctor. The Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses, and over SmileDirect's provision of DSO Services effectively bars the clear aligners prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform from entering California, while still allowing other similar products to be sold in the State.

147. As detailed above there is no rational basis or legitimate governmental interest that justifies discriminating against the emerging technology and tele-dentistry platform offered by an out-of-state company, SmileDirect, and the Affiliated Dental Practices and California-licensed Treating Doctors who utilize SmileDirect's non-clinical services, thus preventing SmileDirect and its Affiliated Dental Practices from pursuing their direct-to-consumer model in California. There are also no benefits to

4851-9408-9894.26

the public in the improper exercise of regulatory authority over activities in SMILESHOP stores and on SmileBuses when such activity is inherently safe.

148. Tippins, the Board, and its Members also received adequate notice of the discriminatory effect of their expansive view of what constitutes the practice of dentistry in California. However, they refused to give SmileDirect and its Affiliated Dental practices the opportunity to be heard.

149. Thus, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses has the intended effect of prohibiting the sale of clear aligners in California, which are prescribed by California-licensed Treating Doctors using SmileDirect's tele-dentistry platform—to the detriment of California consumers.

150. Thus, the Board's, its Members', and Tippins' attempts through harassment, intimidation, and frivolous investigations to exercise regulatory authority over activities in SMILESHOP stores and on SmileBuses has the intended effect of harming SmileDirect, Dr. Sulitzer, and Sulitzer P.C. by prohibiting their sale of clear aligners in California to the detriment of California consumers.

151. Even if there were a legitimate local purpose or public interest for such conduct, it would be adequately served by reasonable, nondiscriminatory alternatives.

152. Accordingly, this Court should grant injunctive relief restraining the Members' and Tippins' violations of the Due Process

4851-9408-9894.26

Clause, and award SmileDirect, Dr. Sulitzer, and Sulitzer P.C. their attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(By All Plaintiffs Against All Defendants)**

153. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. incorporate by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

154. The Board's, its Members', and Tippins' conduct, including the unauthorized entry into the SmileBus without authority or jurisdiction, the belligerent and harassing conduct and statements made to the SmileBus manager in the presence of consumers, the failure to correct the consumer's misimpressions about Tippins' position, and the statements made to the consumer regarding an active investigation, all constitute unlawful, unfair, or fraudulent business acts or practices within the meaning of California Business and Professions Code sections 17200, *et. seq.*

155. The Board, its Members, and Tippins committed and continue to commit acts of unfair competition by engaging in the conduct as alleged herein, including the history of frivolous investigations of SmileDirect; investigators posing as fake customers, harassing employees and intimidating customers; Tippins' failure to abide by SmileDirect's counsel's instructions regarding correspondence and investigations; and Tippins' apparent vendetta against SmileDirect.

4851-9408-9894.26

156. The Board and its Members committed and continue to commit acts of unfair competition by engaging in the conduct as alleged herein, including providing direction to Tippins to engage in the above conduct, or approving, ratifying, or acquiescing in such conduct; and in failing to take remedial, corrective, disciplinary, or other appropriate action due to Tippins' conduct.

157. The Board, its Members, and Tippins committed and continue to commit acts of unlawful competition by engaging in the conduct as alleged herein, and doing so in violation of the Constitution and laws of the United States, as alleged herein.

158. The Board's, its Members', and Tippins' conduct has caused SmileDirect, Dr. Sulitzer, and Sulitzer P.C. irreparable harm and harassment, and SmileDirect, Dr. Sulitzer, and Sulitzer P.C. (as well as their employees) will continue to suffer irreparable injury unless Tippins and the Members, and anyone acting at their direction or under their control, are enjoined from continuing these unlawful, unfair, and fraudulent acts or practices, in their official and individual capacities.

