1  XAVIER BECERRA
   Attorney General of California
2  MARK R. BECKINGTON
   Supervising Deputy Attorney General
3  JONATHAN M. EISENBERG
   Deputy Attorney General
4  State Bar No. 184162
    300 South Spring Street, Suite 1702
5   Los Angeles, CA  90013
    Telephone:  (213) 269-6246
6   Fax:  (916) 731-2124
    E-mail:  Jonathan.Eisenberg@doj.ca.gov
7  *Attorneys for Defendants Joseph Tippins; Karen M.*
   *Fischer, M.P.A.; Fran Burton, M.S.W.; Steven*
8  *Morrow, D.D.S., M.S.; Steven Chan, D.D.S.; Yvette*
   *Chappell-Ingram, M.P.A;, Ross Lai, D.D.S.; Lilian*
9  *Larin, D.D.S.; Huong Le, D.D.S., M.A.; Meredith*
   *McKenzie, Esq.; Abigail Medina, Rosalinda*
10 *Olague, R.D.A., B.A.; Joanne Pacheco, R.D.H.,*
   *M.A.O.B.; Thomas Stewart, D.D.S.; Bruce L.*
11 *Whitcher, D.D.S.; and James Yu, D.D.S., M.S.*

12          IN THE UNITED STATES DISTRICT COURT

13         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14         WESTERN DIVISION (FIRST STREET COURTHOUSE)

15

16

17 **JEFFREY SULITZER, D.M.D., AN**          Case No. CV 19-08902-GW-MAA
   **INDIVIDUAL; JEFFREY SULITZER,**
18 **D.M.D., A CALIFORNIA PROFESSIONAL**     **MEMORANDUM IN SUPPORT OF**
   **CORPORATION; AND**                      **MOTION TO DISMISS**
19 **SMILEDIRECTCLUB, LLC, A**               **COMPLAINT (FED. R. CIV. P.**
   **TENNESSEE LIMITED LIABILITY**           **12(B)(6)**
20 **COMPANY,**
                                             Date:         July 9, 2020
21                          Plaintiffs,      Time:         8:30 a.m.
                                             Courtroom:    9D (9th Flr.)
22              **v.**                       Judge:        Hon. George H. Wu
                                             Trial Date:   Not Set Yet
23 **JOSEPH TIPPINS, INDIVIDUALLY AND**      Action Filed: October 16, 2019
   **IN HIS OFFICIAL CAPACITY AS AN**
24 **INVESTIGATOR IN THE ENFORCEMENT**
   **UNIT OF THE DENTAL BOARD OF**
25 **CALIFORNIA; KAREN M. FISCHER,**
   **M.P.A., INDIVIDUALLY AND IN HER**
26 **OFFICIAL CAPACITY AS EXECUTIVE**
   **DIRECTOR FOR THE DENTAL BOARD OF**
27 **CALIFORNIA; AND FRAN BURTON,**
   **M.S.W.; STEVEN MORROW,**
28 **D.D.S., M.S.; STEVEN CHAN,**

1  D.D.S.; YVETTE CHAPPELL-
   INGRAM, M.P.A.; ROSS LAI,
2  D.D.S.; LILIAN LARIN, D.D.S.;
   HUONG LE, D.D.S., M.A.;
3  MEREDITH McKENZIE, ESQ.;
   ABIGAIL MEDINA; ROSALINDA
4  OLAGUE, R.D.A., B.A.; JOANNE
   PACHECO, R.D.H., M.A.O.B.;
5  THOMAS STEWART, D.D.S.;
   BRUCE L. WHITCHER, D.D.S.; AND
6  JAMES YU, D.D.S., M.S., EACH
   INDIVIDUALLY AND IN THEIR OFFICIAL
7  CAPACITIES AS OFFICERS AND/OR
   MEMBERS OF THE DENTAL BOARD OF
8  CALIFORNIA; AND DOES 1-10,
   INCLUSIVE;
9
10                          Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

SUMMARY OF PLEADED FACTS ......................................................................... 3

    I.     Description of Plaintiffs ............................................................................... 3

    II.    How Plaintiffs' Business Operates .......................................................... 4

    III.   How Plaintiffs' Business Allegedly Threatens Defendants' Business Interests .................................................................................... 6

    IV.   Regulation of Plaintiffs' Business in California ...................................... 7

LEGAL STANDARD FOR MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ................. 10

ARGUMENT ....................................................................................................... 11

    I.     Plaintiffs' Amended First Cause of Action, for Violation of the Sherman Act, Section One, Does Not State a Claim upon which Relief Lawfully Can Be Granted .............................................. 11

    II.    Plaintiffs' Amended Second and Third Causes of Action, for Violation of Two Different Clauses of the U.S. Constitution, Do Not State Claims upon which Relief Lawfully Can Be Granted ........ 14

        A.    Prosecutor/Judicial Immunity Bars the Federal Constitutional Claims .................................................... 14

        B.    Plaintiffs' Amended Federal Constitutional Claims Are Facially Deficient ........................................................... 16

            1.    The Amended Dormant Commerce Clause Claim Is Facially Deficient .......................................... 16

            2.    The Amended Due Process Clause Claim Is Facially Deficient .......................................... 18

    III.   Plaintiffs' Amended Fourth Cause of Action, for Violation of California's Unfair Competition Law, Does Not State a Claim upon which Relief Can Lawfully Be Granted ................................... 19

        A.    11th Amendment Immunity Bars the Amended Unfair-Competition Claim ................................................... 19

        B.    Under Various California Statutes, Defendants Have Immunity from the Amended Unfair-Competition Claim ....... 20

        C.    Because Plaintiffs Have Failed to Comply with the California Government Claims Act, the Amended Unfair-Competition Claim Should Be Dismissed ................................ 22

        D.    The Amended Unfair-Competition Claim Fails on the Merits ..................................................................... 23

CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

C ASES

*Alborzian v. JP Morgan Chase Bank, N.A.*
    185 Cal. Rptr. 3d 84 (Cal. Ct. App. 2015) .......................................... 23

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................... 10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................... 10

*Chavez v. United States*
    683 F.3d 1102 (9th Cir. 2012) ......................................................... 10

*Colome v. State Athl. Comm'n*
    55 Cal. Rptr. 2d 300 (Cal. Ct. App. 1996) ........................................ 21

*Conservation Force, Inc. v. Manning*
    301 F.3d 985 (9th Cir. 2009) ........................................................... 18

*Department of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ....................................................................... 16

*Gensburg v. Miller*
    37 Cal. Rptr. 2d 97 (Cal. Ct. App. 1995) .......................................... 21

*Gillan v. San Marino*
    55 Cal. Rptr. 3d 158 (Cal. Ct. App. 2007) ........................................ 21

*Horwitz v. State Bd. of Med. Examiners of Colo.*
    822 F.2d 1508 (10th Cir. 1987) ....................................................... 14

*In re Musical Instruments & Equipment Antitrust Litig.*
    798 F.3d 1186 (9th Cir. 2015) ......................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litigation*
    586 F.Supp.2d 1109 (N.D. Cal. 2008) .............................................. 13

