BYRON J. McCLAIN (CA Bar No. 257191)
 bmclain@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213.972.4500
Facsimile: 213.486.0065

JAMES D. DASSO (*pro hac vice*)
 jdasso@foley.com
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654
TELEPHONE: 312.832.4500
FACSIMILE: 312.832.4700

*Attorneys for Plaintiffs Jeffrey Sulitzer,*
*D.M.D; Jeffrey Sulitzer, D.M.D., P.C.; and*
*SmileDirectClub, LLC*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JEFFREY SULITZER, D.M.D., an individual; JEFFREY SULITZER, D.M.D., a California Professional Corporation; and SMILEDIRECTCLUB, LLC, a Tennessee limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH TIPPINS, individually and in his official capacity as an Investigator in the Enforcement Unit of the Dental Board of California; KAREN M. FISCHER, M.P.A., individually and in her official capacity as Executive Director for the Dental Board of California; *et al.*<br><br>Defendants. | Case No.: 2:19-CV-08902 GW (MAAX)<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: July 9, 2020<br>Time: 8:30 am<br>Dept.: 9D (Ninth Floor)<br>Judge: Hon. George H. Wu<br>Case Filed: October 16, 2019 |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    THE AMENDED COMPLAINT PROPERLY ALLEGES A SHERMAN
      ANTITRUST ACT CLAIM. ............................................................................ 1

      A.    The Amended Complaint Properly Alleges an Agreement. ................... 2

            1.    Self-Regulatory Professional Boards Pose an Inherent
                  Anticompetitive Risk. ............................................................... 3

            2.    The Amended Complaint Alleges Facts Plausibly Showing That
                  a Majority of the Board Members Had a Motive to Restrain
                  Trade. ........................................................................................ 4

            3.    The Amended Complaint Alleges Facts Plausibly Showing That
                  the Board Authorized the Campaign of Harassment and
                  Intimidation. ............................................................................. 4

            4.    The Amended Complaint Also Alleges Facts Plausibly
                  Showing That the Board Ratified the Campaign of Harassment
                  and Intimidation. ....................................................................... 5

            5.    The Amended Complaint Alleges a Number of "Plus Factors"
                  Plausibly Showing the Existence of an Agreement. .................. 6

      B.    The Amended Complaint Alleges Facts Plausibly Showing That the
            Board Intended to Restrict or Restrain Trade. ..................................... 7

II.   THE BOARD IS NOT IMMUNE TO THE CONSTITUTIONAL CLAIMS........ 11

      A.    Prosecutorial/Judicial Immunity Does Not Extend to the Investigative
            Conduct at Issue in This Lawsuit. ..................................................... 11

      B.    The Court Should Not Decide the Board's Claims of Qualified
            Immunity on a Motion to Dismiss. .................................................... 14

III.  THE AMENDED COMPLAINT PROPERLY ALLEGES A DORMANT
      COMMERCE CLAUSE CLAIM.................................................................. 16

      A.    In-State Regulation Can Violate the Dormant Commerce Clause............... 17

      B.    The Dormant Commerce Clause Claim Does Not Depend on a Flawed
            Conception of the Board's Regulatory Authority. ............................... 18

C.     The Dormant Commerce Clause Applies to Governmental Misconduct That Burdens Interstate Commerce........................................18

D.     The Amended Complaint Contains More Than Sufficient Allegations That the Burden on Interstate Commerce Is Excessive Relative to the Putative Local Benefits. ...................................................................20

IV.   THE AMENDED COMPLAINT PROPERLY ALLEGES A SUBSTANTIVE DUE PROCESS CLAIM. .........................................22

V.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES AN UNFAIR COMPETITION CLAIM. .....................................................24

A.     The Government Claims Act Immunities and Notice Provisions Do Not Apply Because Count IV Primarily Seeks Injunctive Relief................24

B.     The Amended Complaint Properly Alleges an Unfair Competition Claim. ...........................................................................24

CONCLUSION .............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Needle, Inc. v. Nat'l Football League*,
  560 U.S. 183 (2010) ............................................................................... 1

*Arizona v. Maricopa Cty. Med. Soc.*,
  457 U.S. 332 (1982) ............................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 2, 3, 4, 5

*Buckler v. Fitzsimmons*,
  509 U.S. 259 (1993) ............................................................................. 12

*C&A Carbone, Inc. v. Town of Clarkstown*,
  511 U.S. 383 (1994) ........................................................................ 17, 18

*Cleveland v. Fitter*,
  No. 2:17-cv-1893-DSF (GJS), 2020 U.S. Dist. LEXIS 88098 (C.D. Cal.
  Apr. 17, 2020) ...................................................................................... 14

*Colon Health Centers of Am., LLC v. Hazel*,
  733 F.3d 535 (4th Cir. 2013) ................................................................ 21

*Conservation Force, Inc. v. Manning*,
  301 F.3d 985 (9th Cir. 2009) ................................................................ 18

*Cornwell v. California Bd. of Barbering & Cosmetology*,
  962 F. Supp. 1260 (S.D. Cal. 1997) ..................................................... 23

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013) .............................................................. 23

*Dennis v. Higgins*,
  498 U.S. 439 (1991) ............................................................................. 14

*Engquist v. Or. Dep't of Agric.*,
  478 F.3d 985 (9th Cir. 2007) ................................................................ 14

*Florida Transp. Services, Inc. v. Miami-Dade County*,
  703 F.3d 1230 (11th Cir. 2012) ............................................................ 19

*FTC v. Ind. Fed'n of Dentists*,
   476 U.S. 447 (1986)...........................................................................3

*Granholm v. Heald*,
   544 U.S. 460 (2005)....................................................................17, 20

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007)...........................................2

*H.P. Hood & Sons, Inc. v. Du Mond*,
   336 U.S. 525 (1949).........................................................................19

*Hafer v. Melo*,
   502 U.S. 21 (1991)...........................................................................11

*Horwitz v. State Bd. of Med. Examiners of Colo.*,
   822 F.2d 1508 (10th Cir. 1987) .......................................................12

*Kendall v. Visa, U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .......................................................5, 7

*Kisela v. Hughes*,
   138 S. Ct. 1148 (2018)....................................................................15

*Leeds v. Bd. of Dental Exam'rs of Ala.*,
   382 F. Supp. 3d 1214 (N.D. Ala. 2019)......................3, 16, 17, 20

*Lewis BT Inv. Managers, Inc.*, 447 U.S. 27 (1980) ......................16, 17

*Magna Legal Services v. Arizona ex rel. Bd. of Certified Reporters*,
   No. CV-13-00802-PHX-NVW, 2013 WL 4478933 (D. Ar. Aug. 21,
   2013) ...............................................................................................21

*Maraziti v. First Interstate Bank*,
   953 F.2d 520 (9th Cir. 1992) ...........................................................14

*Mazaheri v. Pederson*,
   Case No. CV 08-2508 ABC, 2010 WL 11601578 (C.D. Cal. Aug. 10,
   2010) ...............................................................................................12

*Merrifield v. Lockyer*,
   547 F.3d 978 (9th Cir. 2008) ...........................................................22

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) ...........................................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) .................................................................................... 3

*Montoya v. City of San Diego*,
    No. 19CV0054 JM(BGS), 2020 WL 353595 (S.D. Cal. Jan. 21, 2020) ..................... 24

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ..................................................................... 7

