XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
State Bar No. 184162
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6246
  Fax:  (916) 731-2124
  E-mail:  Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendants Joseph Tippins; Karen M.
Fischer, M.P.A.; Fran Burton, M.S.W.; Steven
Morrow, D.D.S., M.S.; Steven Chan, D.D.S.; Yvette
Chappell-Ingram, M.P.A;, Ross Lai, D.D.S.; Lilian
Larin, D.D.S.; Huong Le, D.D.S., M.A.; Meredith
McKenzie, Esq.; Abigail Medina, Rosalinda
Olague, R.D.A., B.A.; Joanne Pacheco, R.D.H.,
M.A.O.B.; Thomas Stewart, D.D.S.; Bruce L.
Whitcher, D.D.S.; and James Yu, D.D.S., M.S.*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION (FIRST STREET COURTHOUSE)

| | |
|---|---|
| **JEFFREY SULITZER, D.M.D., AN INDIVIDUAL; JEFFREY SULITZER, D.M.D., A CALIFORNIA PROFESSIONAL CORPORATION; AND SMILEDIRECTCLUB, LLC, A TENNESSEE LIMITED LIABILITY COMPANY,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**JOSEPH TIPPINS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN INVESTIGATOR IN THE ENFORCEMENT UNIT OF THE DENTAL BOARD OF CALIFORNIA; KAREN M. FISCHER, M.P.A., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR FOR THE DENTAL BOARD OF CALIFORNIA; AND FRAN BURTON, M.S.W.; STEVEN MORROW, D.D.S., M.S.; STEVEN CHAN,** | Case No. CV 19-08902-GW-MAA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (FED. R. CIV. P. 12(B)(6))**<br><br>Date:          July 9, 2020<br>Time:          8:30 a.m.<br>Courtroom:  9D (9th Flr.)<br>Judge:         Hon. George H. Wu<br>Trial Date:   Not Set Yet<br>Action Filed: October 16, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.D.S.; YVETTE CHAPPELL-
INGRAM, M.P.A.; ROSS LAI,
D.D.S.; LILIAN LARIN, D.D.S.;
HUONG LE, D.D.S., M.A.;
MEREDITH McKENZIE, ESQ.;
ABIGAIL MEDINA; ROSALINDA
OLAGUE, R.D.A., B.A.; JOANNE
PACHECO, R.D.H., M.A.O.B.;
THOMAS STEWART, D.D.S.;
BRUCE L. WHITCHER, D.D.S.; AND
JAMES YU, D.D.S., M.S., EACH
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES AS OFFICERS AND/OR
MEMBERS OF THE DENTAL BOARD OF
CALIFORNIA; AND DOES 1-10,
INCLUSIVE;

                              Defendants.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT..........................................................................................................1

I.    Plaintiffs Still Have Not Pleaded a Plausible Sherman Act, Section 1, Cause of Action.......................................................................1

    A.    The Alleged Facts Indicate Lawful Behavior.............................1

    B.    Plaintiffs Use Mere Rhetorical Techniques to Try to Generate the Requisite "Plus Factors" for an Antitrust Conspiracy ...................................................................................3

    C.    The Antitrust Case Decisions that Plaintiffs Cite Uniformly Support Dismissing this Cause of Action.................4

II.    Plaintiffs Have Not Rebutted Defendants' Claims of Absolute Immunity to the Two Constitutional-Law Causes of Action ..............9

III.    Plaintiffs Still Have Not Pleaded a Plausible Dormant Commerce Clause Cause of Action ....................................................10

    A.    The Present Case Does Not Resemble Other Dormant Commerce Clause Cases. .........................................................10

    B.    Plaintiffs Have Not Alleged Actionable Interference with Interstate Commerce..................................................................12

IV.    Plaintiffs Still Have Not Pleaded a Plausible Due Process Clause Cause of Action.........................................................................12

V.    Plaintiffs Still Have Not Pleaded a Plausible California Unfair-Competition Cause of Action.....................................................13

VI.    Alternatively, The Court Should Dismiss The 11 Defendants About Whom Plaintiffs Make No Individual Allegations .................14

CONCLUSION.....................................................................................................14

**CASES**

*American Needle, Inc. v. Nat'l Football League*
    560 U.S. 183 (2010) ........................................................................... 6

*Anrig v. Rigsby United*
    603 F.2d 1319 (9th Cir. 1978) ....................................................... 14

*Apple Corps Ltd. v. Int'l Collectors Soc'y*
    15 F.Supp.2d 456 (D.N.J. 1998)...................................................... 2

*Arizona v. Maricopa Cnty. Med. Soc'y*
    457 U.S. 332 (1982) ........................................................................... 8

*Ashcroft v. Iqbal*
    556 U.S. 562 (2009) ......................................................................... 13

