UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8902-GW-MAAx | Date | July 9, 2020 |
|---|---|---|---|
| Title | *Jeffrey Sulitzer, D.M.D, et al. v. Joseph Tippins, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie E. Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| James D. Dasso | Jonathan M. Eisenberg | |

**PROCEEDINGS:** TELEPHONIC HEARING ON DEFENDANTS' MOTION TO DISMISS COMPLAINT [44]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' Motion is TAKEN UNDER SUBMISSION. Court to issue its ruling.

|   | : | 15 |
|---|---|---|
| Initials of Preparer | JG | |

<u>*Sulitzer, et al. v. Tippins, et al.*</u>, Case No. CV 19-08902-GW-(MAAx)
Tentative ruling on Motion to Dismiss Complaint

<u>Introduction</u>

Joseph Tippins ("Tippins"), Karen M. Fischer, M.P.A., Fran Burton, M.S.W., Steven Morro, D.D.S., M.S., Steven Chan, D.D.S., Yvette Chappell-Ingram, M.P.A., Ross Lai, D.D.S., Lilian Larin, D.D.S., Huong Le, D.D.S., M.A., Meredith McKenzie, Esq., Abigail Medina, Rosalinda Olague, RDA, B.A., Joanne Pacheco, RDH, M.A.O.B., Thomas Stewart, D.D.S., Bruce L. Whitcher, D.D.S., and James Yu, D.D.S., M.S. (collectively, "Defendants") have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the First Amended Complaint for Damages and Injunctive Relief ("FAC") filed in this action on May 18, 2020 by Jeffrey Sulitzer, D.M.D. ("Sulitzer"), Jeffrey Sulitzer, D.M.D, a California Professional Corporation ("Sulitzer P.C."), and SmileDirectClub, LLC ("SmileDirect") (collectively, "Plaintiffs"). The general factual background underlying this dispute and of the applicable Rule 12(b)(6) procedural standard was set forth in this Court's tentative ruling on an earlier motion to dismiss issued March 2, 2020 (supplemented by a minute order issued April 22, 2020), familiarity with which is presumed here. *See* Docket Nos. 30, 42. The Court has reviewed the allegations in the FAC, in comparison with those presented in the original Complaint. The Court sees no need to include a comprehensive recitation of the allegations in the FAC, or of the Rule 12(b)(6) standard, here.

<u>Sherman Act</u>

With respect to Plaintiffs' first cause of action, for violation of the Sherman Antitrust Act, 15 U.S.C. § 1, Defendants argue that Plaintiffs "continue to depict, at most, an agreement to undertake the functions of a dental-industry regulatory agency, at least as much as an agreement to restrict or to restrain competition" and "continue to make no individual allegations about most Defendants." Docket No. 44-1, at 2:4-7. Similarly, they assert that "[a]llegations of multiple people with similar economic incentives taking similar actions suggests rational, if parallel, conduct, as much as an antitrust conspiracy," and therefore do not state a Section 1 Sherman Act claim because they are allegations "that are merely *consistent with*" an antitrust conspiracy. *Id.* at 11:9-14 (emphasis

added).  While they acknowledge that Plaintiffs have added "more detailed factual allegations supporting the proposition" that certain defendants "view Plaintiffs as a competitive threat and/or a potential danger to consumers," Defendants assert that these allegations "describe nothing more than motives or beliefs on the part of some Defendants to oppose Plaintiffs, and do not reflect the making of any agreements, much less the making of any <u>unlawful agreements in restraint of trade</u>." *Id.* at 12:7-22.  In the end, Defendants summarize the new allegations as merely reflecting "the Board functioning in its merely ordinary regulatory capacity" and thereby failing the required test "of both describing a viable antitrust conspiracy <u>and</u> excluding the possibility of lawful conduct."  *Id.* at 13:6-12.  Finally, Defendants note that Plaintiffs have not included any allegations concerning illicit motivations of many of the defendants, nor any individual allegations about several of the defendants who are dental-industry professionals.