159. SmileDirect, Dr. Sulitzer, and Sulitzer P.C. have also suffered loss of money and property as a result of this conduct by Tippins and the Members in their individual capacities, in an amount to be determined at trial, which exceeds the jurisdictional minimum of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jeffrey Sulitzer, D.M.D.; Jeffrey Sulitzer, D.M.D., a Professional Corporation; and SmileDirectClub, LLC, and each of them, pray for judgment against Defendants Joseph Tippins; Karen M. Fischer; Fran Burton; Steven Morrow; Steven Chan; Yvette Chappell-Ingram; Ross Lai; Lilian Larin; Huong Le; Meredith McKenzie; Abigail

4851-9408-9894.26

Medina; Rosalinda Olague; Joanne Pacheco; Thomas Stewart; Bruce L. Whitcher; and James Yu, and each of them, jointly and severally, as follows:

I.    For equitable relief as appropriate for each cause of action herein, including but not limited to:

    A.    An injunction preliminarily and permanently enjoining Tippins from:

        1.    Engaging in, committing, or performing, directly or indirectly, any conduct designed to harass, annoy, or embarrass Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them, or their employees and customers;

        2.    Being assigned to, or in any way participating in, directly or indirectly, an investigation by the Board or its Enforcement Unit, that may now exist or may ever exist in the future, that pertains to Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them;

        3.    Making any statements, implications, inferences, references, or the like to the public, whether directly or indirectly, regarding any current or prior investigation, or any future investigation, related to Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them.

4851-9408-9894.26

B.   An injunction preliminarily and permanently enjoining the Members named as Defendants herein, including all successors, and anyone acting under their direction or control, from:

    1.   Engaging in, committing, or performing, directly or indirectly, any conduct designed to or actually does harass, annoy, or embarrass Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them, or their employees and customers;

    2.   Engaging in, committing, or performing, directly or indirectly, any conduct designed to or actually does restrict competition from Dr. Sulitzer, Sulitzer P.C., and SmileDirect, or any of them;

    3.   Engaging in, committing, or performing, directly or indirectly, any conduct intended to or that actually does violate the Dormant Commerce Clause, Equal Protection Clause, or Due Process Clause of the United States Constitution, including equivalent provisions in any State's constitution, with respect to Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them; and

    4    Making any statements, implications, inferences, references, or the like to the

4851-9408-9894.26

public regarding any current or prior investigation, or any future investigation, related to Dr. Sulitzer; Sulitzer P.C.; and SmileDirect, or any of them.

II.   For actual, direct, incidental, and consequential damages according to proof and in such amounts as will be proven at trial, as appropriate for each cause of action alleged herein.

III.  For treble damages.

IV.   For exemplary and punitive damages.

V.    For statutory damages.

VI.   For pre- and post-judgment interest on all damages awarded, as permitted by law;

VII.  For costs of suit.

VIII. For attorney's fees as permitted by contract or law, including but not limited to 15 U.S.C. § 15, 42 U.S.C. § 1988, and Cal. Code Civ. Proc. § 1021.5.

IX.   For such other and further relief as the Court deems just and proper.

DATE:  OCTOBER 16, 2019

FOLEY & LARDNER LLP
BYRON J. McLAIN
NICHOLAS J. FOX


BY: */S/  BYRON J. MCLAIN*
     BYRON J. McLAIN
     Attorneys for Plaintiffs Jeffrey
     Sulitzer, D.M.D.; Jeffrey Sulitzer,
     D.M.D., a Professional Corporation;
     and SmileDirectClub, LLC

4851-9408-9894.26

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Jeffrey Sulitzer, D.M.D.; Jeffrey Sulitzer, D.M.D., a Professional Corporation; and SmileDirectClub, LLC, and each of them, hereby demand a jury trial on any and all claims or issues in this action so triable as of right.

DATE: OCTOBER 16, 2019

FOLEY & LARDNER LLP
BYRON J. McLAIN
NICHOLAS J. FOX

BY: /S/ BYRON J. MCLAIN
BYRON J. McLAIN
Attorneys for Plaintiffs Jeffrey
Sulitzer, D.M.D.; Jeffrey Sulitzer,
D.M.D., a Professional Corporation;
and SmileDirectClub, LLC

4851-9408-9894.26