*Kendall v. VISA USA, Inc.*
    547 F.3d 1042 (9th Cir. 2008) .................................................... 11, 13

Memo in Support of Motion to Dismiss

**TABLE OF AUTHORITIES**
(continued)

Page

*Lewis v. BT Investment Mgrs., Inc.*
    447 U.S. 27 (1980) ........................................................................... 16

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*
    795 F.3d 1124 (9th Cir. 2015) ......................................................... 11

*Nayab v. Capitol One Bank (USA) N.A.*
    942 F.3d 480 (9th Cir. 2019) ................................................... 11, 13

*Olsen v. Idaho St. Bd. of Med.*
    363 F.3d 916 (9th Cir. 2004) .................................................... 14, 15

*Pearson v. Callahan*
    555 U.S. 223 (2009) ........................................................................ 10

*Pennhurst St. Sch. and Hosp. v. Halderman*
    465 U.S. 89 (1984) .......................................................................... 19

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ........................................................................ 16

*Poppell v. City of San Diego*
    149 F.3d 951 (9th Cir. 1998) ........................................................... 21

*Rabkin v. Dean*
    856 F. Supp. 543 (N.D. Cal. 1994) ................................................. 23

*Recchia v. Los Angeles Dep't of Animal Servs.*
    889 F.3d 553 (9th Cir. 2018) ........................................................... 20

*Robinson v. Alameda Cnty.*
    875 F. Supp. 2d 1029 (N.D. Cal. 2012) ........................................... 22

*Rocky Mtn. Farmers Union v. Corey*
    730 F.3d 1070 (9th Cir. 2013) ......................................................... 16

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2018) ........................................................... 16

*Rosenthal v. Vogt*
    280 Cal. Rptr. 2d 1 (Cal. Ct. App. 1991) ........................................ 14

# TABLE OF AUTHORITIES
### (continued)

Page

*Sheppard v. Freeman*
   79 Cal. Rptr. 2d 13 (Cal. Ct. App. 1998) ........................................................ 21

*Trinkle v. California St. Lottery*
   84 Cal. Rpt. 2d 496 (Cal. Ct. App. 1999) ........................................................ 21

*Ventimiglia v. Bd. of Behavioral Sciences*
   85 Cal. Rptr. 3d 423 (Cal. Ct. App. 2008) ....................................................... 15

**STATUTES**

California Business and Professions Code
   § 101 .................................................................................................................. 19
   § 145 .................................................................................................................. 19
   § 1670 ................................................................................................................ 15
   § 1686 ................................................................................................................ 15

California Government Code
   § 810 .................................................................................................................. 22
   § 810.2 ............................................................................................................... 21
   § 820.2 ......................................................................................................... 20, 22
   § 820.8 ......................................................................................................... 20, 22
   § 821.6 ......................................................................................................... 20, 21
   § 821.8 ............................................................................................................... 21
   § 822.2 ............................................................................................................... 21

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution
   11th Amend. ........................................................................................... 14, 19, 20
   14th Amend. ...................................................................................................... 15

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1, 10, 23

**OTHER AUTHORITIES**

16 Cal. Code of Regs. § 1023.7 ....................................................................... 19

               Memo in Support of Motion to Dismiss

Defendants Joseph Tippins ("Investigator Tippins"); Karen M. Fischer, M.P.A. ("Director Fischer"); Fran Burton, M.S.W.; Steven Morrow, D.D.S., M.S.; Steven Chan, D.D.S.; Yvette Chappell-Ingram, M.P.A.; Ross Lai, D.D.S.; Lilian Larin, D.D.S.; Huong Le, D.D.S., M.A.; Meredith McKenzie, Esq.; Abigail Medina, Rosalinda Olague, R.D.A., B.A.; Joanne Pacheco, R.D.H., M.A.O.B.; Thomas Stewart, D.D.S.; Bruce L. Whitcher, D.D.S.; and James Yu, D.D.S., M.S., submit the following memorandum in support of Defendants' motion, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the May 18, 2020, "First Complaint for Damages and Injunctive Relief [Etc.]" (the "FAC"), including each of the causes of action therein, alleged by Plaintiffs Jeffrey Sulitzer, D.M.D. ("Dr. Sulitzer"); Jeffrey Sulitzer, D.M.D., P.C. ("Sulitzer P.C."); and SmileDirectClub, LLC ("SmileDirect").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' FAC has not cured the multiple deficiencies in the original complaint, which this Court dismissed on April 22, 2020.

As a preliminary matter, the FAC's new contents do not affect in any way Defendants' many immunity defenses. Defendants continue to assert those immunity defenses, which should dispose of the case.

With regard to the merits of Plaintiffs' <u>first</u> cause of action—that Defendants have engaged in a federal antitrust conspiracy to drive SmileDirect out of business in California—this Court held that the original complaint's factual allegations sufficed as a statement that the 13 Defendants who are members of the Dental Board of California (the "Board") made "an agreement to undertake their delegated authority as members of the Board, [but] *not an agreement to restrict or restrain competition*." (Tent. Rul'g on Mtn. to Dismiss Compl. ("Tentative Ruling"), p. 16 (Mar. 2, 2020), expressly incorporated into Civ. Minutes—Gen. ("Dismissal Order"), p. 1 (Apr. 22, 2020), Dkt. No. 42 (emphasis added).) In apparent response, in the FAC, Plaintiffs make new allegations of specific motivations and/or actions

on the part of several Defendants, whereas in the original complaint only Investigator Tippins was individually described as taking any actions.  However, the new allegations, even if true, and whether evaluated individually or cumulatively, continue to depict, at most, an agreement to undertake the functions of a dental-industry regulatory agency, at least as much as an agreement to restrict or to restrain competition.  Moreover, Plaintiffs continue to make no individual allegations about most Defendants.

On the merits of Plaintiffs' second cause of action—for violation of the U.S. Constitution's Dormant Commerce Clause in investigating and commencing disciplinary proceedings against Dr. Sulitzer, a California-licensed dentist, for possible violations of the California Dental Practice Act—this Court called the original statement of that cause of action "extremely problematic" and "nebulous." (Dismissal Order, p. 1.)  Also, the Court stated that "the Board's activity is plainly concerned with in-state dentistry.  Any incidental impact on out-of-state concerns does not give rise to a Constitutional problem."  (Tentative Ruling, pp. 18-19.)  In the FAC, Plaintiffs have attempted to salvage that cause of action by emphasizing the interstate aspects of SmileDirect's business operations, which were also mentioned in the original complaint.  Notwithstanding the new details about SmileDirect, the Board's regulatory activity, as depicted by Plaintiffs, remains concerned with only in-state dentistry, an obviously appropriate focus for the Board, without constitutional implications.