*N.C. State Bd. of Dental Examiners v. FTC*,
    717 F.3d 359 (4th Cir. 2013) .................................................................. 7, 10

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ..................................................................... 7

*Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*,
    567 F.3d 521 (9th Cir. 2009) ..................................................................... 16

*Nat'l Soc'y of Prof'l Engr's v. United States*,
    435 U.S. 679 (1978) ..................................................................................... 3

*Nayab v. Capitol One Bank (USA) N.A.*,
    942 F.3d 480 (9th Cir. 2019) ....................................................................... 2

*New Energy Co. of Indiana v. Limbach*,
    486 U.S. 269 (1988) .............................................................................. 16, 19

*North Carolina State Board of Dental Examiners v. FTC*,
    574 U.S. 494 (2015) ......................................................................... 2, 3, 8, 10

*Olsen v. Idaho State Bd. of Med.*,
    363 F.3d 916 (9th Cir. 2004) ..................................................................... 12

*Or. Waste Sys. v. Dep't of Envtl. Quality*,
    511 U.S. 93 (1994) ..................................................................................... 16

*Paladin Associates, Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ..................................................................... 8

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) .............................................................................. 20, 21

*Qwest Commc'ns Corp. v. City of Berkeley*,
    146 F. Supp. 2d 1081 (N.D. Cal. 2001) ....................................................... 24

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 439 (9th Cir. 2019) ..................................................................... 16

*SmileDirectClub, LLC v. Ga. Bd. of Dentistry*,
  Case No. 1:18-cv-02328-WMR, 2019 WL 3557892 (N.D. Ga. May 8,
  2019) ........................................................................................................... 3

*Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*,
  No. 3:12-CV-738-AC, 2013 WL 1826141 (D. Or. Apr. 30, 2013) ............. 23

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..................................................................... 23

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  No. CV F 09-0560 LJO SMS, 2011 WL 2678879 (E.D. Cal. July 7,
  2011) ........................................................................................................... 6

*Stapley v. Pestalozzi*,
  733 F.3d 804 (9th Cir. 2013) ..................................................................... 11

*Teladoc, Inc. v. Tex. Med. Bd.*,
  Case No. 1-15-CV-343 RP, 2015 WL 8773509 (W.D. Tex. Dec. 14,
  2015) ..................................................................................................... 17, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................... 5, 7

*Walgreen Co v. Rullan*,
  405 F.3d 50 (1st Cir. 2005) ........................................................................ 19

*White v. Harris*,
  No. 2:13-6171-CAS(MANx), 2015 U.S. Dist. LEXIS 33831 (C.D. Cal.
  Mar. 16, 2015) ...................................................................................... 14, 15

**California Cases**

*Alborzian v. JPMorgan Chase Bank, N.A.*,
  235 Cal. App. 4th 29 (2015) ...................................................................... 25

**Federal Statutes**

15 U.S.C. § 57b-1(c)(1) .............................................................................. 10

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

**California Statutes**

Cal. Bus. & Prof. Code § 1601.1(c) ........................................................... 19

Cal. Bus. & Prof. Code § 1611.5 ............................................................... 19

Cal. Bus. & Prof. Code § 1616 .................................................................. 19

Cal. Bus. & Prof. Code §§ 17200, *et seq*. ........................................... 24, 25

Cal. Gov't Code § 814 ............................................................................... 24

Cal. Gov't Code § 905 ............................................................................... 24

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ...................................................... 2, 8

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| Board | Tippins, Fischer and Board Members |
| Board Members (collective) or Board Member (individual) | Fran Burton, M.S.W.; Steven Morrow, D.D.S., M.S.; Steven Chan, D.D.S.; Yvette Chappell-Ingram, M.P.A.; Ross Lai, D.D.S.; Lilian Larin, D.D.S.; Huong Le, D.D.S., M.A.; Meredith Mckenzie, ESQ.; Abigail Medina; Rosalinda Olague, RDA, B.A.; Joanne Pacheco, RDH, M.A.O.B.; Thomas Stewart, D.D.S.; Bruce L. Whitcher, D.D.S.; and James Yu, D.D.S., M.S. |
| Fischer | Karen M. Fischer |
| SDC | Dr. Sulitzer, Sulitzer, P.C. and SmileDirect |
| SmileDirect | SmileDirectClub, LLC |
| Dr. Sulitzer | Jeffrey Sulitzer |
| Sulitzer, P.C. | Jeffrey Sulitzer, D.M.D. |
| Tippins | Joseph Tippins |

\* Abbreviations can be singular or plural.

\*\* Capitalized terms not otherwise defined have the same meaning as in the Amended Complaint.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

## INTRODUCTION

SDC filed this lawsuit against the Board Members, Executive Director Fischer, and Investigator Tippins to end years of harassment and intimidation by the Board. For over 2.5 years, the Board used its unchecked authority in a concerted manner to harass SmileDirect, its network of Affiliated Dental Practices, and their customers. The Board intended to stifle the competitive threat posed by SDC by abusing its governmental authority and enforcement powers. It intended to use any means to interfere with SmileDirect's ability to offer non-clinical, administrative services, including its tele-dentistry platform, to its network of Affiliated Dental Practices and Treating Doctors.

The Supreme Court and other courts have recognized the inherent anticompetitive risk posed by self-regulatory boards, and courts repeatedly have sustained similar claims brought by SmileDirect and other telehealth providers. The Board admits the Amended Complaint contains "more detailed factual allegations supporting the proposition that [the Board] views [SDC] as a competitive threat . . . ." (D.I. 44-1 [Board Memo.], at 12:7-9) Nevertheless, the Board urges the Court to disregard these detailed factual allegations and conclude—on the pleadings alone—that the Board was "functioning in its merely ordinary regulatory capacity." (*Id.* at 13:7-8) The Court should reject the Board's improper invitation to resolve disputed issues of fact on a 12(b) motion, and permit discovery to proceed so SDC can lay bare the Board's anticompetitive misconduct and aims.

## ARGUMENT

## I.   THE AMENDED COMPLAINT PROPERLY ALLEGES A SHERMAN ANTITRUST ACT CLAIM.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must allege (1) an agreement, and (2) that the agreement was an unreasonable restraint of trade. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189-90 (2010). In its motion to dismiss ruling, the Court stated that while "Plaintiffs *may* have pled enough to suggest *an agreement* by way of a theory of the Board's ratification of Tippins's conduct," that "agreement-by-ratification appears—without more in the way of factual allegations to the

contrary—to be simply an agreement to undertake their delegated authority as members of the Board, not an agreement intending to restrict or restrain competition." (D.I. 30 [Tentative Ruling], at 15 (emphasis in original)) Because the Court found that "Plaintiffs have not pled enough facts to plausibly allege an illegal agreement intending to harm or restrain trade, the Court concludes that Plaintiffs have not plausibly pled a Sherman Act claim at this point in time." (*Id.* at 16)

As explained below, the Amended Complaint contains more than sufficient facts to allege an agreement plausibly. SDC need not allege an intent to restrain trade to state a Section 1 claim. Even if such allegations were required, however, Federal Rule of Civil Procedure 9(b) provides that SDC may allege intent generally. In any event, the Amended Complaint contains far more than sufficient facts to allege plausibly that the Board intended to restrain trade by burdening SDC's business in California with a campaign of harassment and intimidation—not unlike the campaign of cease-and-desist letters and unlicensed practice of dentistry claims found to violate the Sherman Act in *North Carolina State Board of Dental Examiners v. FTC*, 574 U.S. 494 (2015). The Court therefore should deny the motion to dismiss Count I of the Amended Complaint.