*Buckler v. Fitzsimmons*
    509 U.S. 259 (1993) ........................................................................... 9

*C&A Carbone, Inc. v. Town of Clarkstown*
    511 U.S. 383 (1994) ......................................................................... 11

*CollegeNet, Inc. v. Common Applic., Inc.*
    355 F. Supp. 3d 926 (D. Ore. 2018) .............................................. 7

*Federal Trade Comm'n v. Indiana Fed. of Dentists*
    476 U.S. 447 (1986) ........................................................................... 8

*Florida Transp. Servs., Inc. v. Miami-Dade Cnty.*
    703 F.3d 1230 (11th Cir. 2012) .................................................... 10

*Ginsburg, Feldman & Bress v. Fed. Energy Admin.*
    591 F.2d 717 (D.C. Cir. 1978) ...................................................... 10

*Granholm v. Heald*
    544 U.S. 460 (2005) ......................................................................... 10

*H.P. Hood & Sons, Inc. v. Du Mond*
    336 U.S. 525 (1949) ......................................................................... 11

*In re Graphics Processing Units Antitrust Litig.*
    527 F.Supp.2d 1011 (N.D. Cal. 2007)............................................ 7

*In re Graphics Processing Units Antitrust Litig.*
   540 F.Supp.2d 1085 (N.D. Cal. 2007)...................................................... 7

*In re High-Tech Employee Antitrust Litig.*
   856 F. Supp. 2d 1103 (N.D. Cal. 2012)............................................... 5, 6

*In re Musical Instruments and Equip. Antitrust Litig.*
   798 F.3d 1186 (9th Cir. 2015) ................................................................ 3

*International Franchise Ass'n, Inc. v. City of Seattle*
   803 F.3d 389 (9th Cir. 2015) ............................................................... 11

*Leeds v. Board of Dental Exam'rs of Ala.*
   382 F. Supp. 3d 1214 (N.D. Ala. 2019) ........................................... 5, 10

*Lewis v. BT Inv. Managers*
   447 U.S. 27 (1980) ............................................................................... 11

*Monsanto Co. v. Spray-Rite Serv. Corp.*
   465 U.S. 752 (1984) ............................................................................... 8

*National Soc'y of Prof'l Eng'rs v. United States*
   435 U.S. 679 (1978) ............................................................................... 8

*Nayab v. Capitol One Bank USA (N.A.)*
   942 F.3d 480 (9th Cir. 2019) ............................................................. 1, 3

*New Energy Co. of Ind.v. Limbach*
   486 U.S. 269 (1988) ............................................................................. 11

*North Carolina State Bd. of Dental Exam'rs v. Federal Trade Comm'n*
   574 U.S. 494 (2015) ........................................................................... 5, 6

*SmileDirectClub, LLC v. Georgia Bd. of Dentistry*
   Case No. 1:18-cv-02328-WMR, 2019 WL 3557892 (N.D. Ga. May
   8, 2019)................................................................................................... 5

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*
   Case No. CV F 09-0560 LJO SMS, 2011 WL 2678879 (E.D. Cal.
   Jul. 7, 2011) ........................................................................................... 6

*Teladoc, Inc. v. Texas Med. Bd.*
   Case No. 1-15-CV-343 RP, 2015 WL 8773509 (W.D. Tex. Dec. 14,
   2015)............................................................................................... 10, 11

iii

*Walgreen Co. v. Rullan*
   405 F.3d 50 (1st Cir. 2005) ...................................................................... 11

**STATUTES**

15 U.S. Code § 1 ..................................................................................... 1, 4, 5

Cal. Gov. Code § 900 .................................................................................. 13

Cal. Bus. & Prof. Code
   § 1600 ............................................................................................................ 1
   § 17200 .......................................................................................................... 1

**COURT RULES**

Fed. R. Civ. Proc.
   8(a) ................................................................................................................. 1
   8(a)(2) ............................................................................................................ 3
   8(a)(3) ............................................................................................................ 3
   12(b)(6) .......................................................................................................... 2

**INTRODUCTION**

After filing two long complaints and four briefs arguing that the complaints are sufficient, Plaintiffs have had ample opportunity to make coherent factual allegations of wrongdoing on the part of Defendants, and to explain the legal significance of the allegations.  Yet Plaintiffs' allegations are clear in only one respect—Plaintiffs have not suffered any injuries.  And, although Plaintiffs have cited dozens of cases, there is precious little legal support for the proposition that those allegations form any viable cause of action.  Plaintiffs' first cause of action, for Sherman Act antitrust conspiracy (15 U.S.C. § 1), concerns the actions of just a few Defendants, who have been revealed to be just doing their jobs of regulating the practice of dentistry in California, notwithstanding Plaintiffs' use of rhetorical tricks to try to generate a sense of wrongdoing.  The cause of action remains implausible.  Plaintiffs' second cause of action, for violation of the Dormant Commerce Clause, does not resemble any past accepted cause of action of that kind.  There is no indication that Defendants, whose work is presumptively in the public interest, have burdened, must less unduly burdened, interstate commerce. Plaintiffs' third cause of action, for violation of the Due Process Clause, suffers from a similar flaw, as there is no indication that Defendants have infringed any rights of Plaintiffs.  And Plaintiffs' fourth cause of action, for violation of California's Unfair Competition Law, contains all the flaws of the preceding three causes of action.  Accordingly, this Court should dismiss this case a second time, this time with prejudice.