In attempting to demonstrate that they have sufficiently alleged an agreement prohibited by Section 1 of the Sherman Act, Plaintiffs first point to several cases in support of an argument that self-regulatory professional boards pose an inherent anticompetitive risk.  What Plaintiffs appear to wish to downplay here, however, is that any "agreement" they believe they have demonstrated – or can, with the ability to conduct discovery, demonstrate – is an agreement consistent with the Dental Board's regulatory purpose, not an agreement to – for instance – withhold x-rays from insurers, set fees, or prohibit competitive bidding, as were the situations in the Supreme Court decisions they cite.  That certain defendants authorized the investigation into Plaintiffs, and others (or all of them) ratified it, by allowing it to continue, is to be expected of a regulatory body given the authority to investigate those regulated.  *See, e.g.*, *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193-94 (9th Cir. 2015) ("'Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy' are insufficient to plead a § 1 violation.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), and *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008)).

What Plaintiffs otherwise have is motive (as to at least some of the defendants), *see* FAC ¶¶ 60-62, opportunity and what they believe are other "plus factors," *see id.* ¶¶

2

102-03.  *See id.* at 1195 ("[A]llegations of parallel conduct – though recast as common motive – [are] insufficient to plead a § 1 violation.").  But, again, the Court believes that these factors would exist any time a state regulatory board that consists, at least in part, of market-participants, engages in an investigation of other market-participants.  Unless every single time such an investigation commences the courts should expect a Sherman Act challenge, a plaintiff needs to do something more to push across the plausibility line a case for an agreement prohibited by federal antitrust laws.[1]  *See, e.g.*, *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129-30 (9th Cir. 2015).  While Plaintiffs may not appreciate the manner in which Defendants undertook their investigation, its does not provide the grounds for a Sherman Act claim.

Although the Court recognizes that its approach may be seen as inconsistent, in certain respects, with the Fourth Circuit's decision in *North Carolina State Board of Dental Examiners v. F.T.C.*, 717 F.3d 359 (4th Cir. 2013), that case involved review of an FTC action, and FTC findings, in connection with a state dental board's activity against an entire market of non-dentist teeth-whiteners.  *See id.* at 365.  Plaintiffs have not demonstrated that the Ninth Circuit takes a similar view even on those similar facts, let alone that it would do so in connection with allegations raised in connection with the regulatory investigation of a single dental practitioner.

Plaintiffs have already been given an opportunity to amend in order to plausibly allege an agreement that runs afoul of the Sherman Act's prohibitions.  The Court again concludes that they have failed to do so.  Plaintiffs' Sherman Act claim is now dismissed without leave to amend.

Dormant Commerce Clause

With respect to the sufficiency of the allegations of Plaintiffs' Dormant Commerce Clause claim, in this Court's view Defendants accurately summarize Plaintiffs' situation here both as "attacking . . . the Board's application of facially neutral laws to implement in-state regulation of in-state activity, with a possibly incidental impact on interstate commerce," Docket No. 44-1, at 16:23-26, and an "idiosyncratic fact

---

[1] Plaintiffs also assert that the Court has added elements to a Section 1 claim that do not belong there, but the Court has done nothing more than cite to a Ninth Circuit decision that plainly states the Section 1 elements.  *See Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501-02 (9th Cir. 2010).

pattern depict[ing] one-of-a-kind mistreatment, in the form of a[n] allegedly abusive investigation, heaped on Plaintiffs alone," Docket No. 46, at 11:21-23.  Though Plaintiffs clearly have aspects of their business-model that operate outside the boundaries of California, *see, e.g.*, FAC ¶¶ 37-39, 43, 50, the Defendants' actions here clearly do not discriminate against out-of-state conduct (there being no demonstration that Defendants treat any California-licensed dentist engaging entirely within California in any different fashion), and there is therefore no factual, non-conclusory, support for Plaintiffs' contention that the conduct Defendants have engaged in is "in order to protect dentists and orthodontists who live and work in California."  Docket No. 45, at 18:14-16; *see Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 524-25 (9th Cir. 2009); *see also Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 445-51 (9th Cir. 2019), *cert. denied*, 2020 WL 2515520 (U.S. May 18, 2020).  If California's Dental Board was prohibited, by the United States Constitution's Dormant Commerce Clause, from investigating and potentially taking regulatory action against a California-licensed dentist simply because he was actually located out-of-California while serving California patients, the Court agrees with Defendants that it would lead to "absurd results."