On the merits of Plaintiffs' third cause of action—that Defendants' investigation of Plaintiffs and commencement of disciplinary proceedings against Dr. Sulitzer constitute harassment of Plaintiffs to the point of denying them their alleged fundamental right to conduct business in California—this Court, acknowledging that Plaintiffs have not pleaded a complete deprivation of any right, narrowed the focus of the analysis to "just whether the action is related to a legitimate state interest."  (Tentative Ruling, p. 22.)  Yet there is no more

Memo in Support of Motion to Dismiss

1   information in the FAC, compared to the original complaint, indicating that

2   Defendants' investigation of and commencement of disciplinary proceedings

3   against Dr. Sulitzer, core Board functions, are <u>un</u>related to a legitimate state

4   interest.  Therefore, that cause of action remains fatally flawed.

5       Plaintiffs' <u>fourth</u> cause of action—that, in violation of California's unfair-

6   competition statute, Defendants engaged in unfair, unlawful, or fraudulent business

7   conduct to drive SmileDirect out of business in California—is based on the same

8   factual allegations as the other causes of action, and is insufficient just as the other

9   causes of action are.

10      In conclusion, because Plaintiffs' FAC does not cure the multiple deficiencies

11  in the original complaint, this Court should dismiss this entire case with prejudice.

12                    **SUMMARY OF PLEADED FACTS**

13  **I.   DESCRIPTION OF PLAINTIFFS**

14      According to the FAC, Dr. Sulitzer is a California-licensed dentist who has a

15  dental practice that includes treating "patients with misalignment or 'malocclusion'

16  of their teeth." (FAC, ¶ 1.)  Dr. Sulitzer has prescribed for many of his customers

17  "clear aligner therapy," which "uses a series of tight-fitting, custom-made

18  mouthpieces that slip over the teeth […] to move the teeth into their desired

19  position." (*Id.*, ¶ 2.)  Dr. Sulitzer resides in Woodland, Washington, yet treats

20  customers who are physically located in California.  (*Id.*, ¶¶ 1, 8, 50.)

21      Dr. Sulitzer owns Sulitzer P.C., a California professional corporation, a

22  corporate form through which Dr. Sulitzer practices dentistry in California.  (FAC,

23  ¶¶ 1, 9.)  Sulitzer P.C. also contracts with other California-licensed dentists to

24  provide dental care, including clear-aligner therapy, to California customers.  (*Id.*, ¶

25  1.)  Many of these other dentists, like Dr. Sulitzer, reside outside California.  (*Id.*,

26  ¶¶ 1, 50.)

27      Dr. Sulitzer is also Chief Clinical Officer of SmileDirect, a Tennessee limited-

28  liability "oral care" company that contractually provides dental practices with "non-

clinical, administrative […] services," related to "direct-to-consumer […] orthodontic clear aligners."  (FAC, ¶¶ 1, 3, 4, 8, 10.)  Sulitzer P.C. is currently SmileDirect's sole "Affiliated Dental Practice" in California.  (FAC, ¶ 51.)

## II.   HOW PLAINTIFFS' BUSINESS OPERATES

SmileDirect maintains and operates through "SmileCheck," "a proprietary […] teledentistry platform, which allows [affiliated dentists and orthodontists] and consumers to connect remotely through a web-based portal."  (FAC, ¶ 4; *see id.*, ¶ 34.)  Only electronically connected, "[o]ftentimes the [dentist or orthodontist] and consumer are physically located in different states."  (*Id.*, ¶ 34; *see also id.*, ¶ 39.)

A potential customer of SmileDirect products may visit a bricks-and-mortar "SMILESHOP" retail store to begin the process to obtain clear-aligner therapy.  (FAC, ¶ 35.)  Sulitzer P.C. operates all the SMILESHOP stores in California.  (*Id.*, ¶ 52.)  At a SMILESHOP store, a customer "electronically provides their health and dental history information, identifies their chief complaints(s) [sic] about their smile, and completes an informed consent form.  A trained technician takes traditional photographs of the consumer's teeth and gums, and scans the consumer's mouth and gums using an iTero scanner […] that generates a high-resolution, interactive three-dimensional image of the consumer's teeth and gums."  (*Id.*, ¶ 36.)  Sulitzer P.C. employs all the technicians who work at SMILESHOP stores in California.  (*Id.*, ¶ 52.)

"Sulitzer P.C. also operates a bus—called a SmileBus—in California.  Sulitzer P.C. employs the highly trained technicians who work […] onboard the SmileBus.  The SmileBus collects the same information and uses the same photographic and imaging equipment as the SMILESHOP stores."  (FAC, ¶ 52.)

Using SmileCheck, [SmileDirect] transmits the photos and three-dimensional images [created at a SMILESHOP store or on the SmileBus], along with the other relevant information collected from the consumer, to a dental laboratory in Costa Rica operated by an entity

affiliated with [SmileDirect].[1]  At the dental laboratory, highly trained
laboratory technicians use sophisticated and proprietary treatment-set-up
software to create a unique treatment plan for each consumer for
subsequent review by the [affiliated dentist or orthodontist].  Each
treatment plan undergoes a quality assurance review by licensed dentists
and orthodontists on staff at the dental laboratory.

(FAC, ¶ 37.)

Alternatively:

a consumer [may] request[] an impression kit from [SmileDirect]'s
website[.  A] dental laboratory located in Tennessee mails the impression
kit—once a [dentist or orthodontist affiliated with SmileDirect] has
prescribed it—to the consumer at home.  […]The consumer makes
impressions and takes photographs of their teeth and gums.  A consumer
who chooses this option provides their health and dental history
information, identifies their chief complaint(s), and completes informed
consent forms online through the [SmileDirect] website.  […]The dental
laboratory in Costa Rica uses the impressions and photographs, along
with the relevant information collected from the consumer, to create a
proposed treatment plan for subsequent review by the [dentist or
orthodontist].

(FAC, ¶ 38.)

Whether a consumer connects with SmileDirect through a SMILESHOP store,
the SmileBus, or online, "[t]he [SmileDirect-affiliated dentist or orthodontist]
remotely reviews the treatment plan prepared by the dental laboratory.  The [dentist

---

[1] Elsewhere in the FAC asserting that Sulitzer P.C. controls initial interfaces with customers at SMILESHOP stores and on the SmileBus, here Plaintiffs contradict themselves by stating that it is SmileDirect, and not Sulitzer P.C., that takes customer information collected at those sites and transmits the information to SmileDirect's facilities.  (Contrast ¶ 52 with ¶ 54.)

Memo in Support of Motion to Dismiss

or orthodontist] also can use SmileCheck to access all of the information collected from or about the consumer…." (FAC, ¶ 40.)

When a dentist or orthodontist approves a SmileDirect treatment plan for a customer, SmileDirect makes for that customer a set of clear aligners, from a manufacturing facility in Tennessee. (FAC, ¶ 43.) SmileDirect handles shipping of the products and billing. (*Id.*, ¶ 4; *see id.*, ¶ 34.) Thereafter, "[c]onsumers use SmileCheck for periodic treatment check-in appointments." (*Id.*, ¶ 44.)