## A.   <u>The Amended Complaint Properly Alleges an Agreement.</u>

A complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*. If the complaint contains sufficient factual allegations, the lawsuit "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In antitrust suits, "direct allegations of conspiracy are not always possible given the secret nature of conspiracies. Nor are direct allegations necessary." *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1096 (N.D. Cal. 2007); *see also Nayab v. Capitol One Bank (USA) N.A.*, 942 F.3d 480, 497 (9th Cir. 2019) (not requiring plaintiff to exclude possibility of independent action

and reversing dismissal of motion to dismiss). A plaintiff may plead concerted action by alleging facts manifesting a "unity of purpose or a common design and understanding or a meeting of minds," or "a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citations omitted).

### 1. Self-Regulatory Professional Boards Pose an Inherent Anticompetitive Risk.

As the Supreme Court has explained, "prohibitions against anticompetitive self-regulation by active market participants are an axiom of federal antitrust policy." *N.C. Dental*, 574 U.S. at 505. Putting active market participants in control of self-regulatory professional boards raises a substantial "risk of self-dealing" and of the board members "confusing their own interests with the State's policy goals." *Id*. at 510. These boards thus serve as fertile ground for illegal anticompetitive agreements. *E.g.*, *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) (rule requiring member dentists to withhold x-rays from insurers constituted an agreement); *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 348 (1982) (majority vote of medical foundation members setting fees constituted an agreement); *Nat'l Soc'y of Prof'l Engr's v. United States*, 435 U.S. 679, 692-93 (1978) (professional society's ethical rule prohibiting engineers from engaging in competitive bidding constituted an agreement).

In a similar case in Georgia, the federal district court sustained SmileDirect's Section 1 claim where, as here, SmileDirect alleged that Board Members unreasonably restrained trade by interfering with dentists' ability to use SmileDirect's tele-dentistry platform. *SmileDirectClub, LLC v. Ga. Bd. of Dentistry*, Case No. 1:18-cv-02328-WMR, 2019 WL 3557892, at *4 (N.D. Ga. May 8, 2019); *Leeds v. Bd. of Dental Exam'rs of Ala.*, 382 F. Supp. 3d 1214, 1241 (N.D. Ala. 2019) (sustaining Section 1 claim from *Parker* immunity challenge). The inherent anticompetitive risk posed by self-regulatory professional boards—both generally and specifically with respect to SDC— represents the sort of "context that raises a suggestion of a preceding agreement" that the Supreme Court recognized makes a conspiracy plausible. *Twombly* 550 U.S. at 557.

### 2. The Amended Complaint Alleges Facts Plausibly Showing That a Majority of the Board Members Had a Motive to Restrain Trade.

The Amended Complaint alleges that the Board—like the boards in these other cases—had a motive to use its regulatory authority to restrain trade. Until recently, dentists and orthodontists primarily competed in small, local markets. (FAC ¶ 5) However, SmileDirect's non-clinical, administrative DSO Services allow Treating Doctors, licensed in the state where the consumer receives treatment, to treat consumers across state lines, avoiding costly repeated in-person office visits. (*Id.*) The injection of interstate competition into these markets drives down prices, increases access, and enhances consumer choice. (*Id.*) It therefore represents an existential competitive threat to local dentists and orthodontists' ability to generate substantial fees through their traditional delivery model. (*Id.*) In response, the Board through its Enforcement Unit has pursued an aggressive, anti-competitive campaign of harassment and intimidation against SmileDirect (*Id.* ¶ 6) This campaign seeks to protect the economic interests of the traditional orthodontia market—including the practices of at least a majority of the Board Members—rather than the public's health, welfare or safety. (*Id.*) It includes, among other things, coordinated statewide raids; false statements; misconduct in front of consumers; and a retaliatory accusation filed in response to the lawsuit. (*Id.*)

### 3. The Amended Complaint Alleges Facts Plausibly Showing That the Board Authorized the Campaign of Harassment and Intimidation.

The factual allegations of the Amended Complaint give rise to the reasonable inference that Executive Director Fischer actively coordinated with Tippins with respect to the campaign. For example, Tippins stormed a SmileBus at the Arden Fair Mall on the same day that Fischer received an email from the California Dental Association informing her that Sulitzer, P.C. had parked the bus at that location. (FAC ¶¶ 79-80) The allegations also give rise to the reasonable inference that this agreement extended to some or all of the

Board Members as well. The Board Members have a close working relationship with Fischer and the Enforcement Unit that involves frequent contact and communication, including regular updates concerning the Enforcement Unit's activities. (*Id.*) Given the number of investigators who participated in the campaign, the coordination necessary to conduct simultaneous raids in multiple locations, and the harassing and intimidating nature of the campaign, it is a reasonable inference that some or all of the Board Members and Fischer knew about and approved (or at least acquiesced to) the raids before they occurred.[1] (*Id.* ¶ 74) These allegations contain more than "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Kendall v. Visa, U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

### 4.    The Amended Complaint Also Alleges Facts Plausibly Showing That the Board Ratified the Campaign of Harassment and Intimidation.

The Amended Complaint also alleges more than sufficient facts showing an agreement by ratification. (D.I. 30 [Tentative Ruling], at 15) The Board Members and Fischer have statutory duties of oversight and training of investigators. (FAC ¶¶ 100-101) Tippins and other investigators conducted a multi-year campaign of harassment and intimidation characterized by abusive tactics and patent misconduct. (*Id.* ¶¶ 69, 73, 76, 79, 80-82, 85, 91) Lawyers for SDC brought this misconduct to the Board's attention, and demanded that the Board end it. (*Id.* ¶¶ 70, 77, 83-84, 87) The Board Members and Fischer, however, did nothing to investigate the misconduct, to stop that misconduct, or to reprimand or to punish anyone involved. (*Id.* ¶ 84) They instead referred the matter to litigation counsel and continued their misconduct to this day. (*Id.* ¶¶ 84, 91)

---

[1] Contrary to the Board's arguments (D.I. 44-1 [Board Memo.], at 13:13-23), "the complaint need not contain detailed 'defendant by defendant' allegations," but rather need allege only that, "each individual defendant joined the conspiracy and played some role in it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008). In any event, the Amended Complaint includes specific factual allegations concerning many individual Board Members. (*See, e.g.*, FAC ¶¶ 18, 20, 75, 79-87, 88)

### 5.  The Amended Complaint Alleges a Number of "Plus Factors" Plausibly Showing the Existence of an Agreement.

The Amended Complaint admittedly contains "more details" about the Board Members "directing, ratifying or at least refusing to stop" the campaign of harassment and intimidation. (D.I. 44-1 [Board Memo.], at 12:24-27) The Amended Complaint also expressly alleges a number of "plus factors" tending to exclude the possibility that the Board Members acted independently with respect to that direction, ratification and refusal to stop. Courts look to such "plus factors" as circumstantial evidence suggesting the inference of conspiracy is reasonable in light of the competing inferences of independent action. *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO SMS, 2011 WL 2678879, at *8 (E.D. Cal. July 7, 2011). These "plus factors" include:

- The Board Members had a motive to conspire to restrict SDC from competing in the Relevant Market. (FAC ¶¶ 60, 102(b)); Section I.A.2, *supra*; *N.C. Dental*, 574 U.S. at 510);

- The Board Members, Fischer and the Enforcement Unit had more than ample opportunity to collude given their close working relationships. (FAC ¶ 102(b); *see In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1119 (N.D. Cal. 2012) ("the overlapping board membership here provided an opportunity to conspire"); *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 948 (D. Ore. 2018) (sustaining claim where members of association regularly met to discuss and vote on business decisions and restraints on market));

- The highly regulated nature of dentistry—combined with the Board Members, Fischer and Tippins' authority over the regulated market— makes that market particularly susceptible to anti-competitive agreements. (FAC ¶ 102(c); Section I.A.1, *supra*)

- The campaign of harassment and intimidation, and the Board's failure to take any remedial action in response, were consistent, frequent, and

sustained over an extended period. This misconduct spanned the terms of different Boards and the tenures of different Board Members. (FAC ¶ 102(d); *N.C. State Bd. of Dental Examiners v. FTC*, 717 F.3d 359, 373 (4th Cir. 2013));

- The FTC and DOJ have filed amicus briefs supporting SDC's challenges to conduct in other states similar to that alleged in the complaint. (FAC ¶¶ 95, 102(e); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324 (2d Cir. 2010) (recognizing existence of pending government antitrust investigations as a "plus factor")).

Paragraph 102 of the Amended Complaint summarizes these "plus factors," but the Board does not even mention them in its memorandum, much less challenge their sufficiency. The Court, therefore, should hold that SDC plausibly has alleged an agreement.[2]

## B.    The Amended Complaint Alleges Facts Plausibly Showing That the Board Intended to Restrict or Restrain Trade.

In its Tentative Ruling, the Court states that the Board's agreement appears "without more in the way of factual allegations to the contrary—to be simply an agreement to undertake their delegated authority as members of the Board, not an agreement intending to restrict or restrain competition." (D.I. 30 [Tentative Ruling], at 15) The Board likewise argues that the allegations of the Amended Complaint merely "reflect the Board

_____

[2] None of the cases relied upon by the Board supports dismissal because those cases (some even after discovery) all involved bare allegations of conspiracy equally explainable by independent parallel action by competitors. *Kendall*, 518 F.3d at 1048 (affirming dismissal after discovery where plaintiffs "failed to plead any evidentiary facts beyond parallel conduct"); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1190 (9th Cir. 2015) (affirming dismissal of claim equally explainable by conscious parallelism where plaintiffs were granted discovery to state their claim); *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1129-30 (9th Cir. 2015) (affirming dismissal of claim where "the complaint includes no direct allegation of an agreement among the alleged co-conspirators," and "includes no specific allegation of wrongdoing that would indicate that the board members acted with an improper motive"). *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1113-14 likewise does not help the Board. That case involved a Sherman Act claim involving independent businesses and relied on a statement by the executive of one of the defendants in finding an agreement. Here, by contrast, the Board poses an inherently anticompetitive threat, and minutes from discussion of enforcement actions are not publicly available.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

functioning its ordinary regulatory capacity" rather than "collectively plotting an antitrust conspiracy." (D.I. 44-1 [Board Memo.], at 13:6-10) The Court should not dismiss Count I of the Amended Complaint on these grounds.

First, an antitrust plaintiff need not plead an intent to restrain trade to state a civil (as opposed to a criminal) Section 1 claim. *Paladin Associates, Inc. v. Montana Power Co*., 328 F.3d 1145, 1153-54 (9th Cir. 2003) ("Although a defendant's predatory intent may be relevant in determining whether a particular agreement is unreasonable, it is not required to prove the existence of an agreement.") (internal citation omitted). To the extent that the Court's earlier decision requires such allegations, it adds elements not part of a Section 1 claim.

Second, even if an intent to restrain trade were a required element, Federal Rule of Civil Procedure 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Third, in any event, the Board admits that the Amended Complaint contains "more detailed factual allegations supporting the proposition that [the Board] views [SDC] as a competitive threat …." (D.I. 44-1 [Board Memo.], at 12:7-9) These allegations "describe" the "motives or beliefs on the part of some Defendants to oppose" SDC (*Id*. at 12:19-20), undercutting any claim that the Board was "functioning in its ordinary regulatory capacity." (*Id*. at 13:7-8) Much like the board in *North Carolina Dental* perverted its otherwise ordinary regulatory authority to issue cease-and-desist letters and to make threats of the illegal practice of dentistry to achieve anticompetitive ends, the Board perverted its regulatory authority to have its Enforcement Unit conduct "investigations" to harass and intimidate a new competitor. These allegations include (in addition to allegations already discussed showing motive, opportunity, a particularly susceptible market, consistency and frequency):

- The aggressive and escalating nature of ongoing misconduct undercuts any claim that this was a usual or ordinary "investigation" in the regular course of the Board's business. Neither the Board Members nor Fischer would

have allowed a campaign of such harassment and intimidation for another investigation. (FAC ¶¶ 73, 76-77, 79, 81-82, 85, 91, 100, 103(a));

- The Board refused SDC's requests to meet concerning the "investigation," which it would not have done for a legitimate investigation, but instead immediately retained litigation counsel (*Id*. ¶ 84);

- The genesis of the campaign came from the American Association of Orthodontists, a trade association with the avowed purpose of opposing SDC's innovative business model and the competition that it represents. (*Id*. ¶¶ 64-65, 102(b));

- Many Board Members have close ties with trade organizations actively opposed to SDC's business model (*Id*. ¶¶ 13-14, 18-20, 23, 25-26, 61);

- Although any legitimate investigation should have remained confidential until the filing of a formal accusation, the Board communicated with trade associations opposed to SDC's business model with respect to the "investigation." (*Id*. ¶¶ 67-68, 79-80, 103(c));

- The members of the conspiracy made false statements about their actions and motives. (*Id*. ¶¶ 69, 103(f));

- Members of the Board made public statements critical of SDC and its business model. (*Id*. ¶¶ 62, 68); and

- The Board had not received any legitimate health and safety complaints from California consumers before it started the "investigation." (*Id*. ¶¶ 54, 66) Rather, Tippins sought after the fact to solicit consumer complaints by trolling internet websites and social media outlets. (*Id*. ¶ 86).

SDC also alleged that no obvious alternative explanation exists for the Board's failure to take any action to stop the campaign of harassment and intimidation or at least to meet with SDC, other than having an anticompetitive intent. (*Id*. ¶ 103(g)) The Board never even attempts to provide any such alternative explanation.