**ARGUMENT**

**I.    Plaintiffs Still Have Not Pleaded a Plausible Sherman Act, Section 1, Cause of Action**

**A.    The Alleged Facts Indicate Lawful Behavior**

Despite having had two chances to plead a Sherman Act, section 1, violation by Defendants, Plaintiffs do not come close to meeting the Federal Rule of Civil

Procedure 8(a) pleading standard of not just possible but "plausible," and with remediable injuries. *See Nayab v. Capitol One Bank USA (N.A.)*, 942 F.3d 480, 495-97 (9th Cir. 2019) (and the cases that Defendants cited in the moving papers). Just as before, Plaintiffs portray commonplace investigative and prosecutorial work of the Dental Board of California (the "Board") as an antitrust conspiracy to drive Plaintiffs' $100-million SmileDirectClub enterprise out of business in the State. But the alleged fact pattern, taken as true for purposes of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, is fundamentally innocuous:

(1)     the receipt of a complaint about Plaintiffs from a well-known third-party organization (the American Association of Orthodontists (the "AAO"); Memo. in Opp. to Mtn. to Dismiss First Am. Compl., Dkt. Item No. 45, on file herein ("Plfs.' Opp.") at 22:15-22:19), with whom Defendants, and each of them, have no affiliation;

(2)     the initiation of an investigation into Plaintiffs' burgeoning business activities in California;

(3)     the inspections of a few of Plaintiffs' dozens of California retail locations;

(4)     the interviewing of a few of Plaintiffs' employees and customers or potential customers;[1]

(5)     the gathering of some of Plaintiffs' business records;

(6)     the rejection of Plaintiffs' lawyers demands to access confidential investigatory information and strategies  (see First Am. Compl. for Damages (Etc.), Dkt. Item No. 43, on file herein ("FAC"), Exh. A ("We have implored you […] to

---

[1] Plaintiffs condemn Co-Defendant Joseph Tippins ("Investigator Tippins"), a peace officer and an investigator for the Board, for posing as a potential customer to gather evidence and information during the investigation.  (Plfs.' Opp. at 9:16-9:17, 24:20-24:28.)  However, what Investigator Tippins allegedly did is a common, lawful investigative technique.  See *Apple Corps Ltd. v. Int'l Collectors Soc'y*, 15 F.Supp.2d 456, 475 (D.N.J. 1998) (collecting cases approving posing as tenant to investigate housing discrimination, job applicant to investigate employment discrimination, etc.).

discuss the nature of any investigation being conducted…")) while the investigation is ongoing;[2] and

(7)     the filing in an administrative tribunal of a formal accusation against Plaintiff Jeffrey A. Sulitzer, D.M.D., a California-licensed dentist, for violating the California Dental Practice Act, California Business and Professions Code section 1600 et seq.

(See, generally, FAC.)  Notably, the disciplinary proceeding against Dr. Sulitzer is ongoing at this time; the outcome is as yet unknown.

Plaintiffs' proffered fact pattern both (1) comports with lawful behavior (and is therefore insufficient to state a viable cause of action, under Federal Rule of Civil Procedure 8(a)(2) and *Nayab*, *supra*) and (2) does <u>not</u> indicate any remediable harm to Plaintiffs (and is therefore insufficient under Federal Rule of Civil Procedure 8(a)(3) (requiring showing of entitlement to relief)).  Therefore, for two separate reasons, the antitrust cause of action fails as a matter of law and should be dismissed, this time with prejudice.

**B.     Plaintiffs Use Mere Rhetorical Techniques to Try to Generate the Requisite "Plus Factors" for an Antitrust Conspiracy**

Given the objectively mundane fact pattern here, Plaintiffs have attempted to generate the requisite "plus factors" for an antitrust conspiracy (see *In re Musical Instruments and Equipment Antitrust Litigation*, 798 F.3d 1186, 1194 (9th Cir. 2015) (defining concept)) by using substantively vacant rhetorical techniques, such as:

(1)     inflammatory word choices—e.g.,

(a)     "raid" instead of "inspection" (Plfs.' Opp. at 4:17-4:19),

(b)     "storm" or "invad[e]" instead of "go to see" (*id.* at 4:25-

---

[2] As Plaintiffs' lawyers must acknowledge, Co-Defendant Karen M. Fischer, M.P.A., the Board's Executive Officer, had the investigative file disclosed to Dr. Sulitzer after the formal accusation was made.  That file contained the AAO complaint, which Plaintiffs have cited in this case.