"Where a law only incidentally burdens interstate commerce, it 'will be upheld unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.'" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 (9th Cir. 2011).  The Court does not believe that Plaintiffs have factually-supported a conclusory assertion that any "incidental" burden on interstate commerce is "clearly excessive in relation to the putative local benefits." *See Rosenblatt*, 940 F.3d at 451-53; *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015) (affirming Rule 12(b)(6) dismissal); *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1154-55 (9th Cir. 2012); *cf. W. States Trucking Ass'n v. Schoorl*, 377 F.Supp.3d 1056, 1074 (E.D. Cal. 2019) ("Here, because California's wage orders treat in-state and out-of-state residents equally, impose its minimum standards only with respect to work performed in California, and secure benefits for California employees that are not clearly outweighed by any impediment to interstate commerce, '[t]here is no plausible Dormant Commerce Clause argument.'") (quoting *Sullivan v.*

4

*Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011)); *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Berch*, 973 F.Supp.2d 1082, 1113 (D. Ariz. 2013) (rejecting Dormant Commerce Clause challenge in face of the "legitimate, substantial interest in regulating the practice of law for public protection purposes" reflected in Arizona's system for admission to the bar).

Plaintiffs have not located any *controlling* case that *holds* that similar circumstances are sufficient to state a Dormant Commerce Clause claim, and no case that *persuasively* demonstrates or suggests as much. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("'Only a small number of . . . cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory.'") (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1150); *id.* ("These cases address state 'regulation of activities that are inherently national or require a uniform system of regulation,' – most typically, interstate transportation.") (quoting *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148). Again, Plaintiffs have already been given leave to amend to state such a claim. Having failed to do so, the claim is dismissed without leave to amend.

<u>Due Process</u>

Defendants argue that in order to state a substantive due process claim based on the allegations at issue here, Plaintiffs would have to be able to demonstrate that Defendants had *no* legitimate reason for their actions. *See Franceschi v. Yee*, 887 F.3d 927, 939 (9th Cir. 2018); *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017); *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1262 (9th Cir. 1994). The Court agrees with their assertion here that "[i]t was certainly legitimate for the Board, responding to a third-party complaint about the possible unlicensed practice of dentistry by SmileDirect or its agents, to have investigators visit SmileDirect's retail locations in California, to gather evidence about the possible unlicensed practice of dentistry." Docket No. 44-1, at 19:8-11. Plaintiffs' assertion in response (and in the FAC, *see* FAC ¶¶ 104, 118) that "the Board's misconduct was not related to any legitimate state interest," Docket No. 45, at 22:12-15, is just that, an assertion, and not one grounded in a fair assessment of, or a reasonable inference from, the factual allegations Plaintiffs have made.

Again, Plaintiffs have already been given an opportunity to amend their

5

allegations supporting this claim.  They have failed to do so successfully.  The claim is therefore dismissed without leave to amend.

Unfair Competition

Plaintiffs' unfair competition claim is only before the Court by way of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Insofar as the Court is dismissing all of the claims based in Federal law without leave to amend, the Court declines to maintain supplemental jurisdiction over this claim.  *See* 28 U.S.C. § 1367(c)(3).

Conclusion

Plaintiffs may be able to convince a panel of the Ninth Circuit that the circumstances at issue here suffice to state a Sherman Act, Dormant Commerce Clause or Due Process claim.  But they have not convinced this Court, despite being given an opportunity to amend.  Those claims are therefore dismissed without leave to amend. The Court has no cause to consider any of the arguments Defendants raise for immunity from any of the claims.  The Court declines supplemental jurisdiction over the single remaining state-law claim.