## III. HOW PLAINTIFFS' BUSINESS ALLEGEDLY THREATENS DEFENDANTS' BUSINESS INTERESTS

"[SmileDirect] started doing business in California in March 2017, and has generated over $100 million in revenue from its California operations. […]Sulitzer P.C. has collected photographs, scans and consumer information from over 100,000 consumers in California…." (FAC, ¶ 54.)

"Clear aligner therapy prescribed through [SmileDirect]'s teledentistry platform costs approximately $1,895, which can save a consumer between $3,100 and $6,100 compared to traditional orthodontic treatments offered in brick-and-mortar offices." (FAC, ¶ 49(a).) SmileDirect's:

> entry into the California market poses a competitive threat to traditional
> dental and orthodontic practices in the State, including the dental
> practices of the Board Members. Many, if not all, of the dentists on the
> Board have prescribed clear aligners using the traditional business model.
> All of the dentists on the Board can prescribe clear aligners, making them
> competitors of Dr. Sulitzer and Sulitzer, P.C. Several Board Members
> have dental practices physically located near SMILESHOP stores.

(*Id.*, ¶ 60.)

All eight dentists presently serving on the 15-member Board belong to, and some of those dentist Board members have held leadership positions in, the American Dental Association (the "ADA"). (FAC, ¶ 61.) Some of the dentist

Board members also belong to, and some of them have held leadership positions in, the California Dental Association (the "CDA").  (*Id.*)  Both associations have taken public stances against SmileDirect's business model.  (*Id.*)  Also, the Internet site of Defendant Dr. Larin's dental practice has warned the public against "do-it-yourself" dentistry.  (*Id.*, ¶ 62.)

## IV.  REGULATION OF PLAINTIFFS' BUSINESS IN CALIFORNIA

In the spring of 2017, the American Association of Orthodontists (the "AAO"), which has filed complaints against SmileDirect with 36 U.S. state's dental boards, filed a complaint and a supplemental complaint against SmileDirect with the Board.  (FAC, ¶¶ 64-66.)  The latter submission contained purported consumer complaints against SmileDirect.  (*Id.*, ¶ 66.)  In November 2017, the AAO's general counsel stated publicly that the Board was investigating SmileDirect.  (*Id.*, ¶ 67.) Also in November 2017, about six months <u>after</u> AAO had submitted two written complaints about SmileDirect to the Board, Defendant Dr. Whitcher stated that AAO was going to submit a letter to the Board, asking for an investigation of SmileDirect.  (*Id.*, ¶ 68.)  Dr. Whitcher also said that, previously, Defendant Dr. Chan had suggested that the Board look into mail-order orthodontics.  (*Id.*)  Dr. Whitcher explained, "There's a lot of concern that dentists are not overseeing this, patients are being mailed instructions on how to take impressions at home, you know, there's jurisdictional questions, you know, where is the dentist overseeing this, in which state are they practicing, if they're mailing stuff across state lines." (*Id.*)

In December 2017, Investigator Tippins and another investigator went to a SMILESHOP store and posed as customers and gathered information.  (FAC, ¶ 69.) Later that month, Investigator Tippins, by telephone, told SmileDirect's attorneys that 10 or 11 SmileDirect consumer complaints had motivated the investigation, even though, supposedly, there were no such irate consumers.  (*Id.*, ¶ 69.)  That

Memo in Support of Motion to Dismiss

1    same month, Investigator Tippins declined to have an in-person meeting with

2    SmileDirect's attorneys.  (*Id.*, ¶ 70.)

3         In March 2018, Investigator Tippins asked SmileDirect for and received

4    information about dental practices and dentists potentially affiliated with

5    SmileDirect; to date, the Board has not taken disciplinary action against any of

6    those dental practices or dentists.  (*Id.*, ¶ 72.)  That same month, March 2018,

7    Investigator Tippins continued to speak by telephone with SmileDirect's attorneys,

8    but Investigator Tippins again declined to have an in-person meeting with the

9    attorneys.  (*Id.*, ¶ 71.)

10        On one day in May 2018, teams of Board investigators visited a total of three

11   California SMILESHOP stores, during regular business hours, and requested

12   information and files.  (FAC, ¶ 73.)  "Some or all of the Board Members and

13   Fischer knew about and approved (or at least acquiesced to) the" visits—which

14   Plaintiffs call "raids"—before they occurred.  (*Id.*, ¶ 74; *see also id.*, ¶ 75.)

15   SMILESHOP employees were frightened by the Board investigators, because they

16   asked for information and documents in allegedly "aggressive" ways.  (*Id.*, ¶ 76.)

17   Some customers or potential customers also seemed intimidated and left the stores

18   while the Board investigators were present.  (*Id.*, ¶ 76.)

19        For the rest of 2018 and into 2019, Investigator Tippins sent many information

20   requests directly to SmileDirect, Sulitzer P.C., and affiliated dentists or

21   orthodontists.  (FAC, ¶ 77.)  Investigator Tippins declined to send the information

22   requests to SmileDirect's attorneys only, despite being asked to do so.  (*Id.*)

23        In June 2019, Investigator Tippins closed an investigation of one of the

24   SmileDirect-affiliated dentists.  (FAC, ¶ 78.)  That same month, an employee of the

25   CDA sent to Director Fischer an e-mail message alleging that the SmileBus was

26   operating as a mobile dental unit, without Board authorization.  (*Id.*, ¶ 80.)  Director

27   Fischer conveyed this information to Investigator Tippins, who went aboard the

28   SmileBus during business hours, flashed his badge, did not respond to a customer

Memo in Support of Motion to Dismiss

who asked why police had arrived, conducted a partial inspection, and (supposedly) behaved "in a rude, intimidating, and harassing manner" toward an employee.  (*Id.*, ¶¶ 80-82.)[2]

In July 2019, SmileDirect's attorneys demanded an in-person meeting with the Board, to complain about Investigator Tippins's allegedly harassing behavior, but the Board declined to have the meeting or to rein in Investigator Tippins.  (FAC, ¶¶ 83-84.)

In September 2019, Investigator Tippins sent to SmileDirect and affiliated dentists or orthodontists more information and document requests, about specific customers.  (FAC, ¶ 85.)  SmileDirect's attorneys fulfilled the requests.  (*Id.*, ¶ 87.) Investigator Tippins also communicated directly with SmileDirect customers and persuaded them to file complaints about SmileDirect with the Board.  (*Id.*, ¶ 86.)

In November 2019, Director Fischer, represented by a Deputy Attorney General, filed before the Board a formal accusation that Dr. Sulitzer committed multiple violations of the California Dental Practice Act.  (FAC, ¶ 88.)

Since then, Investigator Tippins has continued to investigate dentists and orthodontists affiliated with Sulitzer, P.C.  (FAC, ¶ 91.)

The Board allegedly orchestrated all these activities and events to drive SmileDirect out of business in California, and to protect the economic interests of California dentists and orthodontists who provide clear-aligner therapy to patients in person, who would be undercut on price and convenience by SmileDirect's method of selling clear aligners.  (FAC, ¶ 93.)