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

The facts showing the existence of an illegal agreement here are at least as compelling as in *North Carolina Dental*. While the Supreme Court's decision in that case focused on the immunity claims, the Fourth Circuit directly addressed and affirmed the FTC's determination that the dental board had violated Section 1. *N.C. State Bd. of Dental Examiners v. FTC*, 717 F.3d at 371. The similarities between that case and this one are striking. In both cases, the board members:

- Had personal financial interests in excluding new competitors. (*Id.* at 371; FAC ¶ 60);

- Discussed the new competitors during meetings. (*N.C. Dental*, 717 F.3d at 365; FAC ¶¶ 67-68);

- Opened an investigation after receiving complaints from existing market participants opposed to the new competitors. (*N.C. Dental*, 717 F.3d at 365; FAC ¶¶ 64-65);

- Lacked clinical or empirical evidence supporting the supposed threat posed by the new competitors or contemporaneous evidence of motivation by health or safety concerns. (*N.C. Dental*, 717 F.3d at 370 n.12; FAC ¶ 54);

- Engaged in a pattern of misconduct over an extended time. (*N.C. Dental*, 717 F.3d at 365; FAC ¶¶ 77-78, 91)

The Court noted that the original complaint did not contain allegations as to exactly who on the Board led and participated in the investigation, as in the Supreme Court's decision in *North Carolina Dental*. (D.I. 30 [Tentative Ruling], at 5 n.2[3]) However, *North Carolina Dental* involved an appeal after a trial before the FTC (which has the ability to conduct discovery before it even files a complaint (15 U.S.C. § 57b-1(c)(1))), not a motion to dismiss. The details concerning each of the Board Members' roles will come out during

---

[3] The same footnote also references a comment by the Chief Operations Officer of the North Carolina board. The Amended Complaint adds allegations of similar comments by Board Members here. (FAC, ¶¶ 62, 68)

discovery. The Court should not dismiss the Amended Complaint for failing to make similar allegations before SDC has had any opportunity to conduct discovery.

The allegations of the Amended Complaint make it more than plausible that the Board knew and intended that its agreement in, acquiescence to, or ratification of the campaign of harassment and intimidation served an unlawful end—interfering with the business of SDC in California. The Court therefore should deny the motion to dismiss Count I.

## II.     THE BOARD IS NOT IMMUNE TO THE CONSTITUTIONAL CLAIMS.[4]

### A.     Prosecutorial/Judicial Immunity Does Not Extend to the Investigative Conduct at Issue in This Lawsuit.

The Board claims it has absolute prosecutorial-judicial immunity against all of SDC's constitutional claims because those claims "arose from the Board investigation that led to the initiation of disciplinary proceedings against Dr. Sulitzer, and to the still-ongoing disciplinary proceedings themselves." (D.I. 44-1 [Board Memo.], at 15:3-5) A court generally should not decide absolute immunity issues on a motion to dismiss. *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013); *Miller v. Gammie*, 335 F.3d 889, 894 (9th Cir. 2003) (absent discovery, "not enough information was available to determine whether absolute immunity applied"). However, if the Court does address the issue, it should reject the Board's argument for several reasons.

First, prosecutorial-judicial immunity does not apply in this case because the Board only brought disciplinary proceedings in retaliation for the filing of this lawsuit. The Board only commenced proceedings after SDC filed this lawsuit. (FAC ¶ 88) Although the Board inaccurately sought to portray this lawsuit "as some kind of pre-emptive strike against the disciplinary proceedings" (D.I. 16-1 [Board Memo. on original Motion to Dismiss], at 2), the facts show otherwise. The disciplinary proceedings did not result from any complaint

---

[4] The Board has not argued that the Eleventh Amendment bars SDC's claims, nor can it. The Eleventh Amendment does not bar suit against state officials, in their individual capacities, for damages. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (state officials personally sued for damages under § 1983).

about Dr. Sulitzer, but rather from a two-and-a-half year-old complaint filed against SmileDirect by the AAO. (FAC ¶ 89) The timing of the disciplinary proceedings further underscores its retaliatory nature. The Enforcement Unit's "investigation" ended in January 2019, but the Board did not commence disciplinary proceedings until eleven months later, after this lawsuit began. (*Id.* ¶ 90) The Board has not pointed to any authority that it can immunize a years-long campaign of harassment and intimidation by filing such a retaliatory proceeding. Rather, all of the cases relied upon by the Board involve claims concerning existing state administrative proceedings. *See, e.g.*, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 919-21 (9th Cir. 2004); *Horwitz v. State Bd. of Med. Examiners of Colo.*, 822 F.2d 1508, 1510-15 (10th Cir. 1987).

Second, any claim of absolute immunity does not extend to the investigative—rather than prosecutorial or judicial—functions at issue in this lawsuit. *Buckler v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Mazaheri v. Pederson*, Case No. CV 08-2508 ABC (VBKx), 2010 WL 11601578, at *4-5 (C.D. Cal. Aug. 10, 2010) (no absolute immunity for California Medical Board investigation of doctor). The rationale for immunity does not extend to investigative functions, *Olsen*, 363 F.3d at 924:

- Unlike prosecutorial or judicial functions, there is no need to shield investigators from potential harassment. *See Malley v. Briggs*, 475 U.S. 335, 342 (1986) (no absolute immunity for police officer because role was not "intimately associated with the judicial phase of the criminal process," there is no "desire to shield abuses of office," and "any lesser degree of immunity could impair the judicial process itself") (citations omitted). Moreover, since investigative misconduct already can result in antitrust claims, there is no marginal harassment from constitutional claims.

- No procedural safeguards exist that reduce the need for private damages actions for investigative misconduct. The Board has not pointed to any procedural safeguards applicable to the conduct of its investigations, as

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

opposed to the conduct of the disciplinary hearings themselves. *See* Cal Bus & Prof Code §§ 125.9 (no hearing available unless violation issued); § 1670 (no hearing available unless license is suspended or revoked); § 1686 (same).[5] The Board cannot argue that any "informal" safeguards exist, since it refused to meet with lawyers representing SDC to stop the ongoing misconduct, despite repeated requests.

- The Board has not shown that it has insulated sufficiently its investigative process from political influence. On the contrary, as the Supreme Court has recognized, where a majority of a self-regulatory professional board's members actively participate in the marketplace, political influence in misuse of the board's regulatory authority remains a substantial concern. *See, e.g.*, *N.C. Dental*, 574 U.S. at 505 (2015).

- The investigative process does not involve any use of precedent. The Board has not shown that any indexed agency orders or guidance documents exist for conducting investigations.

- The investigative process is not adversarial in the same sense as an adjudication. Correctability does not exist because SDC cannot make an appeal from an investigator's conduct.

Third, in any event, absolute immunity cannot apply to the claims asserted by SmileDirect and Sulitzer, P.C. because they are not the subject of any Board administrative proceeding. For these reasons, the Court should reject the Board's claims of absolute immunity with respect to Counts II and III.

---

[5] During the March 19, 2020 hearing, the Court questioned why SDC could not bring a mandamus claim in state court to end the campaign of investigative harassment and intimidation. (D.I. 37 [Mar. 19, 2020 Transcript], at 8) A writ of mandamus, however, compels an act, rather than enjoins action. CCP § 1085(a). A writ of prohibition is unavailable because there is no underlying court order and Tippins is not a judicial officer. CCP § 1102. A writ of administrative mandate is not available because no administrative hearing had occurred and no final order existed before SDC filed this lawsuit. CCP § 1094.5(a).