4:27, 17:15-17:21; 24:20-24:27);[3]

      (c)    putting quotation marks around the word "inspection," implying its illegitimacy (*id.* at 22:15-22:19);

      (e)    "The Board had not received any <u>legitimate</u> health and safety complaints from California consumers before it started the 'investigation'" (*id.* at 9:20-9:21 (emphasis added));

      (f)    "trolling internet websites and social media outlets" rather than "conducting online research" (*id.* at 9:22-9:23);

(2)    expressions of outrage about typical, unobjectionable activities or circumstances—e.g.,

      (a)    the Board members talk and work with the Board's Executive Officer and receive periodic briefings about the Board's law-enforcement activities (*id.* at 5:1-5:7);

      (b)    the Board members who are dentists belong to the American Dental Association (*id.* at 6:15-6:22, 9:10-9:11); and

      (c)    some Defendants "[h]ad personal financial interests in excluding new competitors" (*id.* at 10:7-10:8)—just like <u>every</u> businessperson <u>ever</u> has had;

      (d)    "daily <u>demands</u> for information and records" (*id.* at 17:15-17:21 (emphasis added)); and

(4)    unfortunate gender stereotypes about meek women—e.g., "Tippins treated the <u>female</u> manager in a rude, intimidating, and harassing manner" (FAC, ¶ 82 (emphasis added)).

---

[3] These allegations concern Investigator Tippins's visit to and inspection of the SmileBus after it was spotted at a shopping mall in Sacramento, CA (FAC, ¶¶ 79-80), the city where the Board's offices, like most California government headquarters, are located.  (See the Board's official Internet site, https://www.dbc.ca.gov/, listing the Sacramento address on the home page.)  Given that the SmileBus is mobile, when it was spotted near the Board's offices, it was simply efficient—not suspicious—for Investigator Tippins to take the opportunity to board the SmileBus, instead of trying to track it down later, elsewhere in the State.

This rabble-rousing approach to pleading an antitrust count should be rejected.  It is absurd for Plaintiffs to claim that Defendants have been "abusing" the Board's "unchecked" regulatory authority "[f]or over 2.5 years" to "stifle" Plaintiffs "us[ing] any means" (Plfs.' Opp at 1:2-1:9), because <u>nothing</u> has happened to Plaintiffs.  They have had to put up with the inconveniences of being investigated.  That is all.  Plaintiffs' accusations of an antitrust conspiracy of Defendants are implausible and should be dismissed with prejudice.

### C.  The Antitrust Case Decisions that Plaintiffs Cite Uniformly Support Dismissing this Cause of Action

Ironically, all the numerous antitrust case decisions that Plaintiffs have cited in their opposition to Defendants' motion to dismiss the Sherman Act claim only expose the yawning gap between allegations of antitrust violations that survive dismissal motions and Plaintiffs' meager pleadings here.

In *SmileDirectClub, LLC v. Georgia Board of Dentistry*, Case No. 1:18-cv-02328-WMR, 2019 WL 3557892 at *1 (N.D. Ga. 2019) (see Plfs.' Opp. at 3), Georgia's state regulatory agency for the dental industry enacted a new regulation that required that licensed dentists directly supervise dental assistants in generating digital images of the insides of the mouths of customers or potential customers for orthodontic appliances.  This new regulation effectively outlawed SmileDirectClub, LLC's method of generating those images.  *SmileDirectClub*, 2019 WL 3557892 at *1.  Here, in contrast, the Board has neither enacted any new regulations nor otherwise outlawed SmileDirect's method of generating images.

In *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 574 U.S. 494 (2015) (see Plfs.' Opp. at 2), North Carolina's state regulatory agency for the dental industry (1) sent at least 47 cease-and-desist letters to the non-dentist competitors of the Board's dentist members, to stop the offering of teeth-whitening services; (2) persuaded the state regulatory agency for the cosmetology industry to warn cosmetologists not to offer teeth-whitening services;

and (3) sent letters to shopping-mall operators advising them that mall kiosks offering teeth-whitening services were illegal and should be expelled from the premises. *North Carolina State Bd.*, 574 U.S. at 501. "These actions had the intended result. Nondentists ceased offering teeth whitening services in North Carolina." *Ibid.*; see also *Leeds v. Bd. of Dental Exam'rs of Ala.*, 382 F. Supp. 3d 1214, 1223 (N.D. Ala. 2019) (similarly involving cease-and-desist letter) (see Plfs.' Opp. at 3). In contrast, in the present case, the Board has not issued any cease-and-desist letters to anyone or advised anyone to stop doing business with Plaintiffs. The "result" of Defendants' non-action has been, of course, no interference with Plaintiffs' business.