---

[2] Notwithstanding Plaintiffs' allegation that Investigator Tippins misled a SmileDirect customer by not denying being a peace officer (FAC, ¶ 81), Investigator Tippins is a peace officer, with a badge (no. 203) that truthfully states in all capital letters "POLICE."  Hence Investigator Tippins would not be misleading anyone by declining to indicate that he is not a peace officer.

Memo in Support of Motion to Dismiss

1
2

## LEGAL STANDARD FOR MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

3    To survive a motion to dismiss under Federal Rule of Civil Procedure

4    12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to

5    state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662,

6    678 (2009).  A claim is facially plausible when the plaintiff pleads factual content

7    that allows the court to draw the reasonable inference that the defendant is liable for

8    the misconduct alleged.  *Ibid.*  Plausibility requires pleading facts, as opposed to

9    conclusory allegations or the formulaic recitation of the elements of a cause of

10   action, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the factual

11   allegations must rise above the mere conceivability or possibility of unlawful

12   conduct that entitles the pleader to relief, *Iqbal,* 556 U.S. at 678-79.  Where a

13   complaint pleads facts that are merely consistent with a defendant's liability, the

14   complaint stops short of the line between possibility and plausibility of entitlement

15   to relief.  *Iqbal,* 556 U.S. at 678.

16   It is appropriate to raise immunity on a motion to dismiss under Federal Rule

17   of Civil Procedure 12(b)(6), because immunity is immunity from suit, rather than

18   just a defense to liability, and it would waste the court's and the parties' resources

19   to proceed with litigation from which the defendant is immune.  *See Pearson v.*

20   *Callahan*, 555 U.S. 223, 237 (2009); *cf. Chavez v. United States*, 683 F.3d 1102,

21   1108 (9th Cir. 2012) (indicating appropriateness of deciding immunity issues on

22   motion for judgment on pleadings).

23
24
25
26
27
28

Memo in Support of Motion to Dismiss

# ARGUMENT

## I.    PLAINTIFFS' AMENDED FIRST CAUSE OF ACTION, FOR VIOLATION OF THE SHERMAN ACT, SECTION ONE, DOES NOT STATE A CLAIM UPON WHICH RELIEF LAWFULLY CAN BE GRANTED[3]

As this Court already explained (at pages 15-16 of the tentative ruling dismissing the original complaint), for the amended first cause of action, under federal antitrust conspiracy law, to survive past the pleading stage, Plaintiffs have to plead enough facts to raise a reasonable expectation that discovery will lead to evidence of an illegal agreement, under antitrust law. *Kendall v. VISA USA, Inc.*, 547 F.3d 1042, 1047 (9th Cir. 2008), citing *Twombly*, 550 U.S. at 556. Allegations of multiple people with similar economic incentives taking similar actions suggests rational, if parallel, conduct, as much as an antitrust conspiracy, and does not state a viable Sherman Act section 1 claim. *See In re Musical Instruments & Equipment Antitrust Litig.*, 798 F.3d 1186, 1193-94 (9th Cir. 2015). Allegations that are merely consistent with an antitrust conspiracy are not enough to sustain a lawsuit. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129-30 (9th Cir. 2015). The allegations must tend to exclude the possibility that the accused people acted independently and, thus, necessarily lawfully for conspiracy purposes. *Nayab v. Capitol One Bank (USA) N.A.*, 942 F.3d 480, 497 (9th Cir. 2019).

Plaintiffs do not and cannot meet the stern pleading test for a Sherman Act conspiracy claim here. Just as in the original complaint, in the FAC, the bulk of Plaintiffs' allegations amount to nothing more than a Board investigator, Investigator Tippins, acting on a complaint about Plaintiffs from a third party—AAO, of which no Defendants are members—and being "aggressive," "rude," and

---

[3] In moving to dismiss the original complaint, Defendants invoked state-action immunity to Plaintiffs' antitrust claim. (Tentative Ruling, p. 4.) This Court rejected that defense for this stage of the litigation. (*Id.*, pp. 9-10.) Therefore, Defendants do not now reiterate the arguments for state-action immunity here. Defendants will raise state-action immunity later in the case, if it survives past the pleading stage.

Memo in Support of Motion to Dismiss

1   possibly deceptive, and yelling a lot, in carrying out an investigation.  It remains

2   true that a Board investigator literally cannot conspire alone.

3       Just as in the original complaint, in the FAC, Plaintiffs point out that those

4   Defendants who participate, or may participate, in the business of selling sets of

5   clear aligners to people for teeth-straightening may view Plaintiffs as a competitive

6   threat, because Plaintiffs' analogous offerings may be more convenient to obtain

7   and less expensive.  In the FAC, Plaintiffs add more detailed factual allegations

8   supporting the proposition that those Defendants view Plaintiffs as a competitive

9   threat and/or a potential danger to consumers:

10      •   Most of that subset of Defendants, the dentists, are members of the ADA

11  and/or the CDA, organizations which have been publicly critical of SmileDirect's

12  way of doing business.  (FAC, ¶ 61.)

13      •   Some of that dentist subset of Defendants also have dental offices

14  physically near SMILESHOP stores.  (*Id.*, ¶ 60.)

15      •   One Defendant, also a dentist, posted online a warning against do-it-

16  yourself dentistry generally.  (*Id.*, ¶ 62.)

17      •   Two Defendants, both dentists, suggested that it would be prudent for the

18  Board to look into mail-order orthodontics.  (*Id.*, ¶ 68.)

19  However, these allegations, by themselves, describe nothing more than motives or

20  beliefs on the part of some Defendants to oppose Plaintiffs, and do not reflect the

21  making of any agreements, much less the making of any <u>unlawful agreements in</u>

22  <u>restraint of trade</u>.  Thus the allegations, despite how detailed they are, do not suffice

23  to sustain the antitrust conspiracy cause of action in the face of a motion to dismiss.

24      Compared with the original complaint, the FAC contains slightly more details

25  about those Defendants who are Board members directing, ratifying, or at least

26  refusing to stop the allegedly "intimidating" investigation of Dr. Sulitzer that

27  Investigator Tippins led.  (FAC, ¶ 82.)  For example, Plaintiffs now point out that

28  the Board has an Enforcement Committee, and that sometimes Board investigators

attend Board meetings.  (FAC, ¶ 75.)  The AAO, which has been challenging SmileDirect all over the country, challenged SmileDirect in California, but the connection of any Defendant to that challenge is left unclear in the FAC.  (FAC, ¶¶ 64-66.)  Plaintiffs assert that these bare factual allegations plausibly indicate that Defendants actually used the committee, those meetings, and/or the AAO as covers for conspiring to harass Plaintiffs.  (FAC, ¶ 102.)  However, even coupled with the above-described allegations, these new allegations reflect the Board functioning in its merely ordinary regulatory capacity—equally as much as, if not more than, the allegations reflect Defendants collectively plotting an antitrust conspiracy against Plaintiffs.  The allegations thereby fail the test of *Kendall*, *Name.Space*, and *Nayab* of both describing a viable antitrust conspiracy <u>and</u> excluding the possibility of lawful conduct.