**B.** **The Court Should Not Decide the Board's Claims of Qualified Immunity on a Motion to Dismiss.**

The Court also should not decide qualified immunity issues on a motion to dismiss. *See White v. Harris*, No. 2:13-6171-CAS(MANx), 2015 U.S. Dist. LEXIS 33831, at *33-34 (C.D. Cal. Mar. 16, 2015) (denying request to apply qualified immunity on a motion to dismiss); *Cleveland v. Fitter*, No. 2:17-cv-1893-DSF (GJS), 2020 U.S. Dist. LEXIS 88098, at *11 (C.D. Cal. Apr. 17, 2020) (same). The application of qualified immunity requires resolution of complicated factual issues generally not appropriate on a motion to dismiss. *See White*, 2015 U.S. Dist. LEXIS 33831, at *33-34 (qualified immunity analysis based on "facts alleged, taken in the light most favorable to the party asserting injury") (citation omitted). Moreover, a defendant bears the burden of showing that it "could not have reasonably known that [its] conduct did not conform to established law"—again making determination on a motion to dismiss inappropriate. *See id.* (where defendants failed to meet burden, motion to dismiss denied).

Generally, where a plaintiff properly pleads constitutional violations, the Court should not rule on qualified immunity on a motion to dismiss. *See Cleveland*, 2020 U.S. Dist. LEXIS 88098, at *11-12; *compare Maraziti v. First Interstate Bank*, 953 F.2d 520, 524 (9th Cir. 1992) (motion to dismiss granted only where plaintiff did not cite any constitutional case law and offered only generalized allegations). This is particularly true here because the constitutional rights at issue in this lawsuit—Dormant Commerce Clause and Substantive Due Process—are well established. *See, e.g., Dennis v. Higgins*, 498 U.S. 439, 448 (1991) (over 100 years, Court has "described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state regulation"); *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007) (due process right against government regulation hindering plaintiff's pursuit of profession).

In its ruling on the Motion to Dismiss, the Court incorrectly relied on Fourth Amendment case law[6] to hold that "the clearly established law must be 'particularized' to the facts of the case" and incorrectly shifted the burden of proof to SDC, finding that "Plaintiffs have failed that burden here." (D.I. 30 [Tentative Ruling], at 18) The Court should not apply the "particularized" standard from Fourth Amendment cases to this case. Courts have adopted that standard in the Fourth Amendment context because they recognize that instantaneous police officer decisions in dangerous situations pose unique decision-making challenges. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (requiring specificity because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"). Emergent police decisions in dangerous situations make it "difficult for an officer to determine how the relevant legal doctrine" applies. *Id.* (citation omitted).

In contrast, none of the actions at issue in this lawsuit involved split-second judgments. *See White*, 2015 U.S. Dist. LEXIS 33831, at *32 (not applying particularized standard in due process context). Tippins and Fischer presumably made their decisions to raid the SMILESHOP stores, storm the SmileBus (which collects the same information and uses the same equipment as the SMILESHOP stores (FAC, ¶ 52)), send out repeated harassing requests for information, and otherwise to harass and intimidate SDC only after careful and reasoned deliberation; the Board Members presumably directed, ratified, or at least refused to stop, the campaign of harassment and intimidation only after similar deliberation. They were not "investigating" life-threatening or highly dangerous conduct. They have not pointed (and, on a motion to dismiss, cannot point) to any facts showing that they faced any emergency requiring immediate, split-second decisions. Nor could they,

---

[6] The cases relied upon by the Court in the Tentative Ruling concern Fourth Amendment issues. (D.I. 30 [Tentative Ruling], at 17-18) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (excessiveness of force in emergent situation); *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014) (same); *Emmons v. City of Escondido*, 921 F.3d 1172, 1175 (9th Cir. 2019) (same); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038 (9th Cir. 2018) (same); *Olivier v. Baca*, 913 F.3d 852, 860 (9th Cir. 2019)).

OPPOSITION TO MOTION TO DISMISS
-15-        Case No. 2:19-CV-08902 GW (MAAX)

given that their "investigation" spanned many years. The Court, therefore, should not decide the qualified immunity doctrine on a motion to dismiss.

## III. THE AMENDED COMPLAINT PROPERLY ALLEGES A DORMANT COMMERCE CLAUSE CLAIM.

The Dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273 (1988). "Discrimination" is any "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). In assessing whether a law is discriminatory, "[t]he principal focus of inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects." *Lewis BT Inv. Managers, Inc.*, 447 U.S. 27, 37 (1980). Where "a restriction on commerce is discriminatory, it is virtually per se invalid." *Ore. Waste Sys.*, 511 U.S. at 99; *accord Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019). "By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Ore. Waste Sys.*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The Dormant Commerce Clause applies where, as here, interstate commerce is implicated because "Congress could regulate in that area." *Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*, 567 F.3d 521, 524, 528 (9th Cir. 2009).

Courts have sustained Dormant Commerce Clause claims arising from similar efforts of self-regulatory boards to protect local health markets from interstate competition. *See Leeds*, 382 F. Supp. 3d at 1242 (denying motion to dismiss where SmileDirect alleged that state regulation and enforcement "burdens the practice of dentistry across state lines and protects those in-state dentists who provide clear aligner therapy at their offices from competition by out-of-state dentists who, using [SmileDirect's] platform, could provide the

same treatment to Alabama patients at a lower cost"); *Teladoc, Inc. v. Tex. Med. Bd.*, Case No. 1-15-CV-343 RP, 2015 WL 8773509, at *11 (W.D. Tex. Dec. 14, 2015) (denying motion to dismiss related to regulation that, while facially neutral, was alleged to "constitute[] intentional discrimination against physicians located out of Texas"). Here, as in *Leeds* and *Teladoc*, the Board targeted new market entrants whose direct-to-consumer business model directly threatens traditional healthcare providers. (FAC ¶ 5; *Leeds*, 382 F. Supp. 3d at 1243-44; *Teladoc, Inc.*, 2015 WL 8773509, at *10-11). The Court similarly should deny the Board's motion to dismiss the Dormant Commerce Clause claim here.

### A. In-State Regulation Can Violate the Dormant Commerce Clause.

The Board primarily argues that the Court should dismiss Count II because the Amended Complaint does not "allege that Defendants took any actions, impartial or biased, outside California with respect to Plaintiffs. All the regulatory activity took place inside California." (D.I. 44-1 [Board Memo.], at 17:2-3) However, it is well established that a regulation occurring wholly within a state can run afoul of the Dormant Commerce Clause. *Lewis*, 447 U.S. at 39. In *Lewis*, the Supreme Court invalidated a Florida statute prohibiting any out-of-state bank holding company from owning or controlling a Florida investment advisory services firm. The Court concluded that the statute "prevent[ed] competition in local markets by out of-state firms with the kinds of resources and business interests that make them likely" to compete locally. 447 U.S. at 39. Likewise, in *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994), the Court invalidated a local ordinance that barred shipment of waste to cheaper processors out-of-state. The Court rejected the argument that the ordinance did not affect interstate commerce because it "reache[d] only waste within its jurisdiction." *Id*. at 389. "The essential vice in laws of this sort is that they bar" out-of-state competitors "of access to local demand for their services." *Id*. at 392; *see also Granholm v. Heald*, 544 U.S. 460 (2005) (holding unconstitutional state laws that treated out-of-state wine producers differently than in-state producers).

While the Board finally mentions *Lewis* (D.I. 44-1 [Board Memo.], at 16:13-15), it offers no explanation concerning how its claim that "all the regulatory activity took place

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

in California" makes any constitutional difference whatsoever in light of that case and the other Supreme Court decisions. Although the "immediate effect" of the Board's campaign of harassment and intimidation might be local, "its economic effects are interstate in reach" because it works to "deprive[] out-of-state business of access to a local market." *C&A Carbone, Inc.*, 511 U.S. at 383. The Board seeks to burden or to interfere with out-of-state competitors' access to local markets by having its Enforcement Unit harass and intimidate those out-of-state competitors. This violates the Dormant Commerce Clause.