In *In re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012), the plaintiffs alleged that, for five years, a group of major Silicon Valley companies carried out a mutual "no-poach" pact against recruiting one another's software engineers, to suppress their wages, and thus to save the companies money illegally. *Id.* at 1108-09. The U.S Department of Justice, Antitrust Division ("DOJ Antitrust"), had already investigated the matter, sued the companies, and obtained stipulated judgments in which the companies <u>admitted</u> that DOJ Antitrust's complaint stated a viable antitrust cause of action, and submitted to injunctive relief. *Id.* at 1110-11. In contrast, in the present case, Defendants have not taken any actions to suppress anyone's wages, or to do anything remotely similar, and DOJ Antitrust has not investigated Defendants, much less extracted their admissions that a viable antitrust claim has been stated on these factual allegations. Plaintiffs imply that there is a "pending government antitrust investigation" against Defendants (Plfs.' Opp. at 7:5-7:9), but there is no such investigation. What Plaintiffs refer to are mere amicus briefs that DOJ Antitrust and the Federal Trade Commission have filed in out-of-state lawsuits against other state regulatory agencies, to defend trial-court decisions to deny dismissal motions based on immunity defenses. (See FAC, Exhs. C, D.)

In *Stanislaus Food Products Co. v. USS-POSCO Industries*, Case No. CV F 09-0560 LJO SMS, 2011 WL 2678879 at *1 (E.D. Cal. Jul. 7, 2011) (see Plfs.' Opp. at 6), the plaintiff, a California tomato cannery, alleged that it had been forced to pay artificially inflated prices for tin cans, because the nation's tin-product manufacturers had unlawfully geographically allocated the overall market, leaving only one Western U.S. supplier, which acted like a monopolist.  In contrast, in the present case, there are no allegations of market allocation, artificially high prices, monopolists, or the like.

In *American Needle, Inc. v. National Football League*, 560 U.S. 183, 187 (2010) (see Plfs.' Opp at 2), the plaintiffs alleged that by a formal joint-venture agreement all 32 National Football League teams granted an exclusive license to one company (Reebok International Ltd.) to manufacture the helmets that all the NFL players use, thereby destroying the businesses of the other long-time manufacturers of NFL helmets.  In contrast, in the present case, there is no joint venture, no exclusive license or anything remotely similar, and no destruction of any business.

In *In re Graphics Processing Units Antitrust Litigation*, 540 F.Supp.2d 1085 (N.D. Cal. 2007) (see Plfs.' Opp. at 2), the plaintiffs alleged in detail the multi-year diminishing business competition between two companies that together dominated the market for graphics processing units ("GPUs"), a component for some consumer electronics.  *Graphics Processing*, 540 F.Supp.2d at 1092.  Before the two companies formed a duopoly in the market for GPUs, the companies had vigorously competed, rushing new products to market and undercutting each other in pricing.  *Id.* at 1089.  After together achieving a duopoly, the companies held secret meetings, and began releasing new products simultaneously and with similar pricing.  540 F.Supp.2d at 1089, 1092-94.  Moreover, at a time when most components for consumer electronics were becoming less expensive, GPU prices stabilized and then increased.  *In re Graphics Processing Units Antitrust Litigation*,

527 F.Supp.2d 1011, 1014 (N.D. Cal. 2007); see also *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926 (D. Ore. 2018) (involving somewhat similar antitrust claims against dominant provider of online college application services, for exploiting dominant position for financial and other gain) (see Plfs.' Opp at 6).  In contrast, in the present case, there are no allegations about diminished product offerings, inflated prices, or anything similar.

The trio of 1970s and 1980s cases—*Federal Trade Commission v. Indiana Federation of Dentists*, 476 U.S. 447 (1986); *Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982); and *National Society of Professional Engineers v. United States*, 435 U.S. 679 (1978)—that Plaintiffs suggest collectively prove that "boards…serve as fertile ground for illegal anticompetitive agreements" (Plfs. Opp. at 3) bears little relation to the present case, for at least two reasons.  For one, in each of those older cases, the "board" was a non-governmental membership organization for a particular group of professionals (dentists (*Ind. Fed.*, 476 U.S. at 450), medical doctors (*Maricopa Cty.*, 457 U.S. at 336), and engineers (*Nat'l Soc'y*, 435 U.S. at 682)).  Here, in contrast, the Board is, of course, a state regulatory agency for the dental industry.  For two, each of the older cases concerned an extant, horizontal restraint of trade among the multitude of organization members.  *Indiana Federation* concerned a horizontal restraint of trade by which the majority of competing dentists in two towns agreed to withhold their patient x-rays from health-insurance companies, so that the dentists who harbored the x-rays could keep control over evaluating—and getting paid for evaluating—them.  476 U.S. at 450-51.  *Maricopa County* concerned a horizontal restraint of trade by which a few thousand competing medical doctors openly fixed (maximum) fees for certain healthcare services.  457 U.S. at 340; see also *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (Plfs.' Opp at 3) (alleging similar conspiracy of agricultural herbicide manufacturer and distributors to exclude from business other distributor that refused to participate in vertical price-fixing scheme).  *National*