Moreover, Plaintiffs do not have any allegations that would suggest even illicit motivations (much less agreements; much less illicit agreements) on the part of many Defendants—Investigator Tippins, Director Fischer, Burton, Chappell-Ingram, McKenzie, and Medina—who are neither dentists nor other professionals nor workers in the dental industry.  And there is a conspicuous lack of individual allegations about Defendants Dr. Lai, Dr. Le, Dr. Morrow, Dr. Stewart, Dr. Yu, Olague, and Pacheco, who are dental-industry professionals.  Furthermore, the individual allegations against the other Defendants—for, e.g., having a dental office near where a SMILESHOP opened; or for yelling a lot; or for knowing six months after the fact about a letter—are painfully thin as recitations of illegal conduct or actions.

The insufficiency of Plaintiffs' allegations of an illegal agreement stand out even more in how they contrast with the detailed, meaningful allegations in a bona fide antitrust case, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F.Supp.2d 1109 (N.D. Cal. 2008).  The complaint in that case cited a statement of one company boasting of convincing a competing company to cut capacity, and also set

Memo in Support of Motion to Dismiss

forth other statements and evidence. *Id.* at 1116.  Plaintiffs have no (and truthfully could not have a) similar, potent allegation against Defendants.  Plaintiffs' allegations are empty.

In conclusion, for a second time, Plaintiffs have failed to state with sufficient specificity a cause of action for violation of the Sherman Act, section 1, upon which relief can lawfully be granted.  Consequently, this Court should dismiss the antitrust cause of action with prejudice.

## II. PLAINTIFFS' AMENDED SECOND AND THIRD CAUSES OF ACTION, FOR VIOLATION OF TWO DIFFERENT CLAUSES OF THE U.S. CONSTITUTION, DO NOT STATE CLAIMS UPON WHICH RELIEF LAWFULLY CAN BE GRANTED

### A. Prosecutor/Judicial Immunity Bars the Federal Constitutional Claims[4]

It is well-established that a state professional licensing board and its officials and employees have absolute prosecutor-judicial immunity from federal constitutional claims for all acts—even if erroneous or malicious—arising out of the conduct of disciplinary proceedings that have (1) prosecutorial or judicial features and (2) appropriate due-process safeguards.  *See Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004); *Rosenthal v. Vogt*, 280 Cal. Rptr. 2d 1, 5 (Cal. Ct. App. 1991); *Horwitz v. State Bd. of Med. Examiners of Colo.*, 822 F.2d 1508, 1512-16 (10th Cir. 1987).  These immunity protections reflect the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his

---

[4] This Court already has ruled that Plaintiffs are potentially entitled to, at most, prospective injunctive relief, upon proof of either or both of the two constitutional-law causes of action.  (Tentative Ruling, pp. 17-18.)  Given that ruling, Defendants need not and, for the sake of brevity, do not invoke Eleventh Amendment immunity or qualified immunity to establish those narrow confines of potential relief available to Plaintiffs.

1   public trust." *Olsen*, 363 F.3d at 923 (quoting *Imbler v. Pachtman*, 424 U.S. 409,

2   423 (1976) (some internal punctuation omitted)).

3       In the present case, as pleaded, all Defendants' alleged actions arose from the

4   Board investigation that led to the initiation of disciplinary proceedings against Dr.

5   Sulitzer, and to the still-ongoing disciplinary proceedings themselves.

6       Regarding the <u>first</u> relevant element stated above, on the authority of *Olsen*,

7   363 F.3d at 923-24, because the Board disciplinary proceedings have put Dr.

8   Sulitzer's dentist's license on the line, the proceedings are analogous to a civil

9   prosecution, which the Board members will hear and decide in a judicial or quasi-

10  judicial capacity.  *Olsen* also expressly holds that the investigation antecedent to

11  such a proceeding is covered by the same immunity.  363 F.3d at 924.

12      Regarding the <u>second</u> relevant element stated above, Board disciplinary

13  proceedings also have ample due-process safeguards built in.  Per California

14  Business and Professions Code section 1670, the proceedings must comply with

15  California's Administrative Procedure Act.  *See Ventimiglia v. Bd. of Behavioral*

16  *Sciences*, 85 Cal. Rptr. 3d 423, 429-36 (Cal. Ct. App. 2008) (describing APA

17  procedural safeguards in administrative disciplinary proceedings for licensed

18  professionals).  And per California Business and Professions Code section 1686, a

19  dentist whose license is revoked or suspended may petition the Board for

20  reinstatement.

21      In sum, in investigating and initiating disciplinary proceedings against Dr.

22  Sulitzer pursuant to established California statutory law, Defendants have absolute

23  immunity from Plaintiffs' federal constitutional claims:  the (amended) <u>second</u>

24  cause of action, for violation of the U.S. Constitution's Dormant Commerce Clause

25  (art. I, § 8); and the (amended) <u>third</u> cause of action, for violation of the Equal

26  Protection Clause of the 14th Amendment.

27

28

B.     **Plaintiffs' Amended Federal Constitutional Claims Are Facially Deficient**

Assuming, for the sake of argument, that the Court moves past the immunity analysis for Plaintiffs' amended federal constitutional causes of action, as pleaded, they fail on the merits, even after being amended.

1.     **The Amended Dormant Commerce Clause Claim Is Facially Deficient**

The Dormant Commerce Clause sometimes precludes a U.S. state enforcing a statute, regulation, or tax that discriminates against interstate commerce. *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1089 (9th Cir. 2013). The analysis focuses on how the statute, regulation, or tax operates in relation to interstate commerce. *See ibid.*; *see also, e.g., Department of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008) (analyzing state tax on interest on bonds); *Lewis v. BT Investment Mgrs., Inc.*, 447 U.S. 27 (1980) (analyzing state law precluding out-of-state banks from owning investment advisory businesses inside state). There are several types of virtually "per se" violations of the Dormant Commerce Clause (*see Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444-45 (9th Cir. 2018)—but the present case concerns another type of Dormant Commerce Clause claim, resolved via a balancing analysis. A law that only indirectly affects interstate commerce and regulates evenhandedly will be upheld unless the burden imposed on such commerce is substantial and clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). As the fact summary above indicates, and as this Court already held, what Plaintiffs are attacking here is the Board's application of facially neutral laws to implement in-state regulation of in-state activity, with a possibly incidental impact on interstate commerce, which ordinarily would not, and here does not, give rise to a constitutional problem. (Tentative Ruling, pp. 19-20.)