**B.    The Dormant Commerce Clause Claim Does Not Depend on a Flawed Conception of the Board's Regulatory Authority.**

The Board also argues that the Dormant Commerce Clause claim "depends on an exceedingly narrow and legally flawed conception of the proper limits of the Board's regulatory authority." (D.I. 44-1 [Board Memo.], at 17:22-18:12) The Board, however, mischaracterizes SDC's position. SDC does not dispute the Board's power to regulate California-licensed dentists who work from other states. However, what the Board cannot do is undertake a campaign of harassment and intimidation against such dentists in order to protect dentists and orthodontists who live and work in California.[7] It is the Board's selective use (and abuse) of its regulatory powers that has caused injury to SDC and impermissibly burdened the interstate commerce that SDC has injected into the traditionally local markets for orthodontic services.

**C.    The Dormant Commerce Clause Applies to Governmental Misconduct That Burdens Interstate Commerce.**

In granting SDC leave to amend its Dormant Commerce Clause claim, the Court stated that it "finds the claim extremely problematic in part because Plaintiff's alleged facts are still nebulous as to the precise conduct or situation that gives rise to the violation of that clause." (D.I. 42 [Minute Order]) The Court earlier expressed a concern that SDC did

---

[7] Contrary to the Board's suggestion (D.I. 44-1 [Board Memo.], at 18:6-8), the Ninth Circuit has confirmed that "[m]odern dormant Commerce Clause analysis is applicable to all police power regulation, including the core areas of health and safety protection." *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 993 n.7 (9th Cir. 2009).

not plead any formal rule, regulation or order as the basis for its claim. (D.I. 37 [Mar. 19, 2020 Transcript], at 8) Although the Board did not make any similar argument in support of its motion, SDC wants to address the Court's concern. The Court should not permit the Board to raise new authority or new arguments on this issue in its reply brief.

The Amended Complaint properly alleges that the Board violated the Dormant Commerce Clause by knowingly abusing its governmental powers and authority to protect in-state business and to burden interstate commerce. Courts have repeatedly recognized Dormant Commerce Clause violations based on state actors' discriminatory application of their governmental powers to burden interstate commerce. *See, e.g.*, *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 527-28, 545 (1949) (state agriculture commissioner's denial of license to out-of-state milk plant operator violated Dormant Commerce Clause); *Florida Transp. Services, Inc. v. Miami-Dade County*, 703 F.3d 1230, 1257-58 (11th Cir. 2012) (port director's enforcement of stevedore permitting ordinance to protect incumbents and prevent competition from new entrants violated Dormant Commerce Clause); *Walgreen Co v. Rullan*, 405 F.3d 50, 55 (1st Cir. 2005) (facially neutral Puerto Rican certificate of need act, viewed "in light of the Secretary [of Health's] enforcement of the Act," discriminated "against interstate commerce by permitting the Secretary to block a new pharmacy from locating in its desired location simply because of the adverse competitive effects that the new pharmacy will have on existing pharmacies"). Here, California law empowers the Board and its agents to regulate dentists, to conduct inspections of books, records and premises, and to employ investigators to do so. Cal. Bus. & Prof. Code §§ 1601.1(c), 1611.5, 1616. The Board intentionally misused these governmental powers in order to protect in-state dentists against interstate competition by knowingly harassing and intimidating the out-of-state competitor.[8]

---

[8] The fact that campaign of harassment and intimidation did not result in the total elimination of interstate competition "makes no difference for the purposes of Commerce Clause analysis." *New Energy Co. of Indiana*, 486 U.S. at 275. Where, as here, discrimination is present, "neither a widespread advantage to in-state interests nor a widespread disadvantage to out-of-state competitors need be shown." *Id*. at 276.

Despite many opportunities, the Board has not pointed to any authority limiting the application of the Dormant Commerce Clause only to formal rules, regulations or orders. SDC is not aware of any such authority and it would be unfair for the Board to raise a claim of such authority for the first time in its reply brief. Any limitation to formal rules, regulations or orders would run directly counter to the purposes underlying the Dormant Commerce Clause. The fact that the Board has imposed this burden by abusing its state-given regulatory and investigative powers—rather than issuing a formal rule, regulation or order—only makes matters worse. By abusing existing regulations to discriminate against SDC instead of going through the normal rulemaking process required under California law, the Board has evaded transparency, political supervision and accompanying accountability. The Court therefore should not dismiss Count II because SDC has failed to allege any formal rule, regulation or order.

### D.   The Amended Complaint Contains More Than Sufficient Allegations That the Burden on Interstate Commerce Is Excessive Relative to the Putative Local Benefits.

The Board's campaign of harassment and intimidation intentionally and specifically targeted the interstate commerce injected into traditional local markets for orthodontics by SmileDirect's tele-dentistry platform. (FAC ¶¶ 93, 96, 111) The Court, therefore, should find it per se violates the Dormant Commerce Clause. *See Granholm*, 544 U.S. at 476. Even if the Board's campaign of harassment and intimidation did not intentionally favor in-state interests over out-of-state interests, SDC still states a Dormant Commerce Clause claim under the *Pike* balancing test to determine whether the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).

Because the Amended Complaint contains substantial facts challenging the legitimacy of the purported local interest asserted by the Board, the Court should not balance interests on a motion to dismiss given the fact-intensive nature of the test. *See Leeds*, 382 F. Supp. 3d at 1243; *Teladoc, Inc.*, 2015 WL 8773509, at *12 (declining to

dismiss Dormant Commerce Clause claim because resolution of the claim is "one of degree" requiring an "inherently fact-intensive" inquiry); *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013) (reversing dismissal of Dormant Commerce Clause claim because "[t]he *Pike* inquiry, like the discrimination test, is fact-bound" and declining to "attempt to forecast what further investigation may demonstrate"); *Magna Legal Services v. Arizona ex rel. Bd. of Certified Reporters*, No. CV-13-00802-PHX-NVW, 2013 WL 4478933, at *7 (D. Ar. Aug. 21, 2013) (declining to dismiss claim where plaintiff alleged board rules prohibiting draft transcripts from being completed outside Arizona had illusory benefits and that the sole purpose behind them was anticompetitive animus).

Contrary to the Board's suggestion (D.I. 44-1 [Board Memo.], at 17:1-21), the Amended Complaint contains more than adequate allegations of fact showing that burden on interstate commerce is excessive relative to the putative local benefits. The Amended Complaint alleges, among other things, that SDC has collected photographs, scans and consumer information from over 100,000 without any complaints about that collection (FAC ¶ 54); that the Board had not received any legitimate health and safety complaints from California consumers before it started the "investigation" (*Id.* ¶66); that the genesis of the "investigation" instead came from the AAO, a trade association with the avowed purpose of opposing SDC's innovative business model and the competition that it represents (*Id.* ¶¶ 64-65, 102(b)); that the Enforcement Unit stormed the SmileBus the day after closing an investigation finding no evidence to substantiate charges (*Id.* ¶¶ 78-79); and that the Board's campaign of harassment and intimidation does not serve any legitimate governmental purpose, but rather is driven by anti-competitive animus and economic protectionism specifically targeting interstate commerce. (*See, e.g.*, FAC ¶¶ 6, 39, 46-49, 93, 96, 110-113) Rather than promoting public health, the Board's attempt to prevent SDC from serving the California market threatens to deprive California consumers of the reduced costs, greater convenience, increased access, and enhanced consumer choice that SmileDirect's tele-dentistry platform affords. (FAC ¶¶ 45-50, 54-55) Given these extensive

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

factual allegations, the Court should not conduct the balancing test on a motion to dismiss, but rather on a full evidentiary record. The Court therefore should deny the motion to dismiss Count II.