*Society* concerned a horizontal restraint of trade by which many thousands of competing engineers refused to engage in competitive bidding on projects, inevitably meaning that winning bids would be higher—and the compensation for engineers higher.  435 U.S. at 681  Here, in contrast, the alleged antitrust violation is that a handful of dentists convinced a few government investigators to scare some employees and customers or potential customers at several locations of a single dental-related business, with no discernable effects on the employees, the customers, the business, or the broader market.

Having failed once again to articulate a colorable antitrust violation here, Plaintiffs' first cause of action should be dismissed with prejudice.

## II.   Plaintiffs Have Not Rebutted Defendants' Claims of Absolute Immunity to the Constitutional-Law Causes of Action

Plaintiffs argue that Defendants do not have absolute prosecutorial-judicial immunity from Plaintiffs' constitutional-law claims, because Plaintiffs filed this lawsuit a few weeks before Co-Defendant Karen M. Fischer, M.P.A., Board Executive Officer, filed with the Board the formal misconduct accusation against Dr. Sulitzer.  (Plfs.' Opp at 11:20-12:10.)  However, Plaintiffs do not cite any cases holding that, for purposes of this kind of immunity, it matters whether the prosecution commenced before or after the accused went to court claiming that the investigation was improper.  And the Supreme Court's decision in *Buckler v. Fitzsimmons*, 509 U.S. 259 (1993), which Plaintiffs cite on page 12 of their brief opposing this motion, undermines Plaintiffs' "timing" argument by holding that a prosecutor has absolute immunity for "actions <u>preliminary to</u> the initiation of a prosecution."  *Buckler*, 509 U.S. at 272 (emphasis added).[4]  Because Plaintiffs offer

---

[4] If Plaintiffs' timing argument ever becomes part of the law of absolute prosecutor-judicial immunity, that kind of immunity would be eviscerated.  Any person under governmental investigation for misconduct would be able to derail any forthcoming prosecution by filing a preemptive lawsuit alleging that the investigation was improper.  It hardly needs saying that such an outcome would jeopardize all prosecutions in the public interest, and should not be countenanced.

no further immunity arguments with respect to Dr. Sulitzer's prosecutor, Executive Officer Fischer, or the judges, the 14 Board members, all of whom operate under appropriate safeguards identified in the moving papers herein, this Court should hold that absolute prosecutorial-judicial immunity applies to 15 of the 16 Defendants (everyone except Investigator Tippins), and dismiss all the constitutional-law claims against those 15 Defendants on that basis.

As for Investigator Tippins,[5] this lawsuit disproves Plaintiffs' point that "there is no need to shield investigators from potential harassment." (Plfs.' Opp. at 12:17-12:18.)  Plaintiffs have very publicly subjected Investigator Tippins to a steady stream of (baseless) charges, attacks, and insults, just for doing his job. Plaintiffs err in denying absolute immunity for Investigator Tippins by accusing the Board of having no "procedural safeguards applicable to the conduct of its investigations…." (*Id.* at 12:27-13:1.)  The Board has and follows a manual for investigations, but the Board, like many other prosecutorial bodies, keeps that manual strictly confidential, to prevent would-be criminals or tortfeasors from teaching themselves how to defeat the investigations.  (Cf. *Ginsburg, Feldman & Bress v. Fed. Energy Admin.*, 591 F.2d 717, 719 (D.C. Cir. 1978) (discussing traditionally confidential nature of law-enforcement manuals).)  Assuming for present purposes that there are no procedures in place, Plaintiffs still fail to tear away Investigator Tippins's shield of absolute immunity, because Plaintiffs have not identified any wrongful conduct on Investigator Tippins's part.  Whether he was brusque or rude or yelled at people has no legal significance.