The FAC simply does not change the situation.  Plaintiffs do not (and truthfully could not) allege that Defendants took any actions, impartial or biased, outside California with respect to Plaintiffs.  All the regulatory activity took place inside California.  Instead, in the FAC, Plaintiffs emphasize the interstate aspects of SmileDirect's business model—most of which aspects were mentioned in the original complaint, rightfully to no avail.  Presently, Plaintiffs highlight that multiple dentists (not just Dr. Sulitzer), licensed to practice dentistry in California but physically located <u>outside</u> California, use SmileDirect's online platform to interact with customers in California.  Plaintiffs also provide new details of Tennessee-based SmileDirect's operations outside California, such as the Central American location of an affiliated dental laboratory, and the Tennessee location of a manufacturing facility.  Thereby, Plaintiffs purport to describe significant interstate commerce associated with SmileDirect, and urge the conclusion that the Board's wholly in-state investigation of and hearing of a formal disciplinary accusation against Dr. Sulitzer, an officer of SmileDirect, amount to unconstitutional incidental interference with interstate commerce.  However, there is simply no relevance to Plaintiffs' renewed emphasis on the interstate aspects of SmileDirect's business operations.  It remains the case that the Board's regulatory activity is concerned with in-state dentistry exclusively, an obviously appropriate focus for the Board, with obvious putative local benefits that, as a matter of law, are not outweighed by the still-murky effect on interstate commerce claimed by Plaintiffs.

Another major, unsolvable flaw of Plaintiffs' Dormant Commerce Clause claim is that it depends on an exceedingly narrow and legally flawed conception of the proper limits of the Board's regulatory authority.  By Plaintiffs' logic, a California-licensed dentist treating a California patient is beyond the Board's regulatory reach, so long as the dentist is physically located just outside California.  If every California dentist went to the Nevada side of Lake Tahoe, or to the Mexican side of the U.S.-Mexican border, and treated California patients from there

Memo in Support of Motion to Dismiss

1   via online interactions, then the Board would not be able to enforce the California

2   Dental Practice Act against <u>any</u> dentist, because such enforcement would

3   supposedly unduly interfere with what Plaintiffs label "interstate commerce."  But

4   it cannot be correct that state police power, to protect the public from unlawful

5   business behavior, can be completely evaded by "interstate" contrivances of that

6   sort.  *Cf. Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 n.7 (9th Cir.

7   2009) (discussing balancing of Dormant Commerce Clause principles and

8   acknowledged police power of state governments).  Similarly, by Plaintiffs' logic,

9   the Board could never regulate a California-licensed dentist who obtains some

10  dental supplies from out-of-state, because, again, such enforcement would interfere

11  with so-called interstate commerce.  Plaintiffs' conception of the law would lead to

12  absurd results, emasculating the Board, and therefore should not be countenanced.

13       For those reasons, the Court should dismiss Plaintiffs' amended Dormant

14  Commerce Clause cause of action with prejudice.

### 2.   The Amended Due Process Clause Claim Is Facially Deficient

17       As this Court already held, for Plaintiffs to state a viable substantive-due-

18  process claim against Defendants for investigating and commencing still-ongoing

19  disciplinary proceedings against Dr. Sulitzer, while Plaintiffs continue to do

20  business freely in California, Plaintiffs have to state facts indicating that Defendants

21  could not have had any legitimate reason for their actions.  (Tentative Ruling, p. 21,

22  citing *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1262 (9th Cir. 1994).)

23       Despite being pleaded twice now, Plaintiffs' Due Process Clause claim

24  remains opaque as to the illegitimacy of Defendants' actions.  As far as Defendants

25  can unravel Plaintiffs' contentions, they seem to be that the Board investigation that

26  led to disciplinary proceedings against Dr. Sulitzer—a California-licensed dentist

27  indisputably subject to Board regulation—was actually directed <u>entirely</u> at

28  SmileDirect, a Tennessee-based company doing a large volume (more than $100

Memo in Support of Motion to Dismiss

million) of business in California, and that therefore the Board was attempting to
regulate an entity <u>not</u> subject to Board regulation, making all the regulatory activity
illegitimate at all times.  (FAC, ¶ 118(a).)  Of course, by Plaintiffs' own description
of the investigation, it was in fact directed, at least in part, at Dr. Sulitzer, and
thereby was legitimate.  (Tentative Ruling, p. 21.)  Moreover, Plaintiffs'
contentions overlook the Board's authority to police the <u>un</u>licensed practice of
dentistry in California.  See Cal. Bus. & Prof. Code §§ 101, subd. (a), 145-49; 16
Cal. Code of Regs. § 1023.7.  It was certainly legitimate for the Board, responding
to a third-party complaint about the possible unlicensed practice of dentistry by
SmileDirect or its agents, to have investigators visit SmileDirect's retail locations in
California, to gather evidence about the possible unlicensed practice of dentistry.
Plaintiffs' contrary position, to the effect that the Board cannot even investigate
SmileDirect, because SmileDirect says that it is not doing anything illegal,
exemplifies circular reasoning and cannot be taken seriously.  Finally, that the
commencement of disciplinary proceedings followed a two-year investigation is
predictable, not suspicious or illegitimate.  In sum, Plaintiffs have not come close to
submitting pleadings that plausibly indicate that Defendants lacked any legitimate
justifications for their actions, so the Court should dismiss Plaintiffs' amended Due
Process Clause cause of action with prejudice.

**III.  PLAINTIFFS' AMENDED FOURTH CAUSE OF ACTION, FOR VIOLATION OF
CALIFORNIA'S UNFAIR COMPETITION LAW, DOES NOT STATE A CLAIM
UPON WHICH RELIEF CAN LAWFULLY BE GRANTED**

   **A.   11th Amendment Immunity Bars the Amended Unfair-
Competition Claim**

   The decision in *Pennhurst St. Sch. and Hosp. v. Halderman*, 465 U.S. 89, 121
(1984), holds that "a claim that [1] state officials [2] violated state law [3] in
carrying out their official responsibilities is a claim against the State that is barred
by the Eleventh Amendment" in a federal court.  Tracking each item of *Pennhurst*'s
test, Plaintiffs allege that:

Memo in Support of Motion to Dismiss

(1) Defendants are members or employees of the Board, which is a California government agency created by the California Legislature (FAC, ¶ 58);

(2) Defendants violated a state law, California's Unfair Competition Law (FAC, ¶¶ 122-24); and

(3) by "abusing their power and authority of their offices of public trust" (FAC, ¶ 7).

Therefore, by Plaintiffs' own admissions, Defendants have immunity under the Eleventh Amendment from Plaintiffs' amended fourth cause of action, for violation of California's Unfair Competition Law.[5]

### B.   Under Various California Statutes, Defendants Have Immunity from the Amended Unfair-Competition Claim

Defendants also have immunity under five different California statutes—each one of which independently provides immunity—from Plaintiffs' amended unfair-competition cause of action, which is grounded in state law.

For one, California Government Code section 820.2 provides, in pertinent part, that "a [California] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *See also Recchia v. Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 563 (9th Cir. 2018) (recognizing statute).

Second, California Government Code section 820.8 immunizes "a public employee…for an injury caused by the act or omission of another person."