## IV.  THE AMENDED COMPLAINT PROPERLY ALLEGES A SUBSTANTIVE DUE PROCESS CLAIM.

In dismissing the original complaint, the Court found that because SDC had not alleged a "complete prohibition on" Dr. Sulitzer's "ability to practice" dentistry, "the question is just whether the action is related to a legitimate state interest" (D.I. 30 [Tentative Ruling], at 21) The Court dismissed the complaint because a "mere "'speculative and conclusory' no-legitimate-purpose allegation does not automatically make their claim viable." (*Id.* at 22)

As just explained (Section II.D., *supra*), the Amended Complaint goes well beyond a mere speculative and conclusory allegation of no legitimate purpose and contains detailed allegations showing that the Board's misconduct was not related to any legitimate state interest. In particular, the "investigation" did not result from any consumer complaints or legitimate concern about monitoring whether Dr. Sulitzer and Sulitzer, P.C. were appropriately practicing dentistry, but rather from a two-and-one-half year old economic complaint of a trade organization representing traditional dental and orthodontic providers. (FAC ¶¶ 6, 39, 46-49, 54, 64-65, 93, 96, 102(b), 110-113) The Ninth Circuit recognizes that economic protectionism is not a legitimate state interest. *See Merrifield v. Lockyer*, 547 F.3d 978, 991–92 & n.15 (9th Cir. 2008) (holding that "economic protectionism for its own sake, regardless of its relation to the common good, cannot be said to be in furtherance of a legitimate government interest"). The Amended Complaint therefore has properly alleged a violation of SDC's Substantive Due Process rights.

In addition, the filing of this lawsuit prompted retaliation in the form of the administrative proceeding against Dr. Sulitzer seeking to revoke his dental license. (FAC ¶ 88) Revocation of Dr. Sulitzer's dental license would result in a complete deprivation of his right to pursue his occupation as a dentist in California. Because the Board's escalating

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

campaign of harassment and intimidation threatens a complete deprivation of Dr. Sultizer's rights, the Amended Complaint states a Substantive Due Process claim for this reason as well. *E.g.*, *Cornwell v. California Bd. of Barbering & Cosmetology*, 962 F. Supp. 1260, 1271 (S.D. Cal. 1997) (the "Ninth Circuit has consistently held that the due process clause provides people with a constitutional 'right to pursue an occupation'"); *Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*, No. 3:12-CV-738-AC, 2013 WL 1826141, at *6 (D. Or. Apr. 30, 2013), *aff'd sub nom. Speed's Auto Servs. Grp., Inc. v. City of Portland, Oregon*, 685 F. App'x 629 (9th Cir. 2017) (city's threat to suspend limousine service's permits "adequately alleged a constitutionally protected interest in both their right to pursue their chosen occupation and in the goodwill associated with their limousine businesses")

The Board argues that it was "legitimate for the Board, responding to a third-party complaint about the possible unlicensed practice of dentistry by SmileDirect or its agents, to have investigators visit SmileDirect's retail locations in California, to gather evidence about the possible unlicensed practice of dentistry." (D.I. 44-1 [Board Memo.], at 19:8-11) This argument, however, asks the Court to draw all inferences in the Board's favor and to ignore allegations concerning, among other things, a simultaneous, unannounced, state-wide raid of the SMILESHOP stores (FAC ¶ 73); daily demands for information and records (*Id.* ¶ 77); serious misconduct on a SmileBus the day after the Enforcement Unit closed an investigation finding nothing to substantiate formal charges (*Id.* ¶¶ 78-79); and the Board's coordination of the investigation with trade organizations vehemently opposed to SmileDirect's business model. (*Id.* ¶¶ 61, 64-68, 80, 90, 118(b)) The Court, however, should draw all reasonable inference in SDC's favor, not the Board's. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court should not resolve complicated factual disputes relating to SDC's constitutional claim on a motion to dismiss, but only on a full evidentiary record after SDC has had the opportunity to conduct discovery. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). The Court therefore should deny the motion to dismiss Count III.

## V. THE AMENDED COMPLAINT ADEQUATELY ALLEGES AN UNFAIR COMPETITION CLAIM.

### A. The Government Claims Act Immunities and Notice Provisions Do Not Apply Because Count IV Primarily Seeks Injunctive Relief.

Count IV primarily seeks injunctive relief. The Government Claims Act immunities relied upon by the Board (D.I. 44-1 [Board Memo.], at 20:10-21:23) therefore do not apply to that claim. Cal. Gov't Code § 814 ("Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."); *see Montoya v. City of San Diego*, No. 19CV0054 JM(BGS), 2020 WL 353595, at *8 (S.D. Cal. Jan. 21, 2020) (where a complaint seeks "injunctive and declaratory relief under the ADA, a remedy that is expressly provided for under section 814 of the California Code . . . the California Government Tort Liability Act [does] not bar equitable remedies") Similarly, the Government Claims Act notice requirements relied upon by the Board (D.I. 44-1 [Board Memo.], at 22:24-25:10) have no application. Cal. Gov't Code § 905; *Qwest Commc'ns Corp. v. City of Berkeley*, 146 F. Supp. 2d 1081, 1090 (N.D. Cal. 2001) (injunctive relief is not subject to the procedural requirements of California's Government Claims Act).

### B. The Amended Complaint Properly Alleges an Unfair Competition Claim.

The Amended Complaint alleges an unfair competition claim under California Business and Professions Code sections 17200, *et seq*. Count IV specifically alleges under the unlawful and unfair prongs of Cal. Bus. & Prof. Code § 17200 that the Board engaged in and directed a "campaign of harassment and intimidation; posing as fake customers, harassing employees and intimidating customers; raiding SMILESHOP stores across California; targeting other Treating Doctors with various records requests; invading the SmileBus; and failing to abide by SDC's counsel's instructions regarding correspondence; and continuing to re-issue records requests to other Treating Doctors." (FAC ¶ 122) These harassing activities violate the Sherman Act. The Amended Complaint therefore

OPPOSITION TO MOTION TO DISMISS
Case No. 2:19-CV-08902 GW (MAAX)

adequately pleads a § 17200 cause of action. *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38 (2015).

## **CONCLUSION**

For the reasons set forth above, SDC requests that this Court deny the Board's Motion to Dismiss in its entirety. If, however, the Court grants any part of the Board's Motion to Dismiss, SDC requests leave to amend to address any concerns by filing a Second Amended Complaint.

DATE: JUNE 11, 2020                    **FOLEY & LARDNER LLP**
                                        BYRON J. McLAIN


                                        BY: */S/ BYRON J. MCLAIN*
                                           BYRON J. McLAIN
                                           Attorneys for Plaintiffs Jeffrey Sulitzer,
                                           D.M.D.; Jeffrey Sulitzer, D.M.D., a
                                           Professional Corporation; and
                                           SmileDirectClub, LLC