### III.   Plaintiffs Still Have Not Pleaded a Plausible Dormant Commerce Clause Cause of Action

#### A.   The Present Case Does Not Resemble Other Dormant Commerce Clause Cases.

Arguing for the viability of the Dormant Commerce Clause claim, Plaintiffs

---

[5] Because the Court already has ruled that Plaintiffs cannot recover damages for the constitutional-law claims, Tippins, like all Defendants, faces no monetary liability from those claims.

start by citing numerous bona fide Dormant Commerce Clause decisions that supposedly have fact patterns similar to the present case's factual allegations (Plfs.' Opp. at 16:23-18:7)—i.e., of an in-state investigation of the in-state activities of a single business, with no legal action taken against the business, and no discernible effects on the business, much less interstate commerce.  However, none of the past cases that Plaintiffs present even remotely resembles the present case.  The *Leeds* case (from last year; discussed above) involved a state regulatory agency sending out a cease-and-desist letter to SmileDirectClub, LLC.  Significantly, the present case has no similar, consequential action by Defendants.  At present, Plaintiff SmileDirectClub, LLC, in California remains free to operate just as before, making the *Leeds* case inapposite.  Meanwhile, each of the eight other cited cases, (1) *Teladoc, Inc. v. Texas Medical Board*, Case No. 1-15-CV-343 RP, 2015 WL 8773509 (W.D. Tex. Dec. 14, 2015); (2) *Florida Transportation Services, Inc. v. Miami-Dade County*, 703 F.3d 1230 (11th Cir. 2012); (3) *Granholm v. Heald*, 544 U.S. 460 (2005); (4) *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005); (5) *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994); (6) *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 271 (1988); (7) *Lewis v. BT Investment Managers*, 447 U.S. 27 (1980); and (8) *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949) (see Plfs.' Opp. at 17-19), involved a statute or an ordinance of general application, with potential to affect interstate commerce substantially.  For that reason, every one of those cases differs greatly from the present case, whose idiosyncratic fact pattern depicts one-of-a-kind mistreatment, in the form of a allegedly abusive investigation, heaped on Plaintiffs alone.  Furthermore, the U.S. Court of Appeals, Ninth Circuit, decision in *International Franchise Association, Inc. v. City of Seattle*, 803 F.3d 389 (2015), in footnote 7, has characterized all those cases (except *Teladoc* (which did not yet exist when the Ninth Circuit ruling came down)) narrowly, as having or applying measures that limited business competition by prohibiting certain economic activity.  Because the present case

1   does not involve any measure that limits any business competition by prohibiting

2   any economic activity, all those cases have no bearing here.

3   **B.      Plaintiffs Have Not Alleged Actionable Interference with**
           **Interstate Commerce**

4

5   Plaintiffs' second argument to bolster the Dormant Commerce Clause cause

6   of action reduces to yet another confusing recharacterization of the claim.  Plaintiffs

7   have abandoned the prior theory that Defendants have imposed undue burdens on

8   out-of-state or interstate economic activity.  (See the prior theory laid out on pages

9   19-20 of Plaintiffs' January 13, 2020, opposition to Defendants' first motion to

10  dismiss this case.)  Plaintiffs have changed direction 180 degrees and now maintain

11  that Defendants have "intentionally and specifically targeted the interstate

12  commerce injected into traditional local markets for orthodontics by SmileDirect's

13  tele-dentistry platform."  (Plfs. Opp. at 20:16-20:17; accord *id.* at 16:23-16:24,

14  17:4-17:6, 17:14-17:19.)  Although this theory is not entirely clear to Defendants,

15  Plaintiffs seem to mean that Defendants are protecting existing California dentists,

16  who have bricks-and-mortar offices, from competition from dentists operating

17  online.  However, this new theory cannot possibly posit <u>any</u> unlawful regulation of

18  interstate commerce.  First, there is no dispute that, notwithstanding the Dormant

19  Commerce Clause, Defendants lawfully could (indeed, according to the California

20  Legislature, must) prohibit people who are <u>not</u> California-licensed dentists from

21  practicing dentistry online (or in person) for patients in California.  Second,

22  whenever Defendants regulate California-licensed dentists who practice dentistry

23  online for patients in California, Defendants are addressing wholly in-instate

24  commerce, with no Dormant Commerce Clause implications.  Given that all people

25  practicing dentistry online for California patients must be either unlicensed or

26  licensed, Plaintiffs' new theory covers every possible "victim" of Defendants'

27  alleged misconduct, and yet under that theory there is no unlawful interference with

28  interstate commerce.

Having failed once again to articulate a colorable Dormant Commerce Clause violation, Plaintiffs' second cause of action should be dismissed with prejudice.

## IV. Plaintiffs Still Have Not Pleaded a Plausible Due Process Clause Cause of Action

Plaintiffs accept that, to sustain their due-process cause of action, they must plead sufficient facts to rebut the presumption of legitimacy of the Board's statutorily authorized investigation of and initiation of professional disciplinary proceedings. (Plfs.' Opp. at 22:6-22:15.) Plaintiffs attempt to meet that burden with conclusory histrionics about "the Board's escalating campaign of harassment and intimation" that "threatens a complete deprivation of Dr. Sulitzer's rights." (Plfs.' Opp. at 22:6-23:3, 23:15-23:21.) In a tacit admission that Plaintiffs are putting an extreme spin on the fact allegations, Plaintiffs caution the Court against "drawing all inferences in the Board's favor." (Plfs.' Opp. at 23:15-23:21.) However, applying the proper standard of drawing all <u>reasonable factual</u> interferences in Plaintiffs' favor (*Ashcroft v. Iqbal*, 556 U.S. 562, 578 (2009)), the Court should dismiss the due-process cause of action, with prejudice, because Plaintiffs have made no allegations that come anywhere near rebutting the presumption of legitimacy of the Board's regulation of the practice of dentistry in California.