Third, California Government Code section 821.6 immunizes "[a] public employee [for] instituting or prosecuting any judicial or administrative proceeding

---

[5] At pages 23 to 24 of Plaintiffs' January 13, 2020, opposition to the initial defense motion to dismiss this case, Plaintiffs conceded that Eleventh Amendment immunity applies to the unfair-competition cause of action. This Court did not rule on that issue previously. (See Tentative Ruling, pp. 24-25.)

Memo in Support of Motion to Dismiss

within the scope of his employment, even if he acts maliciously and without probable cause."

> Government Code section 821.6 immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings.  An investigation before the institution of a judicial proceeding is part of the prosecution of a judicial proceeding for purposes of the statute, even if the authorities later decide not to file charges.  Acts undertaken in the course of an investigation, including press releases reporting the progress or results of the investigation, cannot give rise to liability.  The immunity applies even if the officers abused their authority.

*Gillan v. San Marino*, 55 Cal. Rptr. 3d 158, 171 (Cal. Ct. App. 2007) (citations omitted); *see also Gensburg v. Miller*, 37 Cal. Rptr. 2d 97, 98-99 (Cal. Ct. App. 1995) (holding that same statute immunized government social-services workers from state-law liability for allegedly suspending foster-home license out of personal vendettas against licensees); *Poppell v. City of San Diego*, 149 F.3d 951, 970 (9th Cir. 1998) ("Section 821.6 provides that […] a public employee […] is immune from liability for injuries caused by instituting any judicial proceeding, even if she had acted with malice").

    Fourth, California Government Code section 821.8 immunizes "[a] public employee [for] entry upon any property where such entry is expressly or impliedly authorized by law."

    Fifth, California Government Code section 822.2 immunizes a "public employee [for] making any misrepresentation, whether intentional or negligent, while acting within the scope of employment."  *See also*, *generally*, *Trinkle v. California St. Lottery*, 84 Cal. Rpt. 2d 496, 499-500 (Cal. Ct. App. 1999) (applying California statutory immunity against California Unfair Competition Law claim).

    Furthermore, under all these statutes, for immunity purposes, an "employee" is defined to include both employees, like Investigator Tippins and Executive Director Fischer, and government board members, like the rest of Defendants.  *See* Cal. Gov. Code § 810.2; *Colome v. State Athl. Comm'n*, 55 Cal. Rptr. 2d 300, 307-08 (Cal. Ct. App. 1996).  And California courts have been very liberal about including most

Memo in Support of Motion to Dismiss

employment-related activities as occurring within the scope of employment, for purposes of the immunity laws.  *See, e.g., Sheppard v. Freeman*, 79 Cal. Rptr. 2d 13, 17-18 (Cal. Ct. App. 1998) (expressly disclaiming that concept of "scope of employment" meaningfully limits immunity).

Plaintiffs' amended fourth cause of action is in part based on Investigator Tippins's allegedly abusive discretionary acts or omissions, entry onto Plaintiffs' property, and alleged misrepresentations, for all of which acts or omissions Investigator Timmons has statutory immunity, per plain-meaning interpretations of Government Code sections 820.2 (regarding exercising discretion), 821.6 (for the context of administrative proceedings), 821.8 (regarding entry onto third-party property), and 822.2 (regarding misrepresentations).  And all other Defendants have statutory immunity for overseeing or ratifying Investigator Tippins's acts or omissions, per Government Code section 820.8 (regarding acts or omissions of other people).  That immunity protects each Defendant as against all other Defendants for their actions, as well.

Plaintiffs' amended fourth cause of action is in other part based on Director Fischer's preparation and commencement of Board disciplinary proceedings against Dr. Sulitzer, said proceedings being ongoing before Defendants who are Board members.  All involved Defendants have statutory immunity, per Government Code sections 820.2 (again, regarding exercising discretion) and 821.6 (again, for the context of administrative proceedings).

Plaintiffs' amended claim under the Unfair Competition Law thus necessarily fails on multiple, independent grounds of California statutory immunity.

### C. Because Plaintiffs Have Failed to Comply with the California Government Claims Act, the Amended Unfair-Competition Claim Should Be Dismissed

Assuming for the sake of argument that the Court moves beyond constitutional immunity and statutory immunity in analyzing Plaintiffs' amended fourth cause of action, there is another basis in law for dismissing the cause of action.  Before a

Memo in Support of Motion to Dismiss

person can sue a California public entity or public employee for damages under state law, the person must file a claim as called for by the California Government Claims Act, California Government Code section 810 et seq.  *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012); *see also Rabkin v. Dean*, 856 F. Supp. 543, 552-53 (N.D. Cal. 1994) (holding that requirement applies even if plaintiff—as in the present case—sues defendant in both official capacity and individual capacity).  Plaintiffs have not pleaded that they fulfilled that prerequisite, and Defendants are unaware that Plaintiffs did meet the prerequisite.  Therefore, the Court should dismiss the amended fourth cause of action, at minimum to the extent that damages are sought.

**D.    The Amended Unfair-Competition Claim Fails on the Merits**

Plaintiffs' amended cause of action for state-law unfair-competition merely repackages the contents of the previously stated causes of action.  (FAC, ¶¶ 121-24.)  In *Alborzian v. JP Morgan Chase Bank, N.A.*, 185 Cal. Rptr. 3d 84, 92 (Cal. Ct. App. 2015), the appellate court held that a "campaign of harassment" can be actionable under California's unfair-competition statute only if the conduct is illegal under another law.  Because, as has been shown, Defendants' conduct is not illegal independent of the unfair-competition law, there is no valid claim under that law.

**CONCLUSION**

For the foregoing reasons, under Federal Rule of Civil Procedure 12(b)(6), the

//

//

//

//

//

//

//

Memo in Support of Motion to Dismiss

1    Court should grant Defendants' motion to dismiss this case in full and with

2    prejudice.

3    Dated:  June 1, 2020                          Respectfully submitted,

4                                                  XAVIER BECERRA
                                                   Attorney General of California
5                                                  MARK R. BECKINGTON
                                                   Supervising Deputy Attorney General
6

7

8                                                  /s/ Jonathan M. Eisenberg
                                                   JONATHAN M. EISENBERG
9                                                  Deputy Attorney General
                                                   *Attorneys for Defendants Joseph*
10                                                 *Tippins; Karen M. Fischer, M.P.A.;*
                                                   *Fran Burton, M.S.W.; Steven Morrow,*
11                                                 *D.D.S., M.S.; Steven Chan, D.D.S.;*
                                                   *Yvette Chappell-Ingram, M.P.A;, Ross*
12                                                 *Lai, D.D.S.; Lilian Larin, D.D.S.;*
                                                   *Huong Le, D.D.S., M.A.; Meredith*
13                                                 *McKenzie, Esq.; Abigail Medina,*
                                                   *Rosalinda Olague, R.D.A., B.A.;*
14                                                 *Joanne Pacheco, R.D.H., M.A.O.B.;*
                                                   *Thomas Stewart, D.D.S.; Bruce L.*
15                                                 *Whitcher, D.D.S.; and James Yu,*
                                                   *D.D.S., M.S.*

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   Memo in Support of Motion to Dismiss