## V. Plaintiffs Still Have Not Pleaded a Plausible California Unfair-Competition Cause of Action

Plaintiffs accept that if they seek money or damages from Defendants through the California unfair-competition cause of action, then they need to complete the California Government Claims Act administrative process before coming to Court on this matter. (Plfs.' Opp. at 24:5-24:13.) In claiming to be exempt from that requirement, Plaintiffs assert, "Count IV [the unfair-competition cause of action] <u>primarily</u> seeks injunctive relief" (Plfs.' Opp. at 24:5 (emphasis added)) and thus should be allowed to proceed here. That adverb, "primarily," is

13

1   telling.  Plaintiffs <u>are</u> seeking something other than injunctive relief, i.e., money

2   damages, so the cause of action presently does not belong in any court.

3           As to the substance of the unfair-competition cause of action, as explained in

4   the moving papers herein, this derivative cause of action (see Plfs.' Opp. at 24:20-

5   24:28 (repeating antitrust allegations as substance of unfair-competition claim))

6   fails along with the flawed antecedent causes of action.

7   **VI.   Alternatively, The Court Should Dismiss The 11 Defendants About**

8   **Whom Plaintiffs Make No Individual Allegations**

9           If the Court is inclined to maintain any of Plaintiffs' causes of action, then

10  the Court still should dismiss all claims with prejudice as to 11 Co-Defendants, (1)

11  Fran Burton, M.S.W.; (2) Steven Morrow, D.D.S., M.S.; (3) Yvette Chappell-

12  Ingram, M.P.A.; (4) Ross Lai, D.D.S.; (5) Huong Le, D.D.S., M.A.; (6) Meredith

13  McKenzie, Esq.; (7) Abigail Medina; (8) Rosalinda Olague, R.D.A., B.A.; (9)

14  Joanne Pacheco, R.D.H., B.A.; (10) Thomas Stewart, D.D.S.; and (11) James Yu,

15  D.D.S., M.S.  A person must take some overt action to join an antitrust conspiracy,

16  to be liable therefor.  See *Anrig v. Rigsby United*, 603 F.2d 1319, 1326 (9th Cir.

17  1978).  In two very long complaints, Plaintiffs have never alleged <u>any</u> individual

18  actions by <u>any</u> of these Defendants.  They have been sued individually, for millions

19  of dollars, just for being (or having been) Board members.  (Plfs.' Opp. at 6:23-6:25

20  (asserting that Board's role as regulator of dental industry in California is "plus

21  factor" for antitrust liability).)  These Defendants, who literally are not alleged to

22  have done anything, should be released from being further hassled by this

23  overreaching lawsuit.

24                              **CONCLUSION**

25          Plaintiffs assert that the motion to dismiss the complaint has revealed

26  "disputed issues of fact" that must be resolved by a trial (Plfs.' Opp. at 1:17-1:19),

27  but all that has happened is that Defendants have exposed the emptiness of

28

1

2

3   Plaintiffs' pleadings, again.  Therefore, the Court should dismiss this case without

4   leave to amend.

5   Dated:  June 25, 2020                    Respectfully submitted,

6                                            XAVIER BECERRA
                                             Attorney General of California
7                                            MARK R. BECKINGTON
                                             Supervising Deputy Attorney General
8

9

10                                           /s/ Jonathan M. Eisenberg
                                             JONATHAN M. EISENBERG
11                                           Deputy Attorney General
                                             Attorneys for Defendants Joseph
12                                           Tippins; Karen M. Fischer, M.P.A.;
                                             Fran Burton, M.S.W.; Steven Morrow,
13                                           D.D.S., M.S.; Steven Chan, D.D.S.;
                                             Yvette Chappell-Ingram, M.P.A;, Ross
14                                           Lai, D.D.S.; Lilian Larin, D.D.S.;
                                             Huong Le, D.D.S., M.A.; Meredith
15                                           McKenzie, Esq.; Abigail Medina,
                                             Rosalinda Olague, R.D.A., B.A.;
16                                           Joanne Pacheco, R.D.H., M.A.O.B.;
                                             Thomas Stewart, D.D.S.; Bruce L.
17                                           Whitcher, D.D.S.; and James Yu,
                                             D.D.S., M.S.

18

19

20

21

22

23

24

25

26